**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JAMES GREGORY HOWELL, JR., | } | |
| Plaintiff, | } | Civil Action No. |
| | } | |
| vs. | } | |
| | } | |
| THE MOREHOUSE SCHOOL OF MEDICINE, | } | |
| INC., | } | JURY DEMAND |
| Defendant, | } | |

## **COMPLAINT**

COMES NOW, JAMES GREGORY HOWELL, JR., (hereafter referred to as "Plaintiff"), in the above-styled case, and files this Complaint against THE MOREHOUSE SCHOOL OF MEDICINE, INC. (hereafter referred to as "MSM" or "Defendant"), and shows this Honorable Court the following:

TABLE OF CONTENTS

PARTIES.................................................................................................5

JURISDICTION AND VENUE ..............................................................6

FACTS AS TO MOREHOUSE SCHOOL OF MEDICINE....................................7

A.    KEY EMPLOYEES OF MOREHOUSE SCHOOL OF MEDICINE ........10

FACTS AS TO PLAINTIFF....................................................................13

A.    INTERACTIVE ACCOMMODATION REVIEW PROCESS.................16

B.    2017-2018 ACADEMIC SCHOOL YEAR .................................24

C.    ACADEMIC DECELERATION .................................................40

D.    2018-2019 ACADEMIC SCHOOL YEAR .................................41

E.    2019-2020 ACADEMIC SCHOOL YEAR .................................48

F.    RESOLUTION ATTEMPT BY PLAINTIFF............................51

G.    COMPLIANCE COMPLAINT AND DISMISSAL HEARING ..............60

H.    STUDENT LOANS, HEALTH INSURANCE, INFORMATION

TECHNOLOGY ACCESS, AND OTHER...........................................88

COUNT I - VIOLATION OF THE REHABILITATION ACT - FAILURE TO

ACCOMMODATE.................................................................................94

COUNT II - VIOLATION OF THE REHABILITATION ACT - DISPARATE

TREATMENT ................................................................................101

COUNT III - VIOLATION OF THE ADA - FAILURE TO ACCOMMODATE

................................................................................................118

COUNT IV - VIOLATION OF THE ADA - DISPARATE TREATMENT........126

COUNT V - VIOLATION OF THE ADA - DISPARATE IMPACT .................142

COUNT VI - VIOLATION OF THE REHABILITATION ACT AND ADA -

RETALIATION OR COERCION........................................................146

COUNT VII - VIOLATION OF O.C.G.A. § 51–6–1, § 51–6–2, AND § 51–6–4 -

FRAUD - WILLFUL MISREPRESENTATION AND CONCEALMENT OF

FACT............................................................................................180

COUNT VIII - VIOLATION OF O.C.G.A. § 51–6–1, § 51–6–2, AND § 51–6–4 -

FRAUD - FRAUDULENT OR RECKLESS MISREPRESENTATION, AND

CONCEALMENT OF FACT ..............................................................190

COUNT IX - NEGLIGENT MISREPRESENTATION ......................................200

COUNT X - BREACH OF CONTRACT.............................................................209

COUNT XI - PUNITIVE DAMAGES .................................................................229

PRAYER - COUNT I - VIOLATION OF THE REHABILITATION ACT - FAILURE TO ACCOMMODATE.........................................................................230

PRAYER - COUNT II - VIOLATION OF THE REHABILITATION ACT - DISPARATE TREATMENT ................................................................................231

PRAYER - COUNT III - VIOLATION OF THE ADA - FAILURE TO ACCOMMODATE................................................................................................233

PRAYER - COUNT IV - VIOLATION OF THE ADA - DISPARATE TREATMENT ........................................................................................................234

PRAYER - COUNT V - VIOLATION OF THE ADA - DISPARATE IMPACT ....................................................................................................................235

PRAYER - COUNT VI - VIOLATION OF THE REHABILITATION ACT AND ADA - RETALIATION OR COERCION..............................................................236

PRAYER - COUNT VII - VIOLATION OF O.C.G.A. § 51–6–1, § 51–6–2, AND § 51–6–4 - FRAUD - WILLFUL MISREPRESENTATION AND CONCEALMENT OF FACT ...............................................................................237

PRAYER - COUNT VIII - VIOLATION OF O.C.G.A. § 51–6–1, § 51–6–2, AND § 51–6–4 - FRAUD - FRAUDULENT OR RECKLESS MISREPRESENTATION, AND CONCEALMENT OF FACT ....................................................................238

PRAYER - COUNT IX - NEGLIGENT MISREPRESENTATION ....................238

PRAYER - COUNT X - BREACH OF CONTRACT ..........................................239

PRAYER - COUNT XI - PUNITIVE DAMGES..................................................239

## *PARTIES*

### 1.

Plaintiff is a resident of Gwinnett County, Georgia.

### 2.

MSM is a non-profit Georgia Corporation and is, and has at all relevant times been, located at 720 Westview Drive SW, Atlanta, Georgia (Fulton County).

### 3.

Process may be served upon MSM via registered agent Michael A. Rambert at 720 Westview Dr. SW, Suite 412, Atlanta, Georgia 30310-1458 in Fulton County.

*JURISDICTION AND VENUE*

4.

Pursuant to 28 U.S.C. § 1331 [federal question] and 28 U.S.C. § 1343 [civil rights], this Court has original jurisdiction over the claims set forth in Counts I-VI of Plaintiff's Complaint about discrimination and retaliation which arise under Section 504 of the Rehabilitation Act of 1973, *as amended* 29 U.S.C. § 701, *et. seq.* (hereafter referred to as "Rehabilitation Act"), and its implementing regulations, 34 C.F.R. § 104.1, *et seq.*, and the Americans with Disabilities Act of 1990 (hereafter referred to as "ADA"), *as amended*, 42 U.S.C. § 12101 *et. seq.* (including the American with Disabilities Act Amendments Act of 2008), and its implementing regulations, 28 C.F.R. § 36.101, *et seq.*

5.

Pursuant to 28 U.S.C. § 1367 [supplemental jurisdiction] and 28 U.S.C. § 1391 [venue], this Court has supplemental jurisdiction over the state law claims set forth in Counts VII-XI of Plaintiff's Complaint about willful misrepresentation and concealment of fact; fraudulent or reckless misrepresentation and concealment of fact; negligent misrepresentation; breach of contract; and punitive damages, respectively.

6.

Jurisdiction and venue are therefore proper in this action.

*FACTS AS TO MOREHOUSE SCHOOL OF MEDICINE*

7.

MSM is medical educational institution located in Atlanta, Georgia (Fulton County).

8.

MSM is a program or activity receiving Federal financial assistance under the Rehabilitation Act.

9.

Morehouse School of Medicine is a private entity under the ADA, Title III.

10.

MSM is both a privately and federally funded medical educational institution.

11.

MSM benefits from Federal financial assistance, including but not limited to those under Title IV of the Higher Education Act, Federal student financial aid in the form of tuition payments, loans, grants, subsidies, and other funds.

12.

MSM is required to comply with the Rehabilitation Act.

13.

MSM is required to comply with the regulations issued by the United States Department of Education under the Rehabilitation Act.

14.

MSM has signed and filed assurances of compliance with the Department of Education conditioning the receipt of Federal financial assistance on continued compliance with the Rehabilitation Act.

15.

MSM is required to comply with the ADA.

16.

MSM is required to comply with the regulations issued by the United States Department of Justice under the ADA.

17.

MSM employs fifteen or more persons.

18.

MSM is accredited by the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC), Liaison Committee on Medical Education

(LCME), Accreditation Council for Continuing Medical Education (ACCME),

Accreditation Council for Graduate Medical Education (ACGME), and Council on

Education for Public Health (CEPH).

19.

At all times material herein, MSM operated a place of education and

research, and was a degree granting institution.

20.

MSM's Office of Disability Services' (hereafter referred to as "ODS")

website,

https://msm.edu/Administration/HumanResources/disabilityservices/index.php,

states,

> "It is the policy and practice of [MSM] to comply with the *Americans with Disabilities Act of 1990*, as amended, 'Section 504' of the *Rehabilitation Act of 1973* and state and local requirements regarding individuals with disabilities. Under these laws, no qualified individual shall be denied access to or participation in events, programs or services at the School. Through outreach and education, our office will promote access and awareness to all members of our MSM community" See Exhibit AA, Page 1.

21.

According to MSM's ODS website,

https://msm.edu/Administration/HumanResources/disabilityservices/disability-

policy.php, MSM's Disability Policy Statement is as follows,

9

"Morehouse School of Medicine (MSM) is committed to providing equal access to employment and educational opportunities for all individuals, including persons with disabilities, MSM recognizes that individuals with disabilities, may need reasonable accommodations to have equally effective opportunities to participate in or benefit from educational programs, services, and activities, and to have equal employment opportunities. MSM shall adhere to all applicable federal and state laws, regulations, and guidelines with respect to providing reasonable accommodations, including academic adjustments, as necessary to afford equal employment opportunity and equal access to programs for qualified persons with disabilities." See Exhibit AB.

## A. KEY EMPLOYEES OF MOREHOUSE SCHOOL OF MEDICINE

### 22.

Marla Thompson, Title IX Coordinator and Manager for the ODS at MSM, was at all times in charge of determining Plaintiff's eligibility for accommodations, granting accommodations, and managing their implementation.

### 23.

Marla Thompson at all relevant times had complete discretion at key decision points in the administrative process regarding Plaintiff's accommodations, including, but not limited to, Plaintiff's note-taking accommodations.

24.

Marla Thompson worked closely with Dr. Brandi Knight, Director of the Office of Student Learning and Educational Resources (hereafter referred to as "OSLER").

25.

Marla Thompson placed Dr. Brandi Knight in charge of Plaintiff's note-taking accommodation.

26.

Marla Thompson communicated to Dr. Brandi Knight that Plaintiff's note-taking accommodation came with a 24-48-hour turnaround time goal for every class Plaintiff was taking.

27.

Until her departure from MSM on or around the end of March of 2019, Dr. Brandi Knight was at all relevant times in charge of Plaintiff's note-taking accommodation.

28.

Until her departure from MSM on or around the end of March of 2019, Dr. Brandi Knight had at all relevant times complete discretion at key decision points in the administrative process regarding Plaintiff's note-taking accommodation.

29.

Until her departure from MSM on or around the end of March of 2019, Dr. Brandi Knight was at all relevant times in charge of identifying and hiring notetakers for services, including but not limited to, Plaintiff's note-taking accommodation.

30.

Until her departure from MSM on or around the end of March of 2019, Dr. Brandi Knight was at all relevant times in charge of describing the necessary duties and responsibilities to notetakers.

31.

Until her departure from MSM on or around the end of March of 2019, Dr. Brandi Knight was at all relevant times in charge of replacing notetakers if they failed in their stated duties and responsibilities.

32.

Until her departure from MSM on or around the end of March of 2019, Dr. Brandi Knight was at all relevant times in charge of attempting to get additional notetakers for Plaintiff's note-taking accommodation.

33.

Until her departure from MSM on or around the end of March of 2019, Dr.
Brandi Knight was in charge of attempting to get professional notetakers for
Plaintiff's note-taking accommodation.

34.

Until her departure from MSM on or around the end of March of 2019, Dr.
Brandi Knight was at all relevant times in charge of attempting to involve other
staff in the management of Plaintiff's note-taking accommodation in order to help
with the untimeliness of Plaintiff's note-taking accommodation.

35.

Marla Thompson and Dr. Brandi Knight enjoyed substantial if not complete
supervisory authority within MSM's chain of command and the ability to institute
corrective measures with regards to Plaintiff's note-taking accommodation.

*FACTS AS TO PLAINTIFF*

36.

Plaintiff has a disability under the Rehabilitation Act and the ADA.

37.

Plaintiff has a life-long diagnosed history of a learning disorder, most recently diagnosed in 2019 as Severe Attention-Deficit/Hyperactivity Disorder - combined type (ADHD) and Other Specified Anxiety Disorder - Intermittent Obsessive Anxiety.

38.

Plaintiff has mental impairments that substantially limits and significantly restricts major life activities of Plaintiff including, but not limited to, learning, concentrating, and thinking. 42 U.S.C. § 12102, 28 C.F.R. § 36.105, 29 U.S.C. § 705(9), 29 U.S.C. § 705(20), 29 U.S.C. § 705(37)(A)(ii)(II), and 34 C.F.R. § 104.3(j).

39.

In Plaintiff's 2019 psychological evaluation, the examiner stated,

"[Plaintiff] continues to meet criteria for *Attention-Deficit/Hyperactivity Disorder - Combined Presentation, Severe (ADHD, Combined Presentation)*."

40.

In Plaintiff's 2019 psychological evaluation, Plaintiff's Total ADHD rating was in the 99th+(percentile) using the Barkley Adult ADHD Rating Scale-IV (BAARS-IV).

41.

In Plaintiff's 2019 psychological evaluation, the examiner stated,

"[Plaintiff] meets criteria for *Other Specific Anxiety Disorder, Intermittent Obsessive Anxiety*."

42.

Plaintiff is a qualified individual, under the Rehabilitation Act, who meets the academic and technical standards requisite to admission or participation to MSM's medical school program. 34 C.F.R. § 104.3(l)(3).

43.

Plaintiff is a qualified individual, under the ADA, who, with or without reasonable modifications to rules, policies, or practices…or the provision of auxiliary aids and services, meets the essential eligibility requirements to attend and study at MSM.

44.

On or around March 1, 2017, Plaintiff was accepted by MSM as a medical school student for the prospective class of 2021.

45.

At all relevant times while Plaintiff has been accepted as student at MSM, a confidential relationship existed between Plaintiff and Marla Thompson.

46.

At all relevant times while Plaintiff has been a student at MSM, a confidential relationship existed between Plaintiff and both Marla Thompson and Dr. Brandi Knight.

A.   INTERACTIVE ACCOMMODATION REVIEW PROCESS

47.

On March 3, 2017, approximately four (4) months prior to the beginning of classes for first-year medical school students at MSM on July 3, 2017, Plaintiff alerted MSM about Plaintiff's disability and recommended academic accommodations (hereafter referred to as "educational auxiliary aid(s)," "auxiliary aid(s)," "academic accommodation(s)," and "accommodation(s)").

48.

Plaintiff attempted to initiate the interactive accommodation review process with MSM's ODS via phone in early January of 2017, and then via email on March 3, 2017, March 12, 2017, March 21, 2017, and April 5, 2017, (See Exhibit AC), wherein Plaintiff asked to speak with someone at ODS and attached Plaintiff's 2014 psychological evaluation which included, but is not limited to, Plaintiff's medical history, diagnosis, and recommended accommodations.

49.

On or around April 7, 2017, Marla Thompson, finally responded to Plaintiff's attempts and began the interactive accommodation review process with Plaintiff.

50.

During the interactive accommodation review process prior to school starting on or around July 3, 2017, Plaintiff provided all the paperwork required for qualification as a student with a disability including, but not limited to, Plaintiff's 2014 psychological evaluation, a summary letter from Plaintiff's psychiatrist, and the completed Registration and Information Packet from MSM's ODS.

51.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 35), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 38), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 40), has stated, under the "Disability Services" heading, that,

> "The Office of Disability Services has been designated to review disability documentation and to determine eligibility for appropriate accommodations."

17

52.

During the interactive accommodation review process prior to school starting on or around July 3, 2017, Plaintiff requested accommodations including, but not limited to, a notetaker, extra time on exams and class assignments, and testing in a distraction-reduced environment.

53.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson verbally communicated that MSM could accommodate Plaintiff.

54.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson verbally communicated that MSM could satisfy Plaintiff's recommended and requested accommodations, including but not limited to Plaintiff's note-taking accommodation.

55.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3,

2017, Marla Thompson verbally communicated to Plaintiff that there was a system in place to satisfy Plaintiff's note-taking accommodation.

56.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson verbally communicated that Plaintiff's requested note-taking accommodation would come with a 24-48-hour turnaround time goal for any class Plaintiff was taking.

57.

The note-taking accommodation was listed as a requestable academic accommodation in the Registration and Information Packet sent to Plaintiff from Marla Thompson on or around April 12, 2017. See Exhibit AG, Page 7.

58.

Plaintiff relied upon the representations made by Marla Thompson during the interactive accommodation review process in determining that Plaintiff would attend MSM to study medicine on or around May 15, 2017, which was the deadline for students, whom had been accepted into multiple medical schools, to choose what medical school they would matriculate to.

59.

On or around June 16, 2017, Marla Thompson confirmed to Plaintiff via email that Plaintiff's requested accommodations were approved and would be available upon Plaintiff's arrival to MSM. See Exhibit AH, Page 1.

60.

Plaintiff justifiably relied on the information provided to Plaintiff by Marla Thompson because she was the person in charge of determining Plaintiff's eligibility for accommodations, granting accommodations, and managing their implementation.

61.

For the entirety of Plaintiff's medical school education at MSM, Plaintiff has been registered with MSM's ODS as a student with a disability. See Exhibit AI, Pages 1-3.

62.

For the entirety of Plaintiff's medical school education at MSM, Plaintiff's note-taking accommodation was approved and granted by MSM. See Exhibit AI, Pages 1-3.

63.

Plaintiff's note-taking accommodation, granted and approved by MSM's ODS, was by MSM's own admission a reasonable accommodation. See Exhibit AI, Pages 1-3.

64.

MSM by its own admission found Plaintiff to be a qualified individual in that the note-taking accommodation was granted to Plaintiff, and the note-taking accommodation was only available for "qualified students." See Exhibit AI, Pages 1-3, and Exhibit AJ, Page 2.

65.

The note-taking accommodation granted to Plaintiff by MSM was recommended in Plaintiff's 2014 and 2019 psychological evaluations provided to MSM's ODS, as well as in prior evaluations not requested by MSM's ODS.

66.

The note-taking accommodation was recommended in Plaintiff's 2014 psychological evaluation, provided to MSM's ODS, due to "weaknesses in switching between tasks, and working memory make note-taking difficult for [Plaintiff]".

67.

The note-taking accommodation was recommended in Plaintiff's 2019 psychological evaluation, provided to MSM's ODS, due to "difficulties with inattention and frequent distraction making it challenging for [Plaintiff] to listen to large amounts of information and take effective notes."

68.

Plaintiff's note-taking accommodation was necessary to ameliorate Plaintiff's disability's effect of preventing meaningful access to the benefits of, or participation in, MSM's medical school program, and would have enabled Plaintiff to develop mastery of the concepts necessary for the prevention, diagnosis, treatment, and management of common medical problems

69.

For the entirety of time Plaintiff has been a student at MSM, Plaintiff's 2014 and 2019 psychological evaluations, annual summary letters from Plaintiff's psychiatrists, and the completed Registration and Information Packets from MSM's ODS were used by MSM's ODS as a basis for granting Plaintiff's academic accommodations.

70.

Plaintiff's 2014 and 2019 psychological evaluations, annual summary letters from Plaintiff's psychiatrists, and the completed Registration and Information Packets from MSM's ODS were used by MSM's ODS as a basis for granting Plaintiff's note-taking accommodation for the entirety of Plaintiff's current medical school education.

71.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 34), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 37), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 39) has stated, under the "Disability Services" heading, that

> "Morehouse School of Medicine's Office of Disability Services (ODS) serves as the primary resource for students with documented disabilities, disability concerns, and making requests for reasonable academic adjustments and accommodations. The ODS works in collaboration with faculty, staff and departments throughout MSM to develop successful strategies for maximizing students' academic achievement and participation in extracurricular activities and programs."

72.

The paragraphs in this Complaint will show that no successful strategies were developed regarding Plaintiff's academic achievement by MSM's ODS, and

neither Plaintiff's disability concerns nor note-taking accommodation were of any

meaningful importance to MSM's ODS.

73.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Pages 34-35), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 37), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Pages 39-40) has stated, under the "Disability

Services" heading, that,

> "Services and reasonable accommodations are designed to meet the
> individual needs of each student in accordance with Section 504 of the
> Federal Rehabilitation Act of 1973 and the Americans with Disabilities Act
> of 1990, as amended by the ADAAA. These regulations require that any
> qualified person receive academic adjustments that are necessary and
> effective, and which do not compromise the academic standards of the
> School, to ensure equal access to educational opportunities, services,
> programs and activities at the School."

## B.   2017-2018 ACADEMIC SCHOOL YEAR

74.

For the 2017-2018 academic school year (here and hereafter accounts for the

time period from July 3, 2017 to May 25, 2018), MSM's ODS granted Plaintiff the

following accommodations: Private and/or distraction-reduced testing room;

Designated note-taker in classes; Access to audio taped lectures; and, Double time for examinations and in-class assignments. See Exhibit AI, Page 1.

75.

On or around from June 28, 2017 to June 30, 2017, the note-taking accommodation was also advertised as one of the academic accommodations available to qualified students in the Student Information Guide, provided by MSM's ODS, which was distributed to students during Plaintiff's new student orientation for first year medical students at MSM. See Exhibit AJ, Page 2.

76.

On or around July 3, 2017, Plaintiff started classes as a first-year medical school student at MSM for the 2017-2018 academic school year.

77.

Upon Plaintiff beginning medical school at MSM, on or around July 3, 2017, no system was already in place to provide Plaintiff with notes, per Plaintiff's note-taking accommodation.

78.

The classes for Plaintiff's 2017-2018 academic school year were taught with a heavy emphasis on lectures, and students were reliant on lectures, and taking

notes, for obtaining all the necessary information they needed to know for their classes.

79.

During the interactive accommodation review process prior to medical school starting for Plaintiff, Marla Thompson never warned Plaintiff that the note-taking accommodation would be a new school process in providing notes for medical school students with accommodations, a service which had not been previously provided by Marla Thompson, and was not an established service.

80.

One of Plaintiff's initial written complaints to Marla Thompson via email on or around August 1, 2017, stated that, "to this day, at the start of the fifth week of class, I still do not have a notetaker. I have been behind since the first week," that Plaintiff has "always been behind," that the people put in charge of Plaintiff's note-taking accommodation were not answering Plaintiff's emails about what was going on with the process, that "while I have tried to be patient, these past 3 weeks have been very frustrating because I tried to get you my application for accommodations in March [of 2017] so as to get everything ironed out before class started," and that Plaintiff would prefer if Marla Thompson was more involved in all the processes regarding Plaintiff's accommodations. See Exhibit AK, Pages 1-3.

81.

On or around August 1, 2017, Marla Thompson subsequently responded to Plaintiff via email stating that she would look into Plaintiff's issues, that MSM was "ready to ensure [Plaintiff's] accommodations would be implemented seamlessly" upon the start of Plaintiff's medical school education, and that she would reiterate to the group of people involved with Plaintiff's accommodations, including but not limited to Dr. Brandi Knight, to make sure updates were provided to her even if it was just a notification. See Exhibit AK, Page 1.

82.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 35), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 37), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 40) has stated, under the "Disability Services" heading, that,

> "Any applicant, student, resident, or employee who believes he or she has been denied any service or benefit or otherwise discriminated against or harassed due to a disability may contact the Title IX Coordinator [Marla Thompson] or the Deputy Title IX Coordinator."

83.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 65), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 70), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 71) has stated, under the "General Information"

subheading, under the "Nondiscrimination and Anti-Harassment Policies" heading,

that,

> "Morehouse School of Medicine is committed to providing academic and
> employment environments that are free from unlawful discrimination,
> including harassment, on the basis of protected characteristics, including
> race, color, national or ethnic origin, sex, age, disability, religion, veteran
> status, sexual orientation, genetic information, gender identity, or any other
> characteristic protected by applicable law in the administration of the
> School's programs and activities. The School encourages any individual
> who feels he or she has been discriminated against or harassed on any
> legally protected characteristic to promptly report the incident to the Title IX
> Coordinator [Marla Thompson] or the Deputy Title IX Coordinator[.]"

84.

Failing to provide for Plaintiff's note-taking accommodation, that MSM

granted to Plaintiff, is discrimination. 42 U.S.C. § 12182(b)(2)(A)(ii), 28 C.F.R. §

36.302(a), 34 C.F.R. § 104.44, and 34 C.F.R. § 104.4

85.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Page 66), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 70), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 71) has stated, under the "General Information"

subheading, under the "Nondiscrimination and Anti-Harassment Policies" heading, that,

> "MSM's general policy against discrimination, harassment and retaliation applies to conduct by and perpetrated against all faculty, staff, administration, supervisors, employees, residents, students, applicants, volunteers, patients and visitors to campus, including guests, patrons, independent contractors or clients of MSM ("Person(s)") that is prohibited by Title VII of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act (including ADAAA amendments), and the Age Discrimination Act of 1975."

86.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Page 66), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 71), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 72) has stated, under the "General Information"

subheading, under the "Nondiscrimination and Anti-Harassment Policies" heading,

that,

> "Under MSM's general policy against discrimination, harassment and retaliation, if a complainant is able and feels safe, he or she should clearly explain to the alleged offender that the behavior is objectionable and request that it cease. Additionally, if the complainant is not able or does not feel safe confronting the alleged offender, or the behavior does not stop, or if the complainant believes some adverse employment or educational consequences may result from the discussion, he or she should contact the Title IX Coordinator [Marla Thompson] or the Deputy Title IX Coordinator to make a complaint."

87.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Page 67), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 71), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 72) has stated, under the "General Information"

subheading, under the "Nondiscrimination and Anti-Harassment Policies" heading,

that,

> "Any Person or non-MSM visitor, guest, patron, independent contractor, or
> client who fails to address or report any form of discrimination, harassment
> and/or retaliation allegedly perpetrated by or against MSM administrators,
> faculty, staff, supervisors, volunteers, students or employees of which they
> know or should have known may be subjected to sanctions."

88.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Page 67), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 71), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 72) has stated, under the "Complaint Procedures"

subheading, under the "Nondiscrimination and Anti-Harassment Policies" heading,

that,

"Complaints filed with the Title IX Coordinator [Marla Thompson] or the Deputy Title IX Coordinator[1] must be in writing and, specifically in cases involving incidents of sex discrimination, sexual harassment or sexual violence, provide the following information: (i) name of and contact information for the complaining Person(s) ("Complainant(s)"); (ii) nature, location and date of alleged violation; (iii) names of and contact information for the Person(s) accused of the alleged violation (where known) ("Respondent(s)"); (iv) requested relief or corrective action (specification of desired relief shall be the option of the Complainant); and (v) any other background or supplemental information that the Complainant believes to be relevant (e.g., names of other persons affected by the violation, etc.)."

89.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Page 67), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 72), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 73) has stated, under the "Investigation and

Disposition of Complaints" subheading, under the "Nondiscrimination and Anti-

Harassment Policies" heading, that,

"All reports and complaints of discrimination and harassment will be promptly investigated, and appropriate corrective action will be taken as expeditiously as possible. The parties to the complaint will each have an opportunity to be heard during the investigation, and to provide witnesses and other evidence to an impartial investigator. MSM will make reasonable efforts to protect the rights of both the Complainant and the Respondent. MSM will respect the privacy of the Complainant(s), Respondent(s), and any witnesses in a manner consistent with the School's legal obligations to investigate, take appropriate corrective action, and comply with any

---

[1] Both of MSM's 2018-2019 and 2019-2020 Student Handbooks do not include the phrase "or the Deputy Title IX Coordinator" in this statement.

discovery or disclosure obligations required by law. Any and all requests for confidentiality will be evaluated on a case-by-case basis and in the context of the school's responsibility to provide a safe and nondiscriminatory environment for the MSM community."

90.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Page 68), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 72), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 73) has stated, under the "Investigation and

Disposition of Complaints" subheading, under the "Nondiscrimination and Anti-

Harassment Policies" heading, that,

> "The amount of time needed to conduct an investigation will depend in part on the nature of the allegation(s) and the evidence to be investigated (e.g., the number and/or availability of witnesses involved). Within 60 days of receipt of the complaint, the Title IX Coordinator [Marla Thompson] or Deputy Title IX Coordinator will provide an interim notice of the outcome of the investigation or will advise the parties of the additional estimated amount of time needed for the investigation. Within 10 business days following the completion of an investigation, the Title IX Coordinator [Marla Thompson] or Deputy Title IX Coordinator will simultaneously provide written notification to the Complainant and Respondent of the results of the investigation. If the investigation reveals that, by application of the preponderance of evidence standard, harassment, discrimination (or other inappropriate or unprofessional conduct even if not unlawful), or retaliation has occurred, disciplinary action may be taken by MSM. Written notice to the appropriate parties relating to discipline, resolutions, and/or final dispositions is deemed to be official correspondence from the School. Disciplinary sanctions imposed may be appealed through the appropriate appeals process depending on the status of the alleged policy violator. MSM will take the appropriate corrective action based on results of the

investigation and will follow up as appropriate to ensure that the remedial action is effective. Complainants are encouraged to report any reoccurrences of conduct that were found to violate MSM's nondiscrimination and anti-harassment policies or any other related concerns."

91.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AK, Pages 1-3) sent to Marla Thompson, MSM's Title IX Coordinator, was not promptly investigated.

92.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AK, Pages 1-3) sent to Marla Thompson, MSM's Title IX Coordinator, MSM never provided Plaintiff with any written notification regarding the results of any investigation.

93.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages

37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AK, Pages 1-3) sent to Marla Thompson, MSM's Title IX Coordinator, MSM did not take any appropriate corrective actions.

94.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AK, Pages 1-3) sent to Marla Thompson, MSM's Title IX Coordinator, MSM did not follow up as appropriate to ensure any remedial actions it instituted were effective.

95.

On or around October 31, 2017, Dr. Brandi Knight revealed to Plaintiff via email that providing notes, per Plaintiff's note-taking accommodation, was a "totally new process for us and there [was] nothing set to work seamlessly and quickly," and Marla Thompson was cc-ed on this email. See Exhibit AL, Page 1.

96.

Despite Plaintiff beginning medical school on or around July 3, 2017, the first time Plaintiff received notes for Plaintiff's note-taking accommodation was

thirty-eight (38) days after school started, on or around August 10, 2017, and those notes were for classes nine (9) and ten (10) days prior.

97.

During the interactive accommodation review process prior to medical school starting on or around July 3, 2017, Marla Thompson never warned Plaintiff that there would be an initial delay in providing notes to Plaintiff.

98.

Plaintiff stressed to Dr. Brandi Knight via email on or around July 24, 2017, that the note-taking accommodation was critical for Plaintiff's success and that Plaintiff felt like Plaintiff was going to fail Plaintiff's upcoming exam because Plaintiff was not able to study all of the material due to not having timely notes per Plaintiff's note-taking accommodation. See Exhibit AM.

99.

In an attempt to help in providing timely notes to Plaintiff during Plaintiff's first year of medical school, MSM asked Plaintiff to give up Plaintiff's anonymity as a person with a disability, which Plaintiff agreed to, but ultimately this never happened. See Exhibit AL.

100.

On or around October 31, 2017, Dr. Brandi Knight explained the supposed bottleneck causing the untimeliness of Plaintiff's note-taking accommodation was the notetakers themselves in that Dr. Brandi Knight stated she could only give Plaintiff notes when student notetakers sent them to her. See Exhibit AL, Page 1.

101.

On or around October 31, 2017, Dr. Brandi Knight stated to Plaintiff via email that she had secured an additional notetaker for Plaintiff's anatomy class to help with the untimeliness of Plaintiff's note-taking accommodation, and Marla Thompson was cc-ed on this email. See Exhibit AL, Page 1.

102.

Plaintiff was never provided an additional notetaker for anatomy class.

103.

Problems persisted in satisfying Plaintiff's note-taking accommodation for the entire 2017-2018 academic school year.

104.

Throughout the 2017-2018 academic school year, Plaintiff complained to Marla Thompson and Dr. Brandi Knight about the untimeliness of Plaintiff's note-taking accommodation.

105.

For the 2017-2018 academic school year at MSM, the average turnaround time of notes received—not all notes were ever received—for any class was 4.17 days for Plaintiff's note-taking accommodation.

106.

For the 2017-2018 academic school year at MSM, Plaintiff received notes for only sixty-one percent (61%) of classes for Plaintiff's note-taking accommodation.

107.

For the 2017-2018 academic school year at MSM, Plaintiff received a 2.49/4.00 GPA (Passing is 2.00/4.00). See Exhibit AN, Pages 1-2.

108.

MSM failed in its duty to coordinate and manage the implementation of Plaintiff's note-taking accommodation prior to classes beginning for the 2017-2018 academic school year.

109.

MSM failed in its duty to coordinate and manage the implementation of Plaintiff's note-taking accommodation after classes began for the 2017-2018 academic school year.

110.

The 24-48-hour turnaround time goal for notes per Plaintiff's note-taking accommodation was never measured or evaluated by either Marla Thompson or Dr. Brandi Knight during the 2017-2018 academic school year at MSM.

111.

Toward the end of the 2017-2018 academic school year, on or around May 7, 2018, Plaintiff emailed Marla Thompson again with a written complaint about the untimeliness of Plaintiff's note-taking accommodation (discrimination), stressing the importance of the note-taking accommodation with requests including, but not limited to, a more proactive approach on her end, more accountability from Dr. Brandi Knight, and better communication in making sure MSM timely provided notes per Plaintiff's note-taking accommodation. See Exhibit AO.

112.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AO) sent to Marla Thompson, MSM's Title IX Coordinator, was not promptly investigated.

113.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AO) sent to Marla Thompson, MSM's Title IX Coordinator, MSM never provided Plaintiff with any written notification regarding the results of any investigation.

114.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AO) sent to Marla Thompson, MSM's Title IX Coordinator, MSM did not take any appropriate corrective actions.

115.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AO) sent to Marla

Thompson, MSM's Title IX Coordinator, MSM did not follow up as appropriate to ensure any remedial actions it instituted were effective.

## C.   ACADEMIC DECELERATION

### 116.

Prior to the start of the 2018-2019 academic school year (here and hereafter accounts for the time period from August 14, 2018 to May 17, 2019), MSM suggested that Plaintiff enter academic deceleration, thus splitting the classes taken in the normal second year medical curriculum into two separate years.

### 117.

According to MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 95), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 101), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 102), under the "Academic Deceleration" heading, Academic Deceleration is defined as,

> "Students enrolled in the basic science years at MSM have the option to decelerate. This essentially allows them to complete the basic science curriculum over a three-year period (as opposed to the standard two-year basic sciences curriculum)."

### 118.

Due to Plaintiff's mounting lack of faith in MSM's ability to provide for Plaintiff's note-taking accommodation, coupled with the poor grades (2.48/4.00

first year GPA), and emotional turmoil Plaintiff was experiencing, Plaintiff elected to enter the decelerated second year medical curriculum, though Plaintiff would have preferred graduating on time while receiving the accommodations that were granted to Plaintiff by MSM.

119.

Plaintiff's medical school education was prolonged because of MSM's failure in providing Plaintiff's note-taking accommodation.

D.   2018-2019 ACADEMIC SCHOOL YEAR

120.

For the 2018-2019 academic school year, MSM's ODS granted Plaintiff the following accommodations: Private and/or distraction-reduced testing room; Designated note-taker in classes; Access to audio taped lectures; and, Double time for examinations and in-class assignments. See Exhibit AI, Page 2.

121.

On or around August 14, 2018, Plaintiff started classes as a second-year, decelerated part one of two, student at MSM for the 2018-2019 academic school year.

122.

Problems continued to persist in satisfying Plaintiff's note-taking accommodation for almost the entirety of the 2018-2019 academic school year.

123.

The classes for Plaintiff's 2018-2019 academic school year were taught with a heavy emphasis on lectures, and students were reliant on lectures, and taking notes, for obtaining all the necessary information they needed to know for their classes.

124.

Throughout the 2018-2019 academic school year, Plaintiff complained to Marla Thompson and Dr. Brandi Knight about the untimeliness of Plaintiff's note-taking accommodation.

125.

In or around late 2018 to early 2019, Dr. Brandi Knight spoke to Plaintiff about hiring a professional notetaker to help with the untimeliness of Plaintiff's note-taking accommodation, and in response Plaintiff inquired via email on or around January 7, 2019. See Exhibit AP.

126.

On or around January 17, 2019, ten days later, Dr. Brandi Knight responded to Plaintiff stating no one would be hired. See Exhibit AQ and Exhibit AR.

127.

On or around January 22, 2019, Dr. Brandi Knight explained the now supposed bottleneck causing the untimeliness of Plaintiff's note-taking accommodation was Dr. Brandi knight herself in that Dr. Brandi Knight admitted that students should receive their notes "in a 24-hour or less" turnaround time, but it was not feasible for her to accomplish herself because she was the sole person in charge of the note-taking accommodation. See Exhibit AR.

128.

On or around January 22, 2019, Dr. Brandi Knight communicated to Plaintiff via email about the intention to involve other MSM staff as the quickest improvement to the untimeliness of Plaintiff's note-taking accommodation. See Exhibit AR.

129.

Other staff at MSM were not involved with Plaintiff's note-taking accommodation until after Dr. Brandi Knight left MSM at or around the end of March of 2019, approximately two months later.

130.

On or around February 25, 2019, Plaintiff emailed Marla Thompson additional written complaints about poor communication regarding Marla Thompson and Dr. Brandi Knight not responding to Plaintiff's emails, and about continuing issues regarding the untimeliness of Plaintiff's note-taking accommodation (discrimination). See Exhibit AS, Pages 1-5.

131.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AS, Pages 1-5) sent to Marla Thompson, MSM's Title IX Coordinator, was not promptly investigated.

132.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AS, Pages 1-5)

sent to Marla Thompson, MSM's Title IX Coordinator, MSM never provided Plaintiff with any written notification regarding the results of any investigation.

133.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AS, Pages 1-5) sent to Marla Thompson, MSM's Title IX Coordinator, MSM did not take any appropriate corrective actions.

134.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AS, Pages 1-5) sent to Marla Thompson, MSM's Title IX Coordinator, MSM did not follow up as appropriate to ensure any remedial actions it instituted were effective.

135.

For the 2018-2019 academic school year at MSM, the average turnaround time of notes received—not all notes were ever received—for any class was 14.61 days for Plaintiff's note-taking accommodation.

136.

For the 2018-2019 academic school year at MSM, Plaintiff received notes for only eighty-eight percent (88%) of classes for Plaintiff's note-taking accommodation.

137.

For the 2018-2019 academic school year at MSM, Plaintiff received a 2.68/4.00 GPA (Passing is 2.00/4.00). See Exhibit AN, Page 2.

138.

MSM failed in its duty to coordinate and manage Plaintiff's note-taking accommodation for the 2018-2019 academic school year.

139.

After Dr. Brandi Knight left MSM on or around the end of March of 2019, Dezarae Blossomgame, Dr. Brandi Knight's Program Manager at the OSLER,[2]

---

[2] Defined in Paragraph 24 as Office of Student Learning and Educational Resources

took over some, if not all, of the duties of managing Plaintiff's note-taking

accommodation.

140.

Only after Dr. Brandi Knight left MSM, on or around the end of March of

2019, was Marla Thompson purportedly then able to change the duties and

responsibilities of Plaintiff's student notetakers, as she verbally stated to Plaintiff

on or around February 19, 2020 and February 26, 2020.

141.

The 24-48-hour turnaround time goal for notes per Plaintiff's note-taking

accommodation was never measured or evaluated by either Marla Thompson or

Dr. Brandi Knight during the 2018-2019 academic school year at MSM.

142.

On or around July 20, 2018, MSM's ODS requested that it needed an

updated psychological evaluation from Plaintiff because the 2017 psychological

evaluation was older than three years.

143.

In Plaintiff's 2019 psychological evaluation, the issue of Plaintiff's note-

taking accommodation was even noted, stating:

"[Plaintiff] reported that [Plaintiff] [h]as accommodations in medical school
including [a] notetaker, but revealed that [Plaintiff's] medical school had not

previously granted the accommodation [to other students], meaning that the implementation is inconsistent. [Plaintiff] explained that [Plaintiff] often must wait a week or more for a copy of notes from a given class, reducing [Plaintiff's] ability to use the notes in a timely manner."

144.

In Plaintiff's 2019 psychological evaluation, the examiner also stated,

"Overall, [Plaintiff] exhibits many strengths from which to draw. In particular, [Plaintiff] demonstrated strong intellectual abilities. The prognosis for the academic success in medical school will be favorable if [Plaintiff] makes active use of appropriate academic accommodations and support services."

145.

MSM's ODS received and read Plaintiff's 2019 psychological evaluation and used this evaluation in its continuation of granting Plaintiff's academic accommodations.

146.

MSM's ODS received and read Plaintiff's 2019 psychological evaluation, and yet the issues with Plaintiff's note-taking accommodation persisted.

E.   2019-2020 ACADEMIC SCHOOL YEAR

147.

For the 2019-2020 academic school year (here and hereafter accounts for the time period from August 13, 2019 to May 15, 2020), MSM's Office of Disability

Services granted Plaintiff the following accommodations: Private and/or distraction-reduced testing room; Designated note-taker in classes; Access to audio and video taped lectures; Double time for examinations and in-class assignments; Breaks for examinations and in-class assignments; and, Preferential seating for class. See Exhibit AI, Page 3.

148.

On or around August 13, 2019, Plaintiff started classes as a second-year, decelerated part two of two, student at MSM for the 2019-2020 academic school year.

149.

For the 2019-2020 academic school year, MSM more or less adequately provided Plaintiff with notes per Plaintiff's note-taking accommodation.

150.

The classes in Plaintiff's first two years (2017-2018 and 2018-2019 academic school years) were necessary in developing Plaintiff's understanding of normal human physiology.

151.

The classes in Plaintiff's 2019-2020 academic school year were about developing Plaintiff's understanding of abnormal human physiology.

152.

Plaintiff was unable to properly learn and understand normal human physiology in the 2017-2018 and 2018-2019 academic school years due to the failings of MSM in providing for Plaintiff's note-taking accommodation during the 2017-2018 and 2018-2019 academic school years.

153.

Plaintiff was unable to properly learn abnormal human physiology in the 2019-2020 academic school year due to the failings of MSM in providing for Plaintiff's note-taking accommodation in the 2017-2018 and 2018-2019 academic school years.

154.

MSM told its students, including Plaintiff, that one cannot learn abnormal human physiology without first learning and understanding normal human physiology.

155.

The 24-48-hour turnaround time goal for notes per Plaintiff's note-taking accommodation was never measured or evaluated by either Marla Thompson or anyone else at MSM during the 2019-2020 academic school year at MSM.

F.   RESOLUTION ATTEMPT BY PLAINTIFF

156.

On or around February 17, 2020, Plaintiff emailed Dr. Ngozi Anachebe, Associate Dean of Admission and Student Affairs at MSM, a comprehensive written complaint, with an attached detailed history of Plaintiff's experiences at MSM, regarding the concerns and problems Plaintiff had encountered, since Plaintiff has been a student at MSM, regarding Plaintiff's note-taking accommodation (discrimination) and that Plaintiff wished to meet for discussion. See Exhibit AT and Exhibit AU.

157.

On or around February 18, 2020, Dr. Ngozi Anachebe responded to Plaintiff's email, cc-ing Marla Thompson to her response so that Marla Thompson was immediately privy to things Plaintiff said about Marla Thompson in Plaintiff's written complaint, stating that she did not handle accommodations and that Plaintiff should contact Marla Thompson. See Exhibit AV.

158.

On or around February 18, 2020, Plaintiff subsequently emailed Marla Thompson the same comprehensive written complaint, with an almost identical attachment as used in the email sent to Dr. Ngozi Anachebe about Plaintiff's

experiences at MSM, regarding the concerns and problems Plaintiff had

encountered, since Plaintiff has been a student at MSM, regarding Plaintiff's note-

taking accommodation (discrimination) and that Plaintiff wished to meet for

discussion. See Exhibit AW and Exhibit AX.

159.

On or around February 19, 2020 and February 26, 2020, Plaintiff met with

Marla Thompson who ultimately told Plaintiff that she could not address the

remedies Plaintiff was suggesting regarding the failures of MSM in providing for

Plaintiff's note-taking accommodation for the 2017-2018 and 2018-2019 academic

school years.

160.

Additionally, when Plaintiff met with Marla Thompson on or around

February 19, 2020 and February 26, 2020, Marla Thompson informed Plaintiff that

on or around March of 2019, Marla Thompson was informed by, and supposedly

became first aware that, Dr. Brandi Knight, at all times during which Plaintiff had

been a student at MSM, had access to notes from notetakers of previous years and

chose not to provide these—or reveal her possession thereof to either Marla

Thompson or Plaintiff—as supplemental help to Plaintiff, when Dr. Brandi Knight,

at the same time, was providing untimely notes to Plaintiff for Plaintiff's note-taking accommodation.

161.

In other words, students not registered with ODS, who are performing poorly academically, can be mandated to join OSLER, and thus they would then have access to OSLER's resources such as notes from one of the OSLER student notetakers, and Dr. Brandi Knight, as OSLER's then Director, had access to notes from previous years of the same classes Plaintiff was taking.

162.

On or around February 19, 2020 and February 26, 2020, Marla Thompson told Plaintiff during their meeting that she needed to meet with Dr. Ngozi Anachebe to discuss Plaintiff's concerns.

163.

On or around March 5, 2020, Marla Thompson notified Plaintiff via email that she had completed her discussion with Dr. Ngozi Anachebe about Plaintiff's concerns, that Dr. Ngozi Anachebe confirmed she understood Plaintiff's concerns correctly, and that Plaintiff should schedule a meeting with Dr. Ngozi Anachebe. See Exhibit AY, Pages 2-3.

164.

On or around March 13, 2020, Plaintiff met with Dr. Ngozi Anachebe wherein, after she asked if Plaintiff was recording their conversation, she repeated that she did not handle accommodations and had not, and would not, hear Plaintiff's concerns regarding Plaintiff's note-taking accommodation. See Exhibit AZ.

165.

On or around March 13, 2020, during Plaintiff's meeting with Dr. Ngozi Anachebe, despite Plaintiff explaining the depression, anxiety, and emotional turmoil Plaintiff was experiencing, Dr. Ngozi Anachebe stated she did not want to discuss Plaintiff's medical situation. See Exhibit AZ.

166.

On or around March 13, 2020, during Plaintiff's meeting with Dr. Ngozi Anachebe, Plaintiff was informed that any leave of absence taken would only freeze Plaintiff's current progress and grades in Plaintiff's current classes, and Plaintiff would pick back up in the following academic year exactly where Plaintiff left off in the current academic year with the same grades in place for the same classes Plaintiff would be continuing. See Exhibit AZ.

167.

On or around March 13, 2020, during Plaintiff's meeting with Dr. Ngozi Anachebe, Dr. Ngozi Anachebe also provided Plaintiff with the email address of MSM's Chief Compliance Officer, Keith Henderson. See Exhibit AZ.

168.

Plaintiff concluded that taking a leave of absence would not solve Plaintiff's problems because Plaintiff's grades would not be fixed in that Plaintiff has received poor grades[3] and developed only a poor and limited knowledgebase either during times when Plaintiff's note-taking accommodation was not being provided during the 2017-2018 and 2018-2019 academic school years, or when the note-taking accommodations was being provided in the 2019-2020 academic school year but due to the effects of when MSM was not providing for Plaintiff's note-taking accommodation during the 2017-2018 and 2018-2019 academic school years, learning the material in the 2019-2020 academic school year was, as MSM has told its students, impossible.[4]

---

[3] Having poor grades negatively impacts one's ability to match into residency programs.
[4] See Paragraph 154.

169.

On or around March 13, 2020, Plaintiff subsequently emailed Marla Thompson about the ineffectiveness of Plaintiff's meeting with Dr. Ngozi Anachebe stating that Dr. Ngozi Anachebe was not aware, or did not reveal that she was aware, of Plaintiff's concerns, despite Marla Thompson previously stating otherwise to Plaintiff, that Plaintiff was "left in a very uncomfortable situation where [Plaintiff] was meeting with someone who did not want to, or could not, hear [Plaintiff's] concerns (because [Plaintiff's] accommodations [were] the crux of the matter)," that Plaintiff was "left perplexed here" because Plaintiff did not know who could help Plaintiff, and sought answers about why the meeting turned out the way it did. See Exhibit AY, Page 1.

170.

On or around March 16, 2020, Marla Thompson responded to Plaintiff via email repeating that Plaintiff's concerns were shared with Dr. Ngozi Anachebe and stated that Plaintiff should use all of Plaintiff's available resources, including Plaintiff's 227-page-long 2019-2020 MSM Student Handbook, in looking for a solution to Plaintiff's problem. See Exhibit AY, Page 1.

171.

Comparing Exhibit AY and Exhibit AZ, there exists untruthfulness and collusion between the two accounts, with Marla Thompson stating to Plaintiff via email that non-ODS decisions such as concerns involving tuition were shared with Dr. Ngozi Anachebe and that Dr. Ngozi Anachebe correctly understood Plaintiff's concerns, while Dr. Ngozi Anachebe stated to both Marla Thompson and Plaintiff via email that she was under the impression that she was only discussing MSM's academic policy to Plaintiff.

172.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AW and Exhibit AX) sent to Marla Thompson, MSM's Title IX Coordinator, was not promptly investigated.

173.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73), Plaintiff's written discrimination complaint (See Exhibit AW and Exhibit

AX) sent to Marla Thompson, MSM's Title IX Coordinator, MSM never provided

Plaintiff with any written notification regarding the results of any investigation.

174.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD,

Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages

37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40,

71-73), Plaintiff's written discrimination complaint (See Exhibit AW and Exhibit

AX) sent to Marla Thompson, MSM's Title IX Coordinator, MSM did not take any

appropriate corrective actions.

175.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD,

Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages

37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40,

71-73), Plaintiff's written discrimination complaint (See Exhibit AW and Exhibit

AX) sent to Marla Thompson, MSM's Title IX Coordinator, MSM did not follow

up as appropriate to ensure any remedial actions it instituted were effective.

176.

The actions of Marla Thompson and Dr. Ngozi Anachebe, regarding how

MSM chose to handle Plaintiff's concerns regarding the failure of MSM in

accommodating Plaintiff's disability (discrimination), were made for the sole

purposes of discriminating against Plaintiff and intimidating, threatening,

retaliating against, coercing, and interfering with Plaintiff's exercise or enjoyment

of, or on account of Plaintiff having exercised or asserted, Plaintiff's rights under

the disability rights statutes.

177.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Page 68), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 72), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 73) has stated, under the "Prohibition Against

Retaliation" subheading, under the "Nondiscrimination and Anti-Harassment

Policies" heading, that,

> "Anyone who, in good faith, reports what s/he believes to be discrimination
> or harassment, who participates or cooperates in any investigation, or who
> otherwise opposes unlawful conduct believed to be in violation of this policy
> will not be subjected to retaliation. Anyone who believes he or she has been
> the victim of retaliation for reporting discrimination or harassment,
> participating or cooperating in an investigation or otherwise opposing
> unlawful conduct believed to be in violation of this policy should
> immediately contact the Title IX Coordinator [Marla Thompson] or the
> Deputy Title IX Coordinator, who have authority to investigate all such
> claims. Any individual found to have retaliated against another individual
> who engaged in conduct consistent with the protections afforded under this
> Policy will be in violation of this policy and will be subject to disciplinary
> action."

## G.   COMPLIANCE COMPLAINT AND DISMISSAL HEARING

### 178.

On or around March 16, 2020, Plaintiff emailed Keith Henderson, MSM's

Chief Compliance Officer, Keith Henderson chose not to respond to Plaintiff. See

Exhibit BA and Exhibit BB, Page 2.

### 179.

On or around March 28, 2020, Plaintiff filed an internal compliance

complaint to MSM's Office of Compliance regarding the failure of MSM in timely

providing for Plaintiff's note-taking accommodation and for the attempts to

conceal and retaliatory acts described in subdivision heading F, "RESOLUTION

ATTEMPT BY PLAINTIFF." See Exhibit BB, Pages 1-7.

### 180.

The investigation regarding Plaintiff's compliance complaint filed on or

around March 28, 2020, has at all times been conducted by Alecia Bell, who

became MSM's Interim Chief Compliance Officer on or around April of 2020.

### 181.

Plaintiff would end up failing Plaintiff's classes during the 2019-2020

academic school year (See Exhibit AN, Page 3) due to the failings of MSM in

providing for Plaintiff's note-taking accommodation in the 2017-2018 and 2018-

2019 academic school years, for reasons as explained in subdivision heading E,

"2019-2020 ACADEMIC SCHOOL YEAR," and due to Plaintiff's time being

spent on seeking resolutions for such failings as described in all paragraphs herein

and the toll it was taking on Plaintiff (See Exhibit BC, Pages 2-3).

182.

On or around May 27, 2020, Plaintiff advised Alecia Bell via phone

conversation that MSM may attempt to dismiss Plaintiff for failing Plaintiff's

classes for the 2019-2020 academic school year, and that she should contact Dr.

Brenda Klement, Student Academic Progress and Promotion (hereafter referred to

as "SAPP") Committee Chair, to inform her that Plaintiff has an open and ongoing

investigation regarding a compliance complaint Plaintiff filed on or around March

28, 2020, about the failure of MSM in timely providing for Plaintiff's note-taking

accommodation.

183.

On or around May 27, 2020, Alecia Bell communicated to Plaintiff that she

would contact Dr. Brenda Klement.

184.

On or around May 29, 2020, while Plaintiff's compliance complaint about

MSM's failure to accommodate Plaintiff was still being investigated by Alecia

Bell, MSM notified Plaintiff via email that there was a dismissal hearing scheduled against Plaintiff for June 16, 2020. See Exhibit BD, Page 1.

185.

This notification of a dismissal hearing scheduled against Plaintiff was cc-ed to Dr. Ngozi Anachebe, Dr. Brenda Klement, and Plaintiff's two advisors: Dr. Robert Sloviter and Dr. Chevon Brooks. See Exhibit BD, Page 3.

186.

On or around May 30, 2020, Plaintiff notified the person in charge of the dismissal hearing, Dr. Brenda Klement, via email that Plaintiff has an open and ongoing investigation regarding a compliance complaint Plaintiff filed on or around March 28, 2020, about the failure of MSM in providing for Plaintiff's note-taking accommodation. See Exhibit BE, Pages 2-3.

187.

Plaintiff's notice to Dr. Brenda Klement was cc-ed to Dr. Ngozi Anachebe, Alecia Bell, and Plaintiff's two advisors: Dr. Robert Sloviter and Dr. Chevon Brooks. See Exhibit BE, Pages 2-3.

188.

Plaintiff complained to both Dr. Brenda Klement, via email (See Exhibit BE, Pages 2-3), and Alecia Bell, via email (See Exhibit BF, Pages 1-2) and via phone

conversations, about the prejudicial nature of having a dismissal hearing before the investigative conclusion of an already filed compliance complaint regarding the failure of MSM in accommodating Plaintiff's disability, and the purpose altogether of a dismissal hearing when MSM failed to provide for Plaintiff's note-taking accommodation.

189.

On or around May 31, 2020, Alecia Bell claimed to Plaintiff via email that she had not yet reached out to Dr. Brenda Klement (See Exhibit BF, Page 1), and on or around June 1, 2020, Alecia Bell reported to Plaintiff via email that she would reach out to Dr. Brenda Klement later that day (See Exhibit BF, Page 1).

190.

Later on or around June 1, 2020, Dr. Brenda Klement reached out to Plaintiff informing Plaintiff via email that after speaking with Alecia Bell, MSM needed to continue with the dismissal hearing until someone told her that it should be postponed or cancelled. See Exhibit BE, Page 2.

191.

On or around June 1, 2020, when Plaintiff subsequently asked Dr. Brenda Klement via email who at MSM had the authority to postpone or cancel the

dismissal hearing, Dr. Brenda Klement chose not to respond to Plaintiff. See

Exhibit BE, Pages 1-2.

192.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Page 70), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 74), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 75), has stated, under the "Compliance Hotline"

heading, that,

> "[MSM] is an organization with strong values of responsibility and integrity.
> Our written standards and policies contain general guidelines for conducting
> business with the highest standards of ethics. The institution is committed to
> an environment where open, honest communications are the expectation, not
> the exception."

193.

On or around June 5, 2020, Alecia Bell notified Plaintiff via phone that Dr.

Brenda Klement and herself both decided that since there was supposedly not a

process in place at MSM concerning dismissal hearings where the student also has

an ongoing compliance investigation, and because Alecia Bell supposedly still did

not have enough information collected from other parties at MSM about Plaintiff's

then two-plus-month-old compliance complaint, the dismissal hearing against

Plaintiff would continue as scheduled. See Exhibit BG.

194.

On or around June 5, 2020, Alecia Bell also notified Plaintiff via phone that despite ODS having more or less agreed to the facts in Plaintiff's compliance complaint about MSM's failure to accommodate Plaintiff, the dismissal hearing against Plaintiff would continue as scheduled.

195.

On or around June 5, 2020, Alecia Bell advised Plaintiff via phone that during the dismissal hearing, Plaintiff should disclose all of the details about Plaintiff's compliance complaint, regarding the failures of MSM in accommodating Plaintiff, to all members of the dismissal hearing.

196.

This is despite MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 70), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 74), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 75), under the "Compliance Hotline" heading, stating that in a compliance complaint, "[a]ll information provided will remain confidential."

197.

After Plaintiff was on notice for fourteen (14) days that MSM intended to have a dismissal hearing against Plaintiff, which caused Plaintiff significant

emotional distress, Dr. Brenda Klement notified Plaintiff on or around June 12, 2020, via email that the dismissal hearing scheduled for June 16, 2020, had been postponed until a later time. Exhibit BE, Page 1.

198.

Plaintiff was not offered any explanation as to why the dismissal hearing was now postponed - nor has a reason ever been offered by anyone at MSM. See Exhibit BE, Page 1.

199.

The actions of MSM, in its desire to have a dismissal hearing before the investigative conclusion of a previously filed compliance complaint, regarding the failure of MSM in accommodating Plaintiff's disability, were made for the sole purposes of discriminating against Plaintiff and intimidating, threatening, retaliating against, coercing, and interfering with Plaintiff's exercise or enjoyment of, or on account of Plaintiff having exercised or asserted Plaintiff's rights under the disability rights statutes.

200.

On or around June 19, 2020, Alecia Bell notified Plaintiff via phone that the investigation regarding Plaintiff's compliance complaint, filed on or around March 28, 2020, had been concluded and that a written report would be prepared by the

middle of the week of June 22, 2020, and that she would present her report to

MSM's legal department during the week of June 29, 2020.

201.

On or around June 19, 2020, Alecia Bell also notified Plaintiff via phone that

for the events that Plaintiff was subjected to by Marla Thompson and Dr. Ngozi

Anachebe in subdivision heading F, "RESOLUTION ATTEMPT BY

PLAINTIFF," from on or around February 17, 2020, to on or around March 16,

2020, Alecia Bell stated that she could not respond as to why this happened from

the responses Marla Thompson and Dr. Ngozi Anachebe provided to her. See

Exhibit BH, Pages 1-4.

202.

On or around June 19, 2020, Alecia Bell additionally stated that she believes

"greater understanding around the requirements of the ADA is necessary for all

involved in academia and have encouraged more training from our ODS office in

general," as she confirmed in her email to Plaintiff on or around June 24, 2020. See

Exhibit BH, Pages 1-4.

203.

After their phone meeting on around June 19, 2020, Plaintiff subsequently

asked Alecia Bell via email on or around June 19, 2020, if Plaintiff would be

provided a copy of this written report, to which Alecia Bell responded on or around
June 23, 2020, that Plaintiff would not be provided a copy since the reports were
internal confidential documents (See Exhibit BI), despite Alecia Bell telling
Plaintiff on or around May 27, 2020, that Plaintiff would receive documentation
about Alecia Bell's investigation (See Exhibit BC, Page 1).

204.

On or around July 1, 2020, Alecia Bell notified Plaintiff via email that her
meeting with the legal department had been delayed until the early part of the week
of July 6, 2020, but that the legal department had her report and would be ready to
review and discuss during their meeting. See Exhibit BJ.

205.

On or around July 6, 2020, Alecia Bell emailed Plaintiff stating that Plaintiff
would now be receiving, by the end of the week of July 13, 2020, a summary of
her findings, as a written letter of determination (See Exhibit BK), despite telling
Plaintiff the contrary on or around June 19, 2020 (See Exhibit BI).

206.

On or around July 9, 2020, Plaintiff asked Alecia Bell what the difference
was between the report she provided to MSM's legal department and the written

letter of determination she would be providing to Plaintiff, Alecia Bell chose not to respond to Plaintiff. See Exhibit BL.

207.

Despite Plaintiff being asked by Alecia Bell, MSM's Interim Chief Compliance Officer, via phone meeting on or around June 19, 2020, to give MSM an opportunity to provide some solutions with regards to Plaintiff's compliance complaint (See Exhibit BN, Page 2), MSM notified Plaintiff on or around July 13, 2020, that upon advisement by the Office of Compliance (Alecia Bell, MSM's Interim Chief Compliance Officer), Plaintiff's previously postponed dismissal hearing was now rescheduled for July 28, 2020. See Exhibit BM, Pages 1-5.

208.

Plaintiff was not offered any explanation as to why the dismissal hearing was now rescheduled - nor has a reason ever been offered by anyone at MSM. See Exhibit BM, Pages 1-5.

209.

This notification of a rescheduled dismissal hearing scheduled against Plaintiff was cc-ed to Dr. Ngozi Anachebe, Dr. Brenda Klement, and Plaintiff's two advisors: Dr. Robert Sloviter and Dr. Chevon Brooks. See Exhibit BM, Pages 1-5.

210.

MSM has failed to adopt and publish grievance procedures providing for prompt and equitable resolution of complaints under the Rehabilitation Act and the ADA.

211.

On or around June 26, 2020, and June 29, 2020, Plaintiff emailed Alecia Bell and asked for more clarity about the processes and procedures regarding MSM's Office of Compliance and Office of General Counsel in investigating and dealing with Plaintiff's compliance complaint. See Exhibit BN, Pages 1-2.

212.

On or around June 29, 2020, Alecia Bell stated she did not have answers to any of Plaintiff's questions, when in fact Alecia Bell knew the answers to at the very least Plaintiff's first and second question, because it was the process and procedure Alecia Bell was carrying out. See Exhibit BN, Pages 1-2.

213.

On or around July 14, 2020, Alecia Bell submitted her conclusory findings, regarding Plaintiff's three-plus-month-old compliance complaint, in her written letter of determination emailed to Plaintiff. See Exhibit BO.

214.

In Alecia Bell's written letter of determination sent to Plaintiff, Alecia Bell made numerous erroneous, misleading, unclear, arbitrary, self-serving, and false findings including, but not limited to, the issues described in the following eleven (10) paragraphs. See Exhibit BO.

215.

In Alecia Bell's written letter of determination to Plaintiff, Alecia Bell failed to address the portion of Plaintiff's compliance complaint outlining MSM's attempts to conceal and retaliatory acts made against Plaintiff (See Exhibit BB, Pages 1-2), events which are described in subdivision heading F, "RESOLUTION ATTEMPT BY PLAINTIFF." See Exhibit BO, Pages 2-3.

216.

In Alecia Bell's written letter of determination to Plaintiff, Alecia Bell states in her third bullet of key findings that, "By August of 2017 [Plaintiff] was receiving notes, however, those notes were not provided to [Plaintiff] within 24-48 hours of each class." See Exhibit BO, Page 2.

217.

This key finding of Alecia Bell completely ignores the key fact that Plaintiff did not always receive notes per Plaintiff's note-taking accommodation (See Paragraphs 106 and 136), and Plaintiff communicated this fact extensively to

Alecia Bell, including but not limited to, in Plaintiff's communications with Alecia Bell and in Plaintiff's compliance complaint (See Exhibit BB, Pages 1, 3, and 4).

218.

In Alecia Bell's written letter of determination to Plaintiff, Alecia Bell states in her fourth bullet of key findings that, "OSLER continued to provide notes to accommodated students."[5] See Exhibit BO, Page 2.

219.

This key finding of Alecia Bell completely ignores the key facts that Plaintiff did not always receive notes per Plaintiff's note-taking accommodation (See Paragraphs 106 and 136) and that these notes were not timely (See Paragraphs 105 and 135), and Plaintiff communicated this fact extensively to Alecia Bell, including but not limited to, in Plaintiff's communications with Alecia Bell and in Plaintiff's compliance complaint (See Exhibit BB, Pages 1, 3, and 4).

220.

In Alecia Bell's written letter of determination to Plaintiff, Alecia Bell states in her fourth bullet of key findings that, "Under the supervision of a new director,

---

[5] OSLER is Defined in Paragraph 24 as Office of Student Learning and Educational Resources

OSLER provides notes to accommodated students within a 24-48 hour period of each class and includes an email notification." See Exhibit BO, Page 2.

221.

This key finding of Alecia Bell is misleading in that MSM has not conducted any of its own analysis and this supposed key finding is mere speculation rather than a finding of fact.

222.

This key finding of Alecia Bell is misleading in that during the initial stages of the investigation regarding Plaintiff's compliance complaint, OSLER communicated to Alecia Bell that notes were provided weekly to students (See Exhibit BB, Pages 5-6), not within a 24-48 hour period of each class, which is contrary to Alecia Bell's key finding here.

223.

In Alecia Bell's written letter of determination to Plaintiff, Alecia Bell states that, "Compliance has determined that OSLER resolved the complaint, March 22, 2019. OSLER continues to provide class notes within 24-48 hours, meeting MSM's requirement to provide auxiliary aids and services to ensure effective participation in the medical school program." See Exhibit BO, Page 3.

224.

This statement made by Alecia Bell is at best self-serving in that nowhere in Alecia Bell's written letter of determination is it ever stated with such emphasis and clarity that MSM did not meet its requirements to provide auxiliary aids and service to ensure effective participation of Plaintiff in MSM's medical school program during Plaintiff's 2017-2018 and 2018-2019 academic school years, despite 'OSLER resolving a complaint,' nor does Alecia Bell's written letter of determination mention anything about the issues Plaintiff brought up in the compliance complaint as a result of MSM's failings, including but not limited to, Plaintiff's poor grades, Plaintiff's poor knowledgebase, and Plaintiff receiving financial injury (See Exhibit BB).

225.

On information and belief, Plaintiff's compliance complaint is being swept under the rug due to MSM's current reaffirmation of its accreditation with the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC) (See Exhibit BP, Pages 1-2), and due to MSM's current reaffirmation of its accreditation with the Liaison Committee on Medical Education (LCME) (See Exhibit BP, Pages 3-7).

226.

On information and belief, Alecia Bell intentionally made numerous erroneous, misleading, unclear, arbitrary, self-serving, and false findings in her written letter of determination so as to preclude Plaintiff from being able to rely on it during Plaintiff's dismissal hearing.

227.

Despite Plaintiff being asked by Alecia Bell via phone meeting on or around June 19, 2020, to give MSM an opportunity to provide some solutions with regards to Plaintiff's compliance complaint (See Exhibit BN, Page 2), MSM has not made any attempted resolutions regarding Plaintiff's compliance complaint and accordingly, Plaintiff has been precluded from being a student for the 2020-2021 academic school year.

228.

On or around July 16, 2020, per the instructions on Page 5 of Exhibit BM, in preparation for Plaintiff's dismissal hearing, Plaintiff emailed Dr. Ngozi Anachebe, Associate Dean for Admission and Student Affairs, and asked if the dismissal hearing committee members will have access to Plaintiff's compliance complaint, and the findings made by the Office of Compliance, to which Dr. Ngozi Anachebe responded on or around July 16, 2020, that Plaintiff's dismissal hearing is an

academic hearing and the "Compliance Office, Office of Disability Services, Student Health Services, Morehouse Health Care, and Office of Counseling Services are not involved and their records are not part of [Plaintiff's] academic records." See Exhibit BQ, Pages 1-3.

229.

On or around July 28, 2020, MSM held a dismissal hearing against Plaintiff. See Exhibit BM.

230.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 101), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 107), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 108), has stated, under the "Dismissal and Suspension" subheading, under "The Student Academic Progress & Promotion Committee (SAPP)" heading, that,

> "The student is invited to appear in person to present their case, evidence, and context for the academic deficiencies. All documentary evidence pertinent to their case against dismissal must be provided to the Chair of the SAPP committee by the start of the dismissal hearing."

231.

In accordance with the preceding paragraph, on or around July 28, 2020, Plaintiff emailed six (6) exhibits, which are attached hereto as one collective

exhibit (See Exhibit BR, Pages 1-29), to Dr. Brenda Klement, SAPP Committee

Chair. See Exhibit BS.

232.

On or around July 28, 2020, Dr. Brenda Klement subsequently emailed

Plaintiff asking, "Are you going to present this information during the hearing? Do

you want me to show them to the committee on the screen as you go through each

one? Or should the committee review the documents before you join the meeting?"

See Exhibit BS.

233.

On or around July 28, 2020, Plaintiff responded to Dr. Brenda Klement's

email stating that, "Ideally I would like the committee to look them over before the

hearing. It could make things a lot easier for everyone," to which Dr. Brenda

Klement responded via email with "ok, got it!" See Exhibit BS.

234.

At the start of Plaintiff's dismissal hearing on or around July 28, 2020,

Plaintiff was informed, without warning, by Dr. Brenda Klement that the

committee members had not, and were not, going to look over Plaintiff's dismissal

hearing exhibits before the hearing, despite Dr. Brenda Klement affirming that they

would (See Exhibit BS), and with no explanation as to why this decision was being

made when Plaintiff was previously asked what method of disseminating

Plaintiff's dismissal hearing exhibits Plaintiff wanted.

235.

At the start of Plaintiff's dismissal hearing on or around July 28, 2020,

Plaintiff was informed, without warning, by Dr. Brenda Klement that the exhibits

were to remain in Dr. Ngozi Anachebe's and Dr. Martha Elks's, Senior Associate

Dean of Educational Affairs, possession.

236.

At the start of Plaintiff's dismissal hearing on or around July 28, 2020,

Plaintiff was informed, without warning, by Dr. Brenda Klement that the exhibits

would only be available for viewing by the dismissal hearing's committee

members if Dr. Brenda Klement shared her screen to these committee members

during Plaintiff's dismissal hearing.

237.

Plaintiff was without recourse for this surprise decision by MSM and its

indifference of disseminating Plaintiff's dismissal hearing exhibits to the dismissal

hearing's committee members prior to Plaintiff's dismissal hearing.

238.

Plaintiff gave an oral account of everything discussed in Plaintiff's dismissal hearing exhibits, including but not limited to, Plaintiff's reasonable note-taking accommodation that MSM granted to Plaintiff, MSM's failure in providing for Plaintiff's reasonable note-taking accommodation as described herein, Plaintiff's written complaints sent to MSM's Title IX Coordinator (Marla Thompson) as described herein, and MSM's failure in handling said complaints despite MSM's commitments and policies as outlined in MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 35, 65-68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Pages 37, 70-72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 40, 71-73) as described herein, and in the event any of the committee members wanted to see any of Plaintiff's dismissal hearing exhibits (See Exhibit BR), Plaintiff would ask Dr. Brenda Klement to share her screen to the committee members.

239.

No committee members ever asked to see any of Plaintiff's dismissal hearing exhibits during Plaintiff's dismissal hearing.

240.

During Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking accommodation, granted by MSM, as non-essential because Plaintiff had textbooks.

241.

During Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking accommodation, granted by MSM, as non-essential because Plaintiff had access to class recordings.

242.

During Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff continually stressed that Plaintiff's note-taking accommodation was necessary to ensure Plaintiff had meaningful access to MSM's medical school program.

243.

During Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff continually stressed that failing to provide for Plaintiff's note-taking accommodation, that MSM had granted to Plaintiff for the entirety of Plaintiff's medical school education, was very clear disability discrimination.

244.

During Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff continually stressed that the time periods in which MSM failed to provide Plaintiff's note-taking accommodation were necessary for Plaintiff to learn and understand normal human physiology; and that MSM has told its students that one cannot learn abnormal human physiology (the classes Plaintiff failed during the 2019-2020 academic school year) without first learning normal human physiology.

245.

During Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff also spoke about further attempts made by Plaintiff since January of 2020 to find resolutions to the problems Plaintiff was experiencing including, but not limited to, Plaintiff's time spent combing through two plus years of emails, compiling and conducting analytics with regards to Plaintiff's note-taking accommodation for the 2017-2018 and 2018-2019 academic school years, Plaintiff's meetings with Marla Thompson and Dr. Ngozi Anachebe, Plaintiff filing a compliance complaint, and Plaintiff sharing to Marla Thompson and Dr. Ngozi Anachebe Plaintiff's feelings of depression, anxiety, and panic attacks with regards to this entire situation.

246.

On or around July 28, 2020, Plaintiff was later notified via phone by Dr.

Kennie Shepherd that Plaintiff was being dismissed from MSM.

247.

On or around July 30, 2020, Plaintiff received written notification of

Plaintiff's dismissal from MSM's medical school program. See Exhibit BT.

248.

In its dismissal letter to Plaintiff, MSM alleges,

"After careful consideration of the information you presented during the
hearing, the written information you submitted to the committee (Exhibits
A-F) [Plaintiff's Exhibit BR], and your academic transcript, the committee
voted to dismiss you from Morehouse School of Medicine. The decision was
based on the school's policy of receiving a final grade of D or F while in the
decelerated track, and for receiving two or more final grades of D or F (Page
107, iii and viii, respectively, 2019-2020 Student Handbook) [Plaintiff's
Exhibit AF]." See Exhibit BT, Page 2.

249.

In its dismissal letter to Plaintiff, MSM also alleges,

"In addition, MSM has a policy that the 1st and 2nd Year Curriculum will
consist of no more than 36 months excluding any leave of absence (Page
104, b. 2019-2020 Student Handbook) [Plaintiff's Exhibit AF], and you
have reached this time limit." See Exhibit BT, Page 2.

250.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Page 101, MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 107), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 108) has stated, under the "Dismissal and

Suspension" subheading, under "The Student Academic Progress & Promotion

Committee (SAPP)" heading, that, "The Chair of the SAPP committee will provide

written information on the reasons for the dismissal hearing."

251.

Plaintiff was never notified or provided written information (See Exhibit

BD, Page 4, and Exhibit BM, Page 4) that one of the reasons for MSM's dismissal

hearing against Plaintiff, and one of the reasons MSM's dismissal of Plaintiff

would ultimately be for, was that "MSM has a policy that the 1st and 2nd Year

Curriculum will consist of no more than 36 months excluding any leave of absence

(Page 104, b. 2019-2020 Student Handbook) [Plaintiff's Exhibit AF], and [Plaintiff

had] reached this time limit," (See Exhibit BT, Page 2).

252.

In violation of MSM's 2017-2018 Student Handbook (See Exhibit AD, Page

101), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 107), and

MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 108), MSM did not give Plaintiff notice and an opportunity to present Plaintiff's case, evidence, and context, regarding this particular reason Plaintiff was dismissed from MSM, nor was it ever brought up by anyone during Plaintiff's dismissal hearing.

253.

On information and belief, MSM has allowed other students to spend more than 36 months during their 1st and 2nd Year Curriculum.

254.

On information and belief, other students have been told by MSM all the reasons for their dismissal hearings and have thus been able to properly present their case, evidence, and context in their dismissal hearings.

255.

The acts and omissions of MSM, described herein, were either done with intentional animus or with deliberate indifference to the protected rights of Plaintiff as a person with disabilities.

256.

MSM knew that harm to Plaintiff's federally protected rights was substantially likely as a result of MSM's actions and inactions, and MSM failed to act on that likelihood.

257.

The actions of MSM, in its desire and commitment to dismiss Plaintiff, after knowing of MSM's discrimination of Plaintiff, were made for the sole purposes of discriminating against Plaintiff and intimidating, threatening, retaliating against, coercing, and interfering with Plaintiff's exercise or enjoyment of, or on account of Plaintiff having exercised or asserted Plaintiff's rights under the disability rights statutes.

258.

The actions of MSM, in its desire and commitment to dismiss Plaintiff, despite Alecia Bell asking Plaintiff on June 19, 2020, to give MSM an opportunity to provide some solutions for Plaintiff's compliance complaint (See Exhibit BN, Page 2) regarding the failure of MSM in accommodating Plaintiff's disability, were made for the sole purposes of discriminating against Plaintiff and intimidating, threatening, retaliating against, coercing, and interfering with Plaintiff's exercise or enjoyment of, or on account of Plaintiff having exercised or asserted Plaintiff's rights under the disability rights statutes.

259.

The actions of MSM, in its desire and commitment to dismiss Plaintiff, despite knowing that MSM has treated Plaintiff's written discrimination

complaints with indifference, were made for the sole purposes of discriminating against Plaintiff and intimidating, threatening, retaliating against, coercing, and interfering with Plaintiff's exercise or enjoyment of, or on account of Plaintiff having exercised or asserted Plaintiff's rights under the disability rights statutes.

260.

Plaintiff has currently lost four years due to the actions and inactions of MSM (two years due to MSM's failure in accommodating Plaintiff in the 2017-2018 and 2018-2019 academic school years; one year, the 2019-2020 academic school year, due to the effects of MSM's failure in accommodating Plaintiff in the prior two years; and one year due to Plaintiff not being able to register as a student for the 2020-2021 academic school year).

261.

In its dismissal of Plaintiff, MSM has taken away any reasonable opportunity for Plaintiff to ever study medicine, without corrective relief from MSM.

262.

Plaintiff would like to complete Plaintiff's education at MSM and obtain a medical degreed degree with the same range of opportunities, to perform Plaintiff's best, and to receive the same access to information in order to be able to make the

most of Plaintiff's degree as any other student at MSM, free from discriminatory and retaliatory actions.

263.

As a result of the uncertainty of Plaintiff's future as a medical student due to the discrimination by MSM, as of the end of May of 2020, Plaintiff has been forced to move to Plaintiff's parent's residence in a metro county distant from MSM.

264.

As a result of the discrimination and denial of effective and appropriate auxiliary aids and services, the retaliation against Plaintiff, as well as MSM's discriminatory dismissal of Plaintiff, Plaintiff has experienced actual damages, non-economic damages, loss of educational opportunities, loss of employment opportunities, loss of research opportunities, loss of future income, increased financial debt, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish

## H.   STUDENT LOANS, HEALTH INSURANCE, INFORMATION TECHNOLOGY ACCESS, AND OTHER

### 265.

In the Summer of 2021, Plaintiff was supposed to graduate with a medical degree from MSM.

### 266.

In the event Plaintiff is reinstated as a student in MSM's medical school program, Plaintiff will have prior private student loans that will go into repayment, regardless of if Plaintiff is in school, in or around Summer of 2021.

### 267.

During the course of Plaintiff's compliance complaint and investigation, Plaintiff has communicated the status of what will happen with Plaintiff's private student loans to MSM.

### 268.

MSM has placed Plaintiff in a financially impossible position in that when Plaintiff is allowed to restart Plaintiff's medical school education, after MSM's discrimination of Plaintiff, Plaintiff will have to start paying back Plaintiff's prior private student loans while simultaneously attending MSM, which prohibits its students from obtaining employment if enrolled as a medical school student.

269.

MSM has further currently placed Plaintiff in a financially impossible position in that due to MSM's failure to adopt and publish grievance procedures that incorporate due process standards and that provide for the prompt and equitable resolution of Plaintiff's complaint, all of Plaintiff's loans, private and federal, obtained prior to Plaintiff's enrollment at MSM and during Plaintiff's enrollment at MSM, will go into repayment since Plaintiff is not currently enrolled as a student at MSM.

270.

MSM has placed Plaintiff in a financially impossible position in that all of Plaintiff's loans, private and federal, obtained prior to Plaintiff's enrollment at MSM and during Plaintiff's enrollment at MSM, will go into repayment since Plaintiff is not currently enrolled as a student at MSM, and due to the actions and inactions of MSM, Plaintiff has not received a medical degree.

271.

On or around May 27, 2020, Plaintiff asked Alecia Bell via phone conversation to look into what will happen to Plaintiff's health insurance, under MSM, during her compliance investigation and any other events that may follow

regarding the resolution of Plaintiff's issues regarding Plaintiff's academic

accommodations. See Exhibit BU, Pages 1-2.

272.

On or around May 27, 2020, Alecia Bell stated to Plaintiff via phone

conversation that she would look into the status of Plaintiff's health insurance. See

Exhibit BU, Pages 1-2.

273.

On or around June 30, 2020, Plaintiff asked Alecia Bell via email what she

found out regarding the status of Plaintiff's health insurance. See Exhibit BU,

Pages 1-2.

274.

On or around June 30, 2020, Alecia Bell subsequently notified Plaintiff via

email that she had not looked into, nor had the answer, regarding what will happen

to Plaintiff's health insurance, and told Plaintiff that she recommended that

Plaintiff look into it. See Exhibit BU, Pages 1-2.

275.

On or around June 30, 2020, Plaintiff, later that day, found out that

Plaintiff's last day of health insurance coverage was that very same day, June 30,

2020. See Exhibit BV.

276.

MSM, a medical school, has placed Plaintiff, one of its students, who has a disability, in a financially and medically disadvantageous position in that Plaintiff was given no warning of when Plaintiff's health insurance benefits would end, despite Plaintiff asking for answers about what will happen to Plaintiff's health insurance on or around May 27, 2020 (See Exhibit BU, pages 1-2), leaving Plaintiff uninsured for the month of July 2020, and unable to secure health insurance until August of 2020, during the global COVID-19 pandemic.

277.

MSM has placed Plaintiff, who has a disability, in a financially and medically disadvantageous position in that Plaintiff lost access to Plaintiff's doctors and Plaintiff has had to use medications with less frequency than prescribed due to their uninsured high costs because MSM cancelled Plaintiff's health insurance without any warning, despite Plaintiff asking for answers about what will happen to Plaintiff's health insurance on or around May 27, 2020 (See Exhibit BU, Pages 1-2), during the global COVID-19 pandemic.

278.

On or around July 2, 2020, in response to Plaintiff losing health insurance coverage without any warning, Plaintiff fearfully emailed Alecia Bell, stating that

Plaintiff could not deal with any more surprises, and that Plaintiff needed some

assurances that Plaintiff will continue to have access to Plaintiff's school email and

laptop computer (which will become Plaintiff's own laptop computer after

graduating but currently requires a MSM-issued password to access and use) at

least until the resolution of Plaintiff's issues with MSM. See Exhibit BW, Pages 1-

2.

279.

On or around July 2, 2020, in response to Plaintiff's email, Alecia Bell

responded via email (with Marla Thompson cc-ed) stating, "I'll work with Marla

Thompson to see how this can be addressed. I do not believe that your email or use

of your laptop will be restricted unless or until you are dismissed from the

institution." See Exhibit BW, Pages 1-2.

280.

On or around July 2, 2020, Marla Thompson subsequently responded to

Alecia Bell via email (with Plaintiff cc-ed) stating, "I will engage the Registrar so

you have clarity on how they manage this process. We will do what we are able to

so [Plaintiff] is aware of this information today." See Exhibit BW, Pages 1-2.

281.

Plaintiff has never heard back from anyone at MSM about whether Plaintiff will continue to have access to Plaintiff's school email and laptop computer.

282.

On or around June 30, 2020, and on or around July 1, 2020, due to the possibility of Plaintiff needing to return to campus to possibly meet with anyone, or sign anything, regarding Plaintiff's issues with MSM, Plaintiff, after receiving emails that all students and staff returning to campus are required to get tested first, emailed Alecia Bell asking if Plaintiff should schedule a COVID-19 test; Alecia Bell chose not to respond to either email. See Exhibit BX, Pages 1-4.

283.

The actions of all agents and employees of MSM alleged herein were in furtherance of and within the scope of MSM's business.

284.

Plaintiff has had to hire counsel and currently has over $20,000 in attorney's fees on account at $400/hour.

## COUNT I - VIOLATION OF THE REHABILITATION ACT - FAILURE TO ACCOMMODATE

285.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 284.

286.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations, 34 C.F.R. § 104.1, *et seq.*, require that,

"No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794 and 34 C.F.R. § 104.4.

287.

Plaintiff is a person with a disability under the Rehabilitation Act and its implementing regulations. 29 U.S.C. § 705(9), 29 U.S.C. § 705(20), 29 U.S.C. § 705(37)(A)(ii)(II), 42 U.S.C. § 12102, and 34 C.F.R. § 104.3(j).

288.

Under the education regulations of the Rehabilitation Act, a "qualified handicapped person" is:

"With respect to postsecondary and vocational education services, a handicapped person who meets the academic and technical standards

requisite to admission or participation in the recipient's education program or activity." 34 C.F.R. § 104.3(l)(3).

289.

Plaintiff is a qualified individual with disabilities under the Rehabilitation Act. 29 U.S.C. § 794 and 34 C.F.R. § 104.3(l)(3).

290.

MSM by its own admission found Plaintiff to be a qualified individual in that the note-taking accommodation was granted to Plaintiff, and the note-taking accommodation was only available for "qualified students." See Exhibit AI, Pages 1-3, and Exhibit AJ, Page 2.

291.

MSM is a program or activity under the Rehabilitation Act. 29 U.S.C. § 794(b)(2)(A), 29 U.S.C. § 794(b)(3)(A), 34 C.F.R. § 104.3(k)(2)(i), and 34 C.F.R. § 104.3(k)(3)(i)(B).

292.

MSM is a recipient "to which Federal financial assistance is extended directly or through another recipient, including any successor, assignee, or transferee of a recipient, but excluding the ultimate beneficiary of the assistance." 34 C.F.R. § 104.3(f).

293.

At all times relevant to the allegations of the within complaint, MSM has

been a recipient of Federal financial assistance including, but not limited to, those

under Title IV of the Higher Education Act, Federal student financial aid in the

form of tuition payments, loans, grants, subsidies, and other funds. 34 C.F.R. §

104.3(h).

294.

MSM has signed and filed assurances of compliance with the Department of

Education conditioning the receipt of Federal financial assistance on continued

compliance with the Rehabilitation Act. 34 C.F.R. § 104.5.

295.

A party establishes a Section 504 Rehabilitation Act violation where (a) he

or she is disabled, as defined by the Act; (b) he or she is "otherwise qualified" to

participate in school activities; (c) the school receives federal financial assistance;

and (d) he or she was excluded from participation in, denied benefits of, or subject

to discrimination at, the school. 34 C.F.R. § 104.2-104.4.

296.

By definition, a postsecondary institution, such as MSM, violates Section 504 of the Rehabilitation Act where it fails to provide accommodations to a disabled student. 34 C.F.R. § 104.4 and 34 C.F.R. § 104.44.

297.

Plaintiff's note-taking accommodation is an accommodation, and auxiliary aid or service under the Rehabilitation Act and its implementing regulations. 34 C.F.R. § 104.44(a,d).

298.

Plaintiff has been subjected to a continuing pattern of discrimination under the Rehabilitation Act, and its implementing regulations, as a result of MSM's failure to provide for Plaintiff's note-taking accommodation, during Plaintiff's 2017-2018 and 2018-2019 academic school years, that MSM granted to Plaintiff. 29 U.S.C. § 794, 34 C.F.R. § 104.4, 34 C.F.R. § 104.43, and 34 C.F.R. § 104.44.

299.

Plaintiff's note-taking accommodation was necessary to ameliorate Plaintiff's disability's effect of preventing meaningful access to the benefits of, or participation in, MSM's medical school program.

300.

MSM exhibited a continuing pattern of discrimination under the Rehabilitation Act, and its implementing regulations, against Plaintiff by denying Plaintiff the opportunity to participate in, or benefit from, the services or accommodations of the medical school program at MSM by failing to provide the note-taking accommodation it granted to Plaintiff during the 2017-2018 and 2018-2019 academic school years. 34 C.F.R. § 104.44(a,d), 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.43, and 34 C.F.R. § 104.4(b)(1)(i-iii).

301.

Plaintiff has been subjected to a continuing pattern of discrimination under the Rehabilitation Act, and its implementing regulations, as a result of MSM's actions and inactions, regarding MSM's failure in providing for Plaintiff's note-taking accommodation, granted to Plaintiff by MSM, which has resulted in Plaintiff receiving poor grades,  a poor academic knowledgebase, and ultimately Plaintiff being dismissed from MSM's medical school program. 34 C.F.R. § 104.44(a,d), 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.43, and 34 C.F.R. § 104.4(b)(1)(i-iii).

302.

The failure of MSM to timely provide appropriate educational services, accommodations, and adaptations to Plaintiff, has, among other things, exacerbated the impact of the disabilities of Plaintiff; interfered with Plaintiff's ability to meaningfully participate with Plaintiff's peers; and deferred Plaintiff's ability to engage and be included in educational opportunities, programs, and services to which Plaintiff would have had access if Plaintiff had received appropriate accommodations, adaptations, and related services in a timely manner. 34 C.F.R. § 104.44(a), 34 C.F.R. § 104.44(d), 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.43(c), and 34 C.F.R. § 104.4(b)(1)(i-iii).

303.

MSM has failed to adopt and publish grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints alleging any action prohibited by the Rehabilitation Act and its implementing regulations. 34 C.F.R. § 104.7.

304.

MSM has knowledge of its obligations under the Rehabilitation Act and has acted either with intentional animus or with deliberate indifference of Plaintiff's federally protected rights.

305.

MSM knew that harm to Plaintiff's federally protected rights was substantially likely as a result of MSM's actions and inactions, and MSM failed to act on that likelihood.

306.

All of the actions and inactions described herein were adverse to Plaintiff.

307.

As a result of MSM's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

308.

As a result of MSM's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

309.

Plaintiff has suffered economic injury due to MSM's discrimination with Plaintiff having taken out loans to attend MSM for three (3) years in the amount of $184,279.00, and their presently accrued interest of $18,494.00, totaling $202,773.00.

310.

Plaintiff has had to hire counsel and currently has over $20,000 in attorney's

fees on account at $400/hour. 29 U.S.C.A. § 794a(b).

*COUNT II - VIOLATION OF THE REHABILITATION ACT - DISPARATE*
*TREATMENT*

311.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs

1 to 284.

312.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing

regulations, 34 C.F.R. § 104.1, *et seq.*, require that,

> "No otherwise qualified individual with a disability in the United
> States, as defined in section 705(20) of this title, shall, solely
> by reason of her or his disability, be excluded from the participation in,
> be denied the benefits of, or be subjected to discrimination under any
> program or activity receiving Federal financial assistance[.]" 29
> U.S.C. § 794 and 34 C.F.R. § 104.4.

313.

Plaintiff is a person with a disability under the Rehabilitation Act and its

implementing regulations. 29 U.S.C. § 705(9), 29 U.S.C. § 705(20), 29 U.S.C. §

705(37)(A)(ii)(II), 42 U.S.C. § 12102, and 34 C.F.R. § 104.3(j).

314.

Under the education regulations of the Rehabilitation Act, a "qualified

handicapped person" is:

> "With respect to postsecondary and vocational education services, a
> handicapped person who meets the academic and technical standards
> requisite to admission or participation in the recipient's education program or
> activity." 34 C.F.R. § 104.3(l)(3).

315.

Plaintiff is a qualified individual with disabilities under the Rehabilitation

Act. 29 U.S.C. § 794 and 34 C.F.R. § 104.3(l)(3).

316.

MSM by its own admission found Plaintiff to be a qualified individual in

that the note-taking accommodation was granted to Plaintiff, and the note-taking

accommodation was only available for "qualified students." See Exhibit AI, Pages

1-3, and Exhibit AJ, Page 2.

317.

MSM is a program or activity under the Rehabilitation Act. 29 U.S.C. §

794(b)(2)(A), 29 U.S.C. § 794(b)(3)(A), 34 C.F.R. § 104.3(k)(2)(i), and 34 C.F.R.

§ 104.3(k)(3)(i).

318.

MSM is a recipient "to which Federal financial assistance is extended

directly or through another recipient, including any successor, assignee, or

transferee of a recipient, but excluding the ultimate beneficiary of the assistance."

34 C.F.R. § 104.3(f).

319.

At all times relevant to the allegations of the within complaint, MSM has

been a recipient of Federal financial assistance including, but not limited to, those

under Title IV of the Higher Education Act, Federal student financial aid in the

form of tuition payments, loans, grants, subsidies, and other funds. 34 C.F.R. §

104.3(h).

320.

MSM has signed and filed assurances of compliance with the Department of

Education conditioning the receipt of Federal financial assistance on continued

compliance with the Rehabilitation Act. 34 C.F.R. § 104.5.

321.

A party establishes a Section 504 Rehabilitation Act violation where (a) he

or she is disabled, as defined by the Act; (b) he or she is "otherwise qualified" to

participate in school activities; (c) the school receives federal financial assistance;

and (d) he or she was excluded from participation in, denied benefits of, or subject to discrimination at, the school. 34 C.F.R. § 104.2-104.4.

322.

MSM excluded Plaintiff from participation in and has denied Plaintiff the benefits of its services, programs, and activities, as described herein.

323.

As described herein, MSM exhibited a continuing pattern of discrimination against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's disability, as a result of MSM's actions and inactions, regarding the note-taking accommodation MSM granted to Plaintiff and failed to provide to Plaintiff, during Plaintiff's 2017-2018 and 2018-2019 academic school years, which resulted in Plaintiff receiving poor grades, a poor academic knowledgebase, and ultimately being dismissed from MSM's medical school program. 29 U.S.C. § 794(a), 34 C.F.R. § 104.4(a), 34 C.F.R. § 104.4(b)(1)(i-iii), 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.43(c-d), and 34 C.F.R. § 104.44(a,d).

324.

MSM exhibited a continuing pattern of discrimination against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's

disability, by failing to provide for Plaintiff's note-taking accommodation and

failing to provide Plaintiff with educational and other services that are as effective

in affording equal opportunity as the services provided to students without

disabilities. 29 U.S.C. § 794(a), 34 C.F.R. § 104.4(a), 34 C.F.R. § 104.4(b)(1)(ii-

iii), and 34 C.F.R. § 104.44(a,d).

325.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, because MSM's

Office of Compliance needed to spend over three and a half months [Plaintiff's

compliance complaint was filed on or around March 28, 2020 (See Exhibit BB),

and MSM's written letter of determination was sent to Plaintiff on or around July

14, 2020 (See Exhibit BO)] investigating Plaintiff's compliance complaint, which,

by MSM's Office of Compliance's own admission, consisted overall of only four

to five total meetings.

326.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, because on

information and belief, the compliance complaints of students without disabilities

105

receive prompt and equitable resolutions. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.4(b)(1)(ii-iii), and 34 C.F.R. § 104.44(d).

327.

MSM discriminated against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's disability, by Alecia Bell's written letter of determination to Plaintiff (See Exhibit BO), regarding Plaintiff's compliance complaint, which contained numerous erroneous, misleading, unclear, arbitrary, self-serving and false findings in her written letter of determination sent to Plaintiff including, but not limited to, the issues described in Paragraphs 213-224. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.4(b)(1)(ii-iii), and 34 C.F.R. § 104.7.

328.

MSM discriminated against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's disability, because Plaintiff's compliance complaint is being swept under the rug due to MSM's current reaffirmation of its accreditation with the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC) (See Exhibit BP, Pages 1-2), and due to MSM's current reaffirmation of its accreditation with the Liaison Committee on Medical Education (LCME) (See Exhibit BP, Pages 3-7). 34 C.F.R.

§ 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.4(b)(1)(ii-iii), and 34 C.F.R. §

104.44(a,d).

329.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, because Alecia Bell

intentionally made numerous erroneous, misleading, unclear, arbitrary, self-

serving, and false findings in her written letter of determination so as to preclude

Plaintiff from being able to rely on it during Plaintiff's dismissal hearing. 34

C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, and 34 C.F.R. § 104.44(a,d).

330.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, because Plaintiff

was not offered any explanation as to why MSM's dismissal hearing against

Plaintiff was postponed and later rescheduled. See Exhibit BE, Page 1, and Exhibit

BM, Pages 1-5.

331.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, because students

without disabilities are provided with open and honest communication regarding

adverse proceedings against them. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.4(b)(1)(ii-iii), and 34 C.F.R. § 104.7.

332.

According to MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 70), MSM's 2018-2019 Student Handbook (See Exhibit AG, Page 74), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 75), under the "Compliance Hotline" heading, that,

> "[MSM] is an organization with strong values of responsibility and integrity. Our written standards and policies contain general guidelines for conducting business with the highest standards of ethics. The institution is committed to an environment where open, honest communications are the expectation, not the exception."

333.

MSM discriminated against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's disability, because at the start of Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff was informed, without warning, by Dr. Brenda Klement that the committee members had not, and were not, going to look over Plaintiff's dismissal hearing exhibits before the hearing, despite Dr. Brenda Klement affirming that they would (See Exhibit BS), and with no explanation as to why this decision was being made when Plaintiff was previously asked what method of disseminating Plaintiff's dismissal hearing

108

exhibits Plaintiff wanted. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.4(b)(1)(ii-iii),

and 34 C.F.R. § 104.7.

334.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, because on

information and belief, students without disabilities have their dismissal hearing

exhibits read by the committee members before their dismissal hearings. 34 C.F.R.

§ 104.4(b)(4), 34 C.F.R. § 104.4(b)(1)(ii-iii), and 34 C.F.R. § 104.7.

335.

In MSM's dismissal letter to Plaintiff, MSM alleges, "After careful

consideration of the information you presented during the hearing, the written

information you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit

BR], and your academic transcript, the committee voted to dismiss you from

Morehouse School of Medicine." See Exhibit BT, Page 2.

336.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, because all of the

committee members of Plaintiff's dismissal hearing did not carefully consider

Plaintiff's exhibits because the exhibits remained in the possession of Dr. Ngozi

Anachebe and Dr. Martha Elks, and not in the possession of all committee members for them to carefully consider. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.4(b)(1)(ii-iii), and 34 C.F.R. § 104.44(a,d).

337.

MSM discriminated against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's disability, because on information and belief, students without disabilities have their dismissal hearing exhibits truly carefully considered by the committee members in their determination of being dismissed from MSM or not. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.4(b)(1)(ii-iii), and 34 C.F.R. § 104.44(a,d).

338.

MSM discriminated against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's disability, in that during Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking accommodation, granted by MSM, as non-essential because Plaintiff had textbooks. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.43(d), and 34 C.F.R. § 104.44(a,d).

339.

MSM discriminated against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's disability, in that during Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking accommodation, granted by MSM, as non-essential because Plaintiff had access to class recordings. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.43(d), and 34 C.F.R. § 104.44(a,d).

340.

MSM discriminated against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's disability, because on information and belief, MSM does not treat the services and accommodations that students without disabilities require to be successful, that MSM has agreed to provide, with the same indifference that MSM showed Plaintiff's note-taking accommodation, that MSM granted to Plaintiff. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.44(a,d), 34 C.F.R. § 104.4(b)(1)(ii-iii), 34 C.F.R. § 104.43(d), 29 U.S.C. § 794(a), and 34 C.F.R. § 104.4(a).

341.

MSM discriminated against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's disability, by excluding Plaintiff from equal participation in MSM's medical school program via MSM's failure to provide for Plaintiff's note-taking accommodation during the 2017-2018 and 2018-2019 academic school years, and MSM's ultimate dismissal of Plaintiff from its medical school program. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.4(b)(1)(i-iii), 34 C.F.R. § 104.43(c), and 34 C.F.R. § 104.44(a,d).

342.

MSM discriminated against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's disability, because on information and belief, MSM makes sure that its students without disabilities get the services and accommodations that MSM has agreed to provide them prior to a dismissal hearing. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.4(b)(1)(ii-iii), and 34 C.F.R. § 104.44(a,d).

343.

In MSM's dismissal letter to Plaintiff, MSM alleges, "MSM has a policy that the 1st and 2nd Year Curriculum will consist of no more than 36 months excluding any leave of absence (Page 104, b. 2019-2020 Student Handbook)

[Plaintiff's Exhibit AF], and you have reached this time limit." See Exhibit BT, Page 2.

344.

MSM discriminated against Plaintiff under the Rehabilitation Act and its implementing regulations, on the basis of Plaintiff's disability, because on information and belief, MSM has allowed other students to spend more than 36 months during their 1st and 2nd Year Curriculum. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.7, 34 C.F.R. § 104.4(b)(1)(i-iii), 34 C.F.R. § 104.43(c), and 34 C.F.R. § 104.44(a,d).

345.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 101, MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 107), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 108) has stated, under the "Dismissal and Suspension" subheading, under "The Student Academic Progress & Promotion Committee (SAPP)" heading, that, "The Chair of the SAPP committee will provide written information on the reasons for the dismissal hearing."

346.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, because Plaintiff

was never notified or provided written information (See Exhibit BD, Page 4, and

Exhibit BM, Page 4) that one of the reasons for MSM's dismissal hearing against

Plaintiff, and one of the reasons MSM's dismissal of Plaintiff would ultimately be

for, was that "MSM has a policy that the 1st and 2nd Year Curriculum will consist

of no more than 36 months excluding any leave of absence (Page 104, b. 2019-

2020 Student Handbook) [Plaintiff's Exhibit AF], and [Plaintiff had] reached this

time limit," (See Exhibit BT, Page 2). 34 C.F.R. § 104.4(b)(4), 34 C.F.R. §

104.4(b)(1)(i-iii), 34 C.F.R. § 104.43(c), 34 C.F.R. § 104.44(a,d), and 34 C.F.R. §

104.7.

347.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, because Plaintiff

was not able to present Plaintiff's case, evidence, and context, regarding this

reason Plaintiff was dismissed from MSM in accordance with MSM's Student

Handbook (See Exhibit AD, Page 101, Exhibit AE, Page 107, and Exhibit AF,

Page 108). 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.4(b)(1)(i-iii), 34 C.F.R. §

104.43(c), and 34 C.F.R. § 104.7.

348.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, as on information

and belief, students without disabilities are provided all the reasons for their

dismissal hearings, and have thus been able to properly present their case,

evidence, and context during their dismissal hearings in accordance with MSM's

Student Handbook (See Exhibit AD, Page 101, Exhibit AE, Page 107, and Exhibit

AF, Page 108). 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.4(b)(1)(ii-iii), and 34

C.F.R. § 104.7.

349.

In MSM's dismissal letter to Plaintiff, MSM alleges, "After careful

consideration of the information you presented during the hearing, the written

information you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit

BR], and your academic transcript, the committee voted to dismiss you from

Morehouse School of Medicine. The decision was based on the school's policy of

receiving a final grade of D or F while in the decelerated track, and for receiving

115

two or more final grades of D or F (Page 107, iii and viii, respectively, 2019-2020

Student Handbook) [Plaintiff's Exhibit AF]," (See Exhibit BT, Page 2).

350.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, because on

information and belief, students without disabilities who have received two or

more final grades of D or F while in the decelerated track have not been dismissed

by MSM. 34 C.F.R. § 104.4(b)(4), 34 C.F.R. § 104.4(b)(1)(i-iii), 34 C.F.R. §

104.43(c), and 34 C.F.R. § 104.44(a,d).

351.

MSM discriminated against Plaintiff under the Rehabilitation Act and its

implementing regulations, on the basis of Plaintiff's disability, because MSM

failed to provide Plaintiff an equal opportunity to obtain the same result, to gain the

same benefit, or to reach the same level of achievement, in the most integrated

setting appropriate to Plaintiff's needs. 34 C.F.R. § 104.43(d) and 34 C.F.R. §

104.4(b)(1)(ii-iii).

352.

MSM has failed to adopt and publish grievance procedures that incorporate

appropriate due process standards and that provide for the prompt and equitable

116

resolution of complaints alleging any action prohibited by the Rehabilitation Act and its implementing regulations. 34 C.F.R. § 104.7.

353.

MSM has knowledge of its obligations under the Rehabilitation Act and its implementing regulations, and MSM has acted with intentional animus and deliberate indifference of Plaintiff's federally protected rights.

354.

MSM knew that harm to Plaintiff's federally protected rights was substantially likely as a result of MSM's actions and inactions, and MSM failed to act on that likelihood.

355.

All of the actions and inactions described herein were adverse to Plaintiff and did not happen to students without disabilities.

356.

As a result of MSM's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

357.

As a result of MSM's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

358.

Plaintiff has suffered economic injury due to MSM's discrimination with Plaintiff having taken out loans to attend MSM for three (3) years in the amount of $184,279.00, and their presently accrued interest of $18,494.00, totaling $202,773.00.

359.

Plaintiff has had to hire counsel and currently has over $20,000 in attorney's fees on account at $400/hour. 29 U.S.C.A. § 794a(b).

*COUNT III - VIOLATION OF THE ADA - FAILURE TO ACCOMMODATE*

360.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 284.

361.

Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, and its

implementing regulations, 28 C.F.R. § 36.101, *et seq*., require that,

> "No individual shall be discriminated against on the basis of disability in the
> full and equal enjoyment of the goods, services, facilities, privileges,
> advantages, or accommodations of any place of public accommodation by
> any person who owns, leases (or leases to), or operates a place of public
> accommodation." 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a).

362.

Plaintiff is a person with a disability under the ADA and its implementing

regulations. 42 U.S.C. § 12102 and 28 C.F.R. § 36.105.

363.

Plaintiff is a qualified individual with disabilities under the ADA.

364.

MSM by its own admission found Plaintiff to be a qualified individual in

that the note-taking accommodation was granted to Plaintiff, and the note-taking

accommodation was only available for "qualified students." See Exhibit AI, Pages

1-3, and Exhibit AJ, Page 2.

365.

MSM is a private entity under Title III of the ADA and its implementing

regulations. 42 U.S.C. § 12181(6), 42 U.S.C. § 12181(7)(J), and 28 C.F.R. §

36.104.

366.

Title III of the ADA requires that a postgraduate private school, such as MSM, provide reasonable accommodations to students with disabilities.

367.

MSM failed to provide Plaintiff accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302(a).

368.

A postgraduate private school, such as MSM, violates the ADA where it fails to provide accommodations to a disabled student. 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302(a).

369.

Plaintiff's note-taking accommodation is an accommodation, and auxiliary aid or service under the ADA and its implementing regulations. 42 U.S.C. § 12103(1)(D), 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), and 28 C.F.R. § 36.303(a-c).

370.

Plaintiff's note-taking accommodation was necessary to ameliorate Plaintiff's disability's effect of preventing meaningful access to the benefits of, or participation in, MSM's medical school program.

371.

As described herein, MSM exhibited a continuing pattern of discrimination against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, during the 2017-2018 and 2018-2019 academic school years, in that Plaintiff could not experience full and equal enjoyment of MSM's services because of MSM's failure in providing the note-taking accommodation it granted to Plaintiff. 42 U.S.C. § 12182(a), 28 C.F.R. § 36.201(a), 42 U.S.C. § 12182(b)(2)(A)(ii), 28 C.F.R. § 36.302(a), 42 U.S.C. § 12182(b)(1)(A)(ii), 28 C.F.R. § 36.202(b), and 28 C.F.R. § 36.303(a-c).

372.

During Plaintiff's 2017-2018 and 2018-2019 academic school years, MSM exhibited a continuing pattern of discrimination against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, by denying Plaintiff the opportunity to participate in or benefit from the services or accommodations of the medical school program at MSM by failing to provide the note-taking accommodation it granted to Plaintiff. 42 U.S.C. § 12182(a), 28 C.F.R. § 36.201(a), 42 U.S.C. § 12182(b)(2)(A)(ii), 28 C.F.R. § 36.302(a), 42 U.S.C. § 12182(b)(1)(A)(i), 28 C.F.R. § 36.202(a), and 28 C.F.R. § 36.303(a-c).

373.

During Plaintiff's 2017-2018 and 2018-2019 academic school years, MSM exhibited a continuing pattern of discrimination against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, as a result of MSM's failure to obtain and timely provide effective educational auxiliary aids and services, the note-taking accommodation that MSM already granted to Plaintiff, during Plaintiff's 2017-2018 and 2018-2019 academic school years. 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a) and 28 C.F.R. § 36.303(a-c).

374.

As described herein, MSM exhibited a continuing pattern of discrimination against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, by failing to make reasonable modifications in policies, practices, or procedures, during the entirety of Plaintiff's medical school education at MSM, when such modifications were necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to Plaintiff, regarding the note-taking accommodation granted to Plaintiff by MSM during the 2017-2018 and 2018-2019 academic school years. 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302(a).

375.

MSM exhibited a continuing pattern of discrimination against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, by failing to timely provide for Plaintiff's note-taking accommodation, granted to Plaintiff by MSM, during the 2017-2018 and 2018-2019 academic school years. 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), and 28 C.F.R. § 36.303(a-c).

376.

MSM exhibited a continuing pattern of discrimination against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, as a result of MSM's actions and inactions, regarding the note-taking accommodation MSM granted to Plaintiff and failed to provide to Plaintiff, during Plaintiff's 2017-2018 and 2018-2019 academic school years, which resulted in Plaintiff receiving poor grades, a poor academic knowledgebase, and ultimately being dismissed from MSM's medical school program. 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), 28 C.F.R. § 36.303(a-c), 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(1)(A)(i-iii), and 28 C.F.R. § 36.202(a-b).

377.

During the entirety of Plaintiff's medical school education at MSM, MSM exhibited a continuing pattern of discrimination against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, by affording Plaintiff only an opportunity to participate in, or benefit from, the aid, benefit, privilege, service, or accommodation, offered by MSM, that was not equal to that afforded to others. 42 U.S.C. § 12182(b)(1)(A)(ii) and 28 C.F.R. § 36.202(b).

378.

The failure of MSM to timely provide appropriate educational services, accommodations, and adaptations to Plaintiff, has, among other things, exacerbated the impact of the Plaintiff's disabilities; interfered with Plaintiff's ability to meaningfully participate with Plaintiff's peers; and deferred Plaintiff's ability to engage and be included in educational opportunities, programs, and services to which Plaintiff would have had access if Plaintiff had received appropriate accommodations, adaptations, and related services in a timely manner. 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), 28 C.F.R. § 36.303(a-c), 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(1)(A)(i-iii), and 28 C.F.R. § 36.202(a-b).

379.

MSM discriminated against Plaintiff under the ADA and its implementing

regulations, on the basis of Plaintiff's disability, by failing to provide Plaintiff an

equal opportunity to obtain the same result, to gain the same benefit, or to reach the

same level of achievement, in the most integrated setting appropriate to Plaintiff's

needs by MSM's failure to provide for Plaintiff's note-taking accommodation,

which MSM granted to Plaintiff for the entirety of Plaintiff's medical school

education at MSM. 42 U.S.C. § 12182(b)(1)(B) and 28 C.F.R. § 36.203(a).

380.

MSM has knowledge of its obligations under the ADA and its implementing

regulations, and MSM has acted either with intentional animus or in deliberate

indifference of Plaintiff's federally protected rights.

381.

MSM knew that harm to Plaintiff's federally protected rights was

substantially likely as a result of MSM's actions and inactions, and MSM failed to

act on that likelihood.

382.

All of the actions and inactions described herein were adverse to Plaintiff.

383.

As a result of MSM's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

384.

As a result of MSM's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

385.

Plaintiff has had to hire counsel and currently has over $20,000 in attorney's fees on account at $400/hour. 28 C.F.R. § 36.505 and 42 U.S.C.A. § 2000a-3(b).

*COUNT IV - VIOLATION OF THE ADA - DISPARATE TREATMENT*

386.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 284.

387.

Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, and its implementing regulations, 28 C.F.R. § 36.101, *et seq*., require that,

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a).

388.

Plaintiff is a person with a disability under the ADA and its implementing regulations. 42 U.S.C. § 12102 and 28 C.F.R. § 36.105.

389.

Plaintiff is a qualified individual with disabilities under the ADA.

390.

MSM by its own admission found Plaintiff to be a qualified individual in that the note-taking accommodation was granted to Plaintiff, and the note-taking accommodation was only available for "qualified students." See Exhibit AI, Pages 1-3, and Exhibit AJ, Page 2.

391.

MSM is a private entity under Title III of the ADA and its implementing regulations. 42 U.S.C. § 12181(6), 42 U.S.C. § 12181(7)(J), and 28 C.F.R. § 36.104.

392.

Title III of the ADA requires that a postgraduate private school, such as MSM, not discriminate against students on the basis of disability. 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a).

393.

MSM excluded Plaintiff from participation in and has denied Plaintiff the benefits of its services, programs, and activities, as described herein.

394.

As described herein, MSM exhibited a continuing pattern of discrimination against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, as a result of MSM's actions and inactions, regarding the note-taking accommodation MSM granted to Plaintiff and failed to provide to Plaintiff, during Plaintiff's 2017-2018 and 2018-2019 academic school years, which resulted in Plaintiff receiving poor grades, a poor academic knowledgebase, and ultimately being dismissed from MSM's medical school program. 42 U.S.C. § 12182(a), 28 C.F.R. § 36.201(a), 42 U.S.C. § 12182(b)(1)(A)(i-ii), 28 C.F.R. § 36.202(a-b), 42 U.S.C. § 12182(b)(1)(B), 28 C.F.R. § 36.203(a), 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), and 28 C.F.R. § 36.303(a-c).

395.

As described herein, MSM exhibited a continuing pattern of discrimination against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, by failing to provide for Plaintiff's note-taking accommodation and failing to provide Plaintiff with educational and other services that are as effective in affording equal opportunity as the services provided to students without disabilities. 42 U.S.C. § 12182(a), 28 C.F.R. § 36.201(a), 42 U.S.C. § 12182(b)(1)(A)(ii), 28 C.F.R. § 36.202(b), 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), and 28 C.F.R. § 36.303(a-c).

396.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because MSM's Office of Compliance needed to spend over three and a half months [Plaintiff's compliance complaint was filed on or around March 28, 2020 (See Exhibit BB), and MSM's written letter of determination was sent to Plaintiff on or around July 14, 2020 (See Exhibit BO)] investigating Plaintiff's compliance complaint, which, by MSM's Office of Compliance's own admission, consisted overall of only four to five total meetings.

397.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because on information and belief, the compliance complaints of students without disabilities receive prompt and equitable resolutions. 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(1)(A)(ii), 28 C.F.R. § 36.202(b), 42 U.S.C. § 12182(b)(2)(A)(iii), and 28 C.F.R. § 36.303(a-c).

398.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, by Alecia Bell's written letter of determination to Plaintiff (See Exhibit BO), regarding Plaintiff's compliance complaint, which contained numerous erroneous, misleading, unclear, arbitrary, self-serving and false findings in her written letter of determination sent to Plaintiff including, but not limited to, the issues described in Paragraphs 213-224. 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(1)(A)(ii), and 28 C.F.R. § 36.202(b).

399.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because Plaintiff's compliance

complaint is being swept under the rug due to MSM's current reaffirmation of its accreditation with the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC) (See Exhibit BP, Pages 1-2), and due to MSM's current reaffirmation of its accreditation with the Liaison Committee on Medical Education (LCME) (See Exhibit BP, Pages 3-7). 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 42 U.S.C. § 12182(b)(1)(A)(ii), 28 C.F.R. § 36.202(b), 28 C.F.R. § 36.302(a), and 28 C.F.R. § 36.303(a-c).

400.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because Alecia Bell intentionally made numerous erroneous, misleading, unclear, arbitrary, self-serving, and false findings in her written letter of determination so as to preclude Plaintiff from being able to rely on it during Plaintiff's dismissal hearing. 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), and 28 C.F.R. § 36.303(a-c).

401.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because Plaintiff was not offered

any explanation as to why MSM's dismissal hearing against Plaintiff was
postponed and later rescheduled. See Exhibit BE, Page 1, and Exhibit BM, Pages
1-5.

402.

MSM discriminated against Plaintiff under the ADA and its implementing
regulations, on the basis of Plaintiff's disability, because students without
disabilities are provided with open and honest communication regarding adverse
proceedings against them. 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42
U.S.C. § 12182(b)(1)(A)(ii), and 28 C.F.R. § 36.202(b).

403.

According to MSM's 2017-2018 Student Handbook (See Exhibit AD, Page
70), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 74), and MSM's
2019-2020 Student Handbook (See Exhibit AF, Page 75), under the "Compliance
Hotline" heading, that,

> "[MSM] is an organization with strong values of responsibility and integrity.
> Our written standards and policies contain general guidelines for conducting
> business with the highest standards of ethics. The institution is committed to
> an environment where open, honest communications are the expectation, not
> the exception."

404.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because at the start of Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff was informed, without warning, by Dr. Brenda Klement that the committee members had not, and were not going to, look over Plaintiff's dismissal hearing exhibits before the hearing, despite Dr. Brenda Klement affirming that they would (See Exhibit BS), and with no explanation as to why this decision was being made when Plaintiff was previously asked what method of disseminating Plaintiff's dismissal hearing exhibits Plaintiff wanted. 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(1)(A)(ii), and 28 C.F.R. § 36.202(b).

405.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because on information and belief, students without disabilities have their dismissal hearing exhibits read by the committee members before their dismissal hearings. 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(1)(A)(ii), and 28 C.F.R. § 36.202(b).

406.

In MSM's dismissal letter to Plaintiff, MSM alleges, "After careful consideration of the information you presented during the hearing, the written information you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit BR], and your academic transcript, the committee voted to dismiss you from Morehouse School of Medicine." See Exhibit BT, Page 2.

407.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because all of the committee members of Plaintiff's dismissal hearing did not carefully consider Plaintiff's exhibits because the exhibits remained in the possession of Dr. Ngozi Anachebe and Dr. Martha Elks, and not in the possession of all committee members for them to carefully consider. 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(1)(A)(ii), 28 C.F.R. § 36.202(b), 42 U.S.C. § 12182(b)(2)(A)(iii), and 28 C.F.R. § 36.303(a-c).

408.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because on information and belief, students without disabilities have their dismissal hearing exhibits truly carefully

considered by the committee members in their determination of being dismissed from MSM or not. 42 U.S.C. § 12182(b)(1)(A)(ii), 28 C.F.R. § 36.202(b), 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(2)(A)(iii), and 28 C.F.R. § 36.303(a-c).

409.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, in that during Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking accommodation, granted by MSM, as non-essential because Plaintiff had textbooks. 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), 28 C.F.R. § 36.303(a-c), 42 U.S.C. § 12182(b)(1)(D) and 28 C.F.R. § 36.204.

410.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, in that during Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking accommodation, granted by MSM, as non-essential because Plaintiff had access to class recordings. 42 U.S.C. §

135

12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), 28 C.F.R. § 36.303(a-c), 42 U.S.C. § 12182(b)(1)(D) and 28 C.F.R. § 36.204.

411.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because on information and belief, MSM does not treat the services and accommodations that students without disabilities require to be successful, that MSM has agreed to provide, with the same indifference that MSM showed Plaintiff's note-taking accommodation, that MSM granted to Plaintiff. 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.303(a-c), 28 C.F.R. § 36.302(a), 42 U.S.C. § 12182(b)(1)(A)(ii), 28 C.F.R. § 36.202(b), 42 U.S.C. § 12182(b)(1)(B), 28 C.F.R. § 36.203(a), 42 U.S.C. § 12182(a), and 28 C.F.R. § 36.201(a).

412.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, by excluding Plaintiff from equal participation in MSM's medical school program via MSM's failure to provide for Plaintiff's note-taking accommodation during the 2017-2018 and 2018-2019 academic school years, and MSM's ultimate dismissal of Plaintiff from its medical school program. 42 U.S.C. § 12182(b)(1)(A)(ii), 28 C.F.R. § 36.202(b), 42 U.S.C.

§ 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28

C.F.R. § 36.302(a), and 28 C.F.R. § 36.303(a-c).

### 413.

MSM discriminated against Plaintiff under the ADA and its implementing

regulations, on the basis of Plaintiff's disability, because on information and belief,

MSM makes sure that its students without disabilities get the services and

accommodations that MSM has agreed to provide them prior to a dismissal

hearing. 42 U.S.C. § 12182(b)(1)(A)(ii), 28 C.F.R. § 36.202(b), 42 U.S.C. §

12182(b)(1)(D), 28 C.F.R. § 36.204, 28 C.F.R. § 36.302(a), 42 U.S.C. §

12182(b)(2)(A)(ii-iii), and 28 C.F.R. § 36.303(a-c).

### 414.

In MSM's dismissal letter to Plaintiff, MSM alleges, "MSM has a policy

that the 1st and 2nd Year Curriculum will consist of no more than 36 months

excluding any leave of absence (Page 104, b. 2019-2020 Student Handbook)

[Plaintiff's Exhibit AF], and you have reached this time limit." See Exhibit BT,

Page 2.

### 415.

MSM discriminated against Plaintiff under the ADA and its implementing

regulations, on the basis of Plaintiff's disability, because on information and belief,

MSM has allowed other students to spend more than 36 months during their 1st and 2nd Year Curriculum. 42 U.S.C. § 12182(b)(1)(A)(i-ii), 28 C.F.R. § 36.202(a-b), 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), and 28 C.F.R. § 36.303(a-c).

416.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 101, MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 107), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 108) has stated, under the "Dismissal and Suspension" subheading, under "The Student Academic Progress & Promotion Committee (SAPP)" heading, that, "The Chair of the SAPP committee will provide written information on the reasons for the dismissal hearing."

417.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because Plaintiff was never notified or provided written information (See Exhibit BD, Page 4, and Exhibit BM, Page 4) that one of the reasons for MSM's dismissal hearing against Plaintiff, and one of the reasons MSM's dismissal of Plaintiff would ultimately be for, was that "MSM has a policy that the 1st and 2nd Year Curriculum will consist of no more

138

than 36 months excluding any leave of absence (Page 104, b. 2019-2020 Student

Handbook) [Plaintiff's Exhibit AF], and [Plaintiff had] reached this time limit."

(See Exhibit BT, Page 2). 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, and 42

U.S.C. § 12182(b)(1)(A)(i-ii), 28 C.F.R. § 36.202(a-b), 42 U.S.C. §

12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), and 28 C.F.R. § 36.303(a-c).

418.

MSM discriminated against Plaintiff under the ADA and its implementing

regulations, on the basis of Plaintiff's disability, because Plaintiff was not able to

present Plaintiff's case, evidence, and context, regarding this reason Plaintiff was

dismissed from MSM in accordance with MSM's Student Handbook (See Exhibit

AD, Page 101, Exhibit AE, Page 107, and Exhibit AF, Page 108). 42 U.S.C. §

12182(b)(1)(D), 28 C.F.R. § 36.204, and 42 U.S.C. § 12182(b)(1)(A)(i-ii), and 28

C.F.R. § 36.202(a-b).

419.

MSM discriminated against Plaintiff under the ADA and its implementing

regulations, on the basis of Plaintiff's disability, as on information and belief,

students without disabilities are provided all the reasons for their dismissal

hearings, and have thus been able to properly present their case, evidence, and

context during their dismissal hearings in accordance with MSM's Student

Handbook (See Exhibit AD, Page 101, Exhibit AE, Page 107, and Exhibit AF, Page 108). 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(1)(A)(ii), and 28 C.F.R. § 36.202(b).

420.

In MSM's dismissal letter to Plaintiff, MSM alleges, "After careful consideration of the information you presented during the hearing, the written information you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit BR], and your academic transcript, the committee voted to dismiss you from Morehouse School of Medicine. The decision was based on the school's policy of receiving a final grade of D or F while in the decelerated track, and for receiving two or more final grades of D or F (Page 107, iii and viii, respectively, 2019-2020 Student Handbook) [Plaintiff's Exhibit AF]," (See Exhibit BT, Page 2).

421.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because on information and belief, students without disabilities who have received two or more final grades of D or F while in the decelerated track have not been dismissed by MSM. 42 U.S.C. § 12182(b)(1)(D) and 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(1)(A)(i-ii), 28 C.F.R. § 36.202(a-b), 42 U.S.C. § 12182(b)(2)(A)(iii), and 28 C.F.R. § 36.303(a).

140

422.

MSM discriminated against Plaintiff under the ADA and its implementing regulations, on the basis of Plaintiff's disability, because MSM failed to provide Plaintiff an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to Plaintiff's needs. 42 U.S.C. § 12182(b)(1)(B), 28 C.F.R. § 36.203, 42 U.S.C. § 12182(b)(1)(A)(ii), and 28 C.F.R. § 36.202(b).

423.

MSM has knowledge of its obligations under the ADA and its implementing regulations, and MSM has acted with intentional animus and deliberate indifference of Plaintiff's federally protected rights.

424.

MSM knew that harm to Plaintiff's federally protected rights was substantially likely as a result of MSM's actions and inactions, and MSM failed to act on that likelihood.

425.

All of the actions and inactions described herein were adverse to Plaintiff and did not happen to students without disabilities.

426.

As a result of MSM's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

427.

As a result of MSM's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

428.

Plaintiff has had to hire counsel and currently has over $20,000 in attorney's fees on account at $400/hour. 28 C.F.R. § 36.505 and 42 U.S.C.A. § 2000a-3(b).

*COUNT V - VIOLATION OF THE ADA - DISPARATE IMPACT*

429.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 284.

430.

Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, and its implementing regulations, 28 C.F.R. § 36.101, *et seq*., require that,

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a).

431.

Plaintiff is a person with a disability under the ADA and its implementing regulations. 42 U.S.C. § 12102 and 28 C.F.R. § 36.105.

432.

Plaintiff is a qualified individual under the ADA.

433.

MSM by its own admission found Plaintiff to be a qualified individual in that the note-taking accommodation was granted to Plaintiff, and the note-taking accommodation was only available for "qualified students." See Exhibit AI, Pages 1-3, and Exhibit AJ, Page 2.

434.

Morehouse School of Medicine is a private entity under Title III of the ADA and its implementing regulations. 42 U.S.C. § 12181(6), 42 U.S.C. § 12181(7)(J), and 28 C.F.R. § 36.104.

435.

Title III of the ADA requires that an educational agency, such as MSM, not discriminate against students on the basis of disability. 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201(a).

436.

As described herein, MSM excluded Plaintiff from participation in and has denied Plaintiff the benefits of MSM's services, programs, activities, and ultimately dismissed Plaintiff in MSM's usage of facially neutral practices and procedures that operated to freeze the status quo of MSM's prior discrimination of Plaintiff, including but not limited to MSM's failure to provide for Plaintiff's note-taking accommodation during the 2017-2018 and 2018-2019 academic school years. 42 U.S.C. § 12182(a), 28 C.F.R. § 36.201(a), 42 U.S.C. § 12182(b)(1)(A)(i-ii), 28 C.F.R. § 36.202(a-b), 42 U.S.C. § 12182(b)(1)(B), 28 C.F.R. § 36.203(a), 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), and 28 C.F.R. § 36.303(a-c).

437.

As described herein, MSM discriminated against Plaintiff under the ADA and its implementing regulations, in its attempt to freeze the status quo of MSM's prior discrimination of Plaintiff, by MSM's dismissal letter to Plaintiff alleging,

"After careful consideration of the information you presented during the hearing, the written information you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit BR], and your academic transcript, the committee voted to dismiss you from Morehouse School of Medicine. The decision was based on the school's policy of receiving a final grade of D or F while in the decelerated track, and for receiving two or more final grades of D or F (Page 107, iii and viii, respectively, 2019-2020 Student Handbook) [Plaintiff's Exhibit AF]," (See Exhibit BT, Page 2) but the reason for Plaintiff's grades are due to the effects of MSM's failure in providing for Plaintiff's note-taking accommodation during the 2017-2018 and 2018-2019 academic school years, including but not limited to Plaintiff's poor grades, poor academic knowledgebase, and Plaintiff's time spent attempting to achieve a resolution with MSM regarding MSM's discrimination of Plaintiff. 42 U.S.C. § 12182(a), 28 C.F.R. § 36.201(a), 42 U.S.C. § 12182(b)(1)(A)(i-ii), 28 C.F.R. § 36.202(a-b), 42 U.S.C. § 12182(b)(1)(B), 28 C.F.R. § 36.203(a), 42 U.S.C. § 12182(b)(1)(D), 28 C.F.R. § 36.204, 42 U.S.C. § 12182(b)(2)(A)(ii-iii), 28 C.F.R. § 36.302(a), and 28 C.F.R. § 36.303(a-c).

438.

All of the actions and inactions described herein were adverse to Plaintiff.

439.

As a result of MSM's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

440.

As a result of MSM's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

441.

Plaintiff has had to hire counsel and currently has over $20,000 in attorney's fees on account at $400/hour. 28 C.F.R. § 36.505 and 42 U.S.C.A. § 2000a-3(b).

*COUNT VI - VIOLATION OF THE REHABILITATION ACT AND ADA - RETALIATION OR COERCION*

442.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 284.

443.

Plaintiff is a person with a disability under the Rehabilitation Act and its implementing regulations. 29 U.S.C. § 705(9), 29 U.S.C. § 705(20), 29 U.S.C. § 705(37)(A)(ii)(II), 42 U.S.C. § 12102, and 34 C.F.R. § 104.3(j).

444.

Plaintiff is a person with a disability under the ADA and its implementing regulations. 42 U.S.C. § 12102 and 28 C.F.R. § 36.105.

445.

Under the education regulations of the Rehabilitation Act, a "qualified handicapped person" is:

> "With respect to postsecondary and vocational education services, a handicapped person who meets the academic and technical standards requisite to admission or participation in the recipient's education program or activity." 34 C.F.R. § 104.3(l)(3).

446.

Plaintiff is a qualified individual with disabilities under the Rehabilitation Act. 29 U.S.C. § 794 and 34 C.F.R. § 104.3(l)(3).

447.

Plaintiff is a qualified individual with disabilities under the ADA.

448.

MSM by its own admission found Plaintiff to be a qualified individual in that the note-taking accommodation was granted to Plaintiff, and the note-taking accommodation was only available for "qualified students." See Exhibit AI, Pages 1-3, and Exhibit AJ, Page 2.

449.

MSM is a program or activity under the Rehabilitation Act. 29 U.S.C. § 794(b)(2)(A), 29 U.S.C. § 794(b)(3)(A), 34 C.F.R. § 104.3(k)(2)(i), and 34 C.F.R. § 104.3(k)(3)(i)(B).

450.

MSM is a private entity under Title III of the ADA and its implementing regulations. 42 U.S.C. § 12181(6), 42 U.S.C. § 12181(7)(J), and 28 C.F.R. § 36.104.

451.

MSM is a recipient "to which Federal financial assistance is extended directly or through another recipient, including any successor, assignee, or transferee of a recipient, but excluding the ultimate beneficiary of the assistance." 34 C.F.R. § 104.3(f).

452.

At all times relevant to the allegations of the within complaint, MSM has been a recipient of Federal financial assistance including, but not limited to, those under Title IV of the Higher Education Act, Federal student financial aid in the form of tuition payments, loans, grants, subsidies, and other funds. 34 C.F.R. § 104.3(h).

453.

MSM has signed and filed assurances of compliance with the Department of

Education conditioning the receipt of Federal financial assistance on continued

compliance with the Rehabilitation Act. 34 C.F.R. § 104.5.

454.

Retaliation is defined as discriminating against an individual because such

"individual has opposed any act or practice made unlawful by this chapter or

because such individual made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. §

12203(a), 28 C.F.R. § 36.206(a), 28 C.F.R. § 35.134(a), and 29 U.S.C. § 794(a,d).

455.

MSM has violated the rights of Plaintiff under 42 U.S.C. § 12203(a), 28

C.F.R. § 36.206(a), 28 C.F.R. § 35.134(a), and 29 U.S.C. § 794(a,d), as described

herein, due to Plaintiff's opposition of MSM's failure to provide for Plaintiff's

note-taking accommodation and Plaintiff filing a compliance complaint, including

the following:

a. The meetings and communications between Plaintiff and Marla Thompson,

   and Plaintiff and Dr. Ngozi Anachebe, in subdivision heading F,

   "RESOLUTION ATTEMPT BY PLAINTIFF," where Plaintiff opposed the

previous failures of MSM in providing for Plaintiff's note-taking

accommodation, and attempted to find a resolution, and Alecia Bell

notifying Plaintiff via phone, on or around June 19, 2020, and later

confirmed via email on June 24, 2020, that she could not respond as to why

these events happened from the responses Marla Thompson and Dr. Ngozi

Anachebe provided to her (See Exhibit BH, Pages 1-4);

b.   Keith Henderson, MSM's Chief Compliance Officer, choosing not to

respond to Plaintiff's email about filing a compliance complaint (See Exhibit

BA and Exhibit BB, Page 2);

c.   On or around June 26, 2020, and June 29, 2020, Plaintiff emailed Alecia

Bell and asked for more clarity about the processes and procedures regarding

MSM's Office of Compliance and Office of General Counsel in

investigating and dealing with Plaintiff's compliance complaint, to which

Alecia Bell, on or around June 29, 2020, stated she did not have answers to

any of Plaintiff's questions, when in fact Alecia Bell knew the answers to at

the very least Plaintiff's first and second question, because it was the process

and procedure Alecia Bell was carrying out (See Exhibit BN, Pages 1-2);

d.   MSM's Office of Compliance needed to spend over three and a half months

[Plaintiff's compliance complaint was filed on or around March 28, 2020

(See Exhibit BB), and MSM's written letter of determination was sent to

Plaintiff on or around July 14, 2020 (See Exhibit BO)] investigating

Plaintiff's compliance complaint, which by MSM's Office of Compliance's

own admission, consisted overall of only four to five total meetings;

e.  Despite MSM's general policy against retaliation and discrimination (See

Exhibit AD, Page 66, Exhibit AE, Page 70, and Exhibit AF, Page 71), and

despite Plaintiff's compliance complaint outlining MSM's attempts to

conceal and MSM's retaliatory acts made against Plaintiff (See Exhibit BB,

Pages 1-2), which are described in subdivision heading F, "RESOLUTION

ATTEMPT BY PLAINTIFF," Alecia Bell's written letter of determination

to Plaintiff failed to address the portion of Plaintiff's compliance complaint

outlining MSM's attempts to conceal and retaliatory acts made against

Plaintiff (See Exhibit BO, Pages 2-3);

f.  Due to MSM's current reaffirmation of its accreditation with the Southern

Association of Colleges and Schools Commission on Colleges (SACSCOC)

(See Exhibit BP, Pages 1-2) and the Liaison Committee on Medical

Education (LCME) (See Exhibit BP, Pages 3-7), Alecia Bell intentionally

made numerous erroneous, misleading, unclear, arbitrary, self-serving, and

false findings in her written letter of determination sent to Plaintiff including, but not limited to, the issues described in Paragraphs 213-224;

g. Alecia Bell intentionally made numerous erroneous, misleading, unclear, arbitrary, self-serving, and false findings in her written letter of determination sent to Plaintiff including, but not limited to, the issues described in Paragraphs 213-224, so as to preclude Plaintiff from being able to rely on it during Plaintiff's dismissal hearing;

h. MSM, a medical school, placing Plaintiff, one of its medical students, and who has a disability, in a financially and medically disadvantageous position in that Plaintiff was given no warning of when Plaintiff's health insurance benefits would end, on or around June 30, 2020, despite Plaintiff asking for answers about what will happen to Plaintiff's health insurance on or around May 27, 2020 (See Exhibit BU, Pages 1-2), leaving Plaintiff uninsured for the month of July 2020, and leaving Plaintiff unable to secure health insurance until at least August of 2020, during the global COVID-19 pandemic;

i. MSM, a medical school, placing Plaintiff, one of its medical students, who has a disability, in a financially and medically disadvantageous position in that Plaintiff lost access to Plaintiff's doctors and Plaintiff has had to use

152

medications with less frequency than prescribed due to their uninsured high

costs because MSM cancelled Plaintiff's health insurance without any

warning, on or around June 30, 2020, despite Plaintiff asking for answers

about what will happen to Plaintiff's health insurance on or around May 27,

2020 (See Exhibit BU, Pages 1-2), during the global COVID-19 pandemic;

j.  On or around July 2, 2020, in response to Plaintiff losing health insurance

coverage without any warning, Plaintiff fearfully emailed Alecia Bell,

stating that Plaintiff could not deal with any more surprises, and that

Plaintiff needed some assurances that Plaintiff will continue to have access

to Plaintiff's school email and laptop computer (which will become

Plaintiff's own laptop computer after graduating but currently requires a

MSM-issued password to access and use) at least until the resolution of

Plaintiff's issues with MSM, to which Alecia Bell subsequently responded

via email stating that she would work with Marla Thompson in addressing

Plaintiff's request, to which Marla Thompson subsequently responded via

email to Alecia Bell (with Plaintiff cc-ed) stating, "I will engage the

Registrar so you have clarity on how they manage this process. We will do

what we are able to so [Plaintiff] is aware of this information today," (See

Exhibit BW, Pages 1-2), and yet Plaintiff has never heard back from anyone

at MSM about whether Plaintiff will continue to have access to Plaintiff's school email and laptop computer;

k.  On or around June 30, 2020, and on or around July 1, 2020, due to the possibility of Plaintiff needing to return to campus to possibly meet with anyone, or sign anything, regarding Plaintiff's issues with MSM, Plaintiff, after receiving emails that all students and staff returning to campus are required to get tested first, emailed Alecia Bell asking if Plaintiff should schedule a COVID-19 test, and Alecia Bell chose not to respond to both emails (See Exhibit BX, Pages 1-4), because MSM already had every intention of dismissing Plaintiff and the dismissal hearing was just a "formality" or sham;

l.  MSM scheduling a dismissal hearing against Plaintiff (scheduled for on or around June 16, 2020, postponed on or around June 12, 2020, and rescheduled for on or around July 28, 2020) after MSM failed to provide for Plaintiff's note-taking accommodation, during the 2017-2018 and 2018-2019 academic school years, that MSM granted to Plaintiff;

m. Dr. Brenda Klement choosing not to respond to Plaintiff's email asking about who at MSM had the authority to postpone or cancel Plaintiff's

dismissal hearing, whilst the investigation about Plaintiff's compliance complaint was still being conducted (See Exhibit BE, Pages 1-2);

n.  Plaintiff was provided with no official explanation as to why the original dismissal hearing was postponed and then later rescheduled;

o.  On or around June 5, 2020, Alecia Bell notified Plaintiff via phone that Dr. Brenda Klement and herself both decided that since there was supposedly not a process in place at MSM concerning dismissal hearings where the student also has an ongoing compliance investigation, and because Alecia Bell supposedly still did not have enough information collected from other parties at MSM about Plaintiff's then two-plus-month-old compliance complaint about MSM failing to provide for Plaintiff's note-taking accommodation, the dismissal hearing against Plaintiff would continue as scheduled (See Exhibit BG);

p.  On or around June 5, 2020, Alecia Bell notified Plaintiff via phone that despite ODS having more or less agreed to the facts in Plaintiff's compliance complaint (Exhibit BB) about MSM failing to provide for Plaintiff's note-taking accommodation, the dismissal hearing against Plaintiff would continue as scheduled;

q. MSM's scheduling a dismissal hearing against Plaintiff (scheduled for on or around June 16, 2020, postponed on or around June 12, 2020, and rescheduled for on or around July 28, 2020) while MSM was simultaneously conducting an already active and ongoing investigation regarding Plaintiff's compliance complaint, filed on or around March 28, 2020, regarding the failure of MSM in providing for Plaintiff's note-taking accommodation;

r. MSM's policy that Plaintiff's questions about MSM's dismissal hearing against Plaintiff and about MSM's ultimate dismissal of Plaintiff should be directed to Dr. Ngozi Anachebe, Associate Dean of Admission and Student Affairs at MSM, (See Exhibit BD, Page 5, Exhibit BM, Page 5, Exhibit BT, Page 3) despite Plaintiff naming Dr. Ngozi Anachebe as one of the actors in MSM's attempts to conceal and MSM's retaliatory acts against Plaintiff described in Plaintiff's compliance complaint (See Exhibit BB, Pages 1-2) and described in subdivision heading F, "RESOLUTION ATTEMPT BY PLAINTIFF," of which Alecia Bell stated to Plaintiff that she could not respond as to why the events described in Plaintiff's compliance complaint (See Exhibit BB, Pages 1-2) and described in subdivision heading F, "RESOLUTION ATTEMPT BY PLAINTIFF," happened from the responses Marla Thompson and Dr. Ngozi Anachebe provided to her during

Alecia Bell's investigation of Plaintiff's compliance complaint (See Exhibit BH, Pages 1-4), and which Alecia Bell's written letter of determination to Plaintiff ultimately failed to address (See Exhibit BO, Pages 2-3);

s. MSM's inclusion of Dr. Ngozi Anachebe in Plaintiff's dismissal hearing despite Plaintiff naming Dr. Ngozi Anachebe as one of the actors in MSM's attempts to conceal and MSM's retaliatory acts against Plaintiff described in Plaintiff's compliance complaint (See Exhibit BB, Pages 1-2) and described in subdivision heading F, "RESOLUTION ATTEMPT BY PLAINTIFF," of which Alecia Bell stated to Plaintiff that she could not respond as to why the events described in Plaintiff's compliance complaint (See Exhibit BB, Pages 1-2) and described in subdivision heading F, "RESOLUTION ATTEMPT BY PLAINTIFF," happened from the responses Marla Thompson and Dr. Ngozi Anachebe provided to her during Alecia Bell's investigation of Plaintiff's compliance complaint (See Exhibit BH, Pages 1-4), and which Alecia Bell's written letter of determination to Plaintiff ultimately failed to address (See Exhibit BO, Pages 2-3);

t. At the start of Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff was informed, without warning, by Dr. Brenda Klement that the committee members had not, and were not, going to look over Plaintiff's

dismissal hearing exhibits before the hearing, despite Dr. Brenda Klement affirming that they would (See Exhibit BS), and with no explanation as to why this decision was being made when Plaintiff was previously asked what method of disseminating Plaintiff's dismissal hearing exhibits Plaintiff wanted;

u. During Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking accommodation, granted by MSM, was non-essential because Plaintiff had textbooks;

v. During Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking accommodation, granted by MSM, was non-essential because Plaintiff had access to class recordings;

w. MSM choosing not to incorporate appropriate due process standards regarding MSM's dismissal hearing against Plaintiff;

x. Despite MSM's failure to provide for Plaintiff's note-taking accommodation during the 2017-2018 and 2018-2019 academic school years, MSM dismissed Plaintiff from MSM's medical school program on or around July 28, 2020;

y. In an attempt to freeze the status quo of MSM's prior discrimination of Plaintiff, so as to escape the consequences of failing to provide for Plaintiff's note-taking accommodation during Plaintiff's 2017-2018 and 2018-2019 academic school years, MSM dismissed Plaintiff from MSM's medical school program on or around July 28, 2020;

z. MSM's dismissal letter to Plaintiff alleges, "After careful consideration of the information you presented during the hearing, the written information you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit BR], and your academic transcript, the committee voted to dismiss you from Morehouse School of Medicine," (See Exhibit BT, Page 2) but all of the committee members of Plaintiff's dismissal hearing did not carefully consider Plaintiff's exhibits because the exhibits remained in the possession of Dr. Ngozi Anachebe and Dr. Martha Elks, and not in the possession of all committee members;

aa. MSM's dismissal letter to Plaintiff alleging, "After careful consideration of the information you presented during the hearing, the written information you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit BR], and your academic transcript, the committee voted to dismiss you from Morehouse School of Medicine. The decision was based on the school's

159

policy of receiving a final grade of D or F while in the decelerated track, and

for receiving two or more final grades of D or F (Page 107, iii and viii,

respectively, 2019-2020 Student Handbook) [Plaintiff's Exhibit AF]," (See

Exhibit BT, Page 2) but the reason for Plaintiff's grades are due to the

effects of MSM's failure in providing for Plaintiff's note-taking

accommodation during the 2017-2018 and 2018-2019 academic school

years, including but not limited to Plaintiff's poor grades and poor academic

knowledgebase;

bb. MSM's dismissal letter to Plaintiff alleging, "After careful consideration of

the information you presented during the hearing, the written information

you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit BR], and

your academic transcript, the committee voted to dismiss you from

Morehouse School of Medicine. The decision was based on the school's

policy of receiving a final grade of D or F while in the decelerated track, and

for receiving two or more final grades of D or F (Page 107, iii and viii,

respectively, 2019-2020 Student Handbook) [Plaintiff's Exhibit AF]," (See

Exhibit BT, Page 2) but the reason for Plaintiff's grades is due to attempts

made by Plaintiff since January of 2020 to find resolutions to the problems

Plaintiff was experiencing including, but not limited to, Plaintiff's time spent

combing through two plus years of emails, compiling and conducting

analytics with regards to Plaintiff's note-taking accommodation for the

2017-2018 and 2018-2019 academic school years, Plaintiff's meetings with

Marla Thompson and Dr. Ngozi Anachebe, Plaintiff filing a compliance

complaint that took over three (3) months to investigate, and Plaintiff

sharing to Marla Thompson and Dr. Ngozi Anachebe Plaintiff's feelings of

depression, anxiety, and panic attacks with regards to this entire situation;

cc. MSM's dismissal letter to Plaintiff alleges, "MSM has a policy that the 1st

and 2nd Year Curriculum will consist of no more than 36 months excluding

any leave of absence (Page 104, b. 2019-2020 Student Handbook)

[Plaintiff's Exhibit AF], and you have reached this time limit," (See Exhibit

BT, Page 2) and on information and belief, MSM has allowed other students

to spend more than 36 months during their 1st and 2nd Year Curriculum;

dd. Despite that at all relevant times while Plaintiff has been a student at MSM,

MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 101, MSM's

2018-2019 Student Handbook (See Exhibit AE, Page 107), and MSM's

2019-2020 Student Handbook (See Exhibit AF, Page 108) has stated, under

the "Dismissal and Suspension" subheading, under "The Student Academic

Progress & Promotion Committee (SAPP)" heading, that, "The Chair of the

SAPP committee will provide written information on the reasons for the dismissal hearing," Plaintiff was never notified or provided written information (See Exhibit BD, Page 4, and Exhibit BM, Page 4) that one of the reasons for MSM's dismissal hearing against Plaintiff, and one of the reasons MSM's dismissal of Plaintiff would ultimately be for, was that "MSM has a policy that the 1st and 2nd Year Curriculum will consist of no more than 36 months excluding any leave of absence (Page 104, b. 2019-2020 Student Handbook) [Plaintiff's Exhibit AF], and [Plaintiff had] reached this time limit," (See Exhibit BT, Page 2) and thus Plaintiff was not able to present Plaintiff's case, evidence, and context, regarding this reason Plaintiff was dismissed from MSM, in violation of MSM's Student Handbook (See Exhibit AD, Page 101, Exhibit AE, Page 107, and Exhibit AF, Page 108);

ee. Despite Plaintiff being asked by Alecia Bell, MSM's Interim Chief Compliance Officer, via phone meeting on or around June 19, 2020, to give MSM an opportunity to provide some solutions with regards to Plaintiff's compliance complaint (See Exhibit BN, Page 2), MSM ultimately dismissed Plaintiff on or around July 28, 2020;

ff. During the course of Plaintiff's compliance complaint and investigation,

MSM became aware that Plaintiff has private student loans, and by dragging

out the investigation of Plaintiff's compliance complaint and ultimately

dismissing Plaintiff from MSM's medical school program, rather than

providing prompt and equitable relief to Plaintiff, MSM is attempting to

freeze the status quo of MSM's prior discrimination of Plaintiff, in attempts

to escape the consequences of failing to provide for Plaintiff's note-taking

accommodation during Plaintiff's 2017-2018 and 2018-2019 academic

school years, by throwing Plaintiff in a financially impossible position in

which Plaintiff will have to start paying back private and federal student

loans while simultaneously litigating against MSM.

456.

In addition, it shall be unlawful to "coerce, intimidate, threaten, or interfere

with any individual in the exercise or enjoyment of, or on account of his or her

having exercised or enjoyed, or on account of his or her having aided or

encouraged any other individual in the exercise or enjoyment of, any right granted

or protected" by the ADA, the ADA's implementing regulations, and the

Rehabilitation Act. 42 U.S.C. § 12203(b), 28 C.F.R. § 36.206(b), 28 C.F.R. §

35.134(b), and 29 U.S.C. § 794(a,d).

457.

MSM has violated the rights of Plaintiff under 42 U.S.C. § 12203(b), 28

C.F.R. § 36.206(b), 28 C.F.R. § 35.134(b), and 29 U.S.C. § 794(a,d), as described

herein, due to Plaintiff's exercise or enjoyment of, or on account of Plaintiff having

exercised or asserted Plaintiff's rights under the Rehabilitation Act and the ADA,

including the following:

a.  The meetings and communications between Plaintiff and Marla Thompson,

and Plaintiff and Dr. Ngozi Anachebe, in subdivision heading F,

"RESOLUTION ATTEMPT BY PLAINTIFF," where Plaintiff opposed the

previous failures of MSM in providing for Plaintiff's note-taking

accommodation, and attempted to find a resolution, and Alecia Bell

notifying Plaintiff via phone, on or around June 19, 2020, and later

confirmed via email on June 24, 2020, that she could not respond as to why

these events happened from the responses Marla Thompson and Dr. Ngozi

Anachebe provided to her (See Exhibit BH, Pages 1-4);

b.  Keith Henderson, MSM's Chief Compliance Officer, choosing not to

respond to Plaintiff's email about filing a compliance complaint (See Exhibit

BA and Exhibit BB, Page 2);

c. On or around June 26, 2020, and June 29, 2020, Plaintiff emailed Alecia
   Bell and asked for more clarity about the processes and procedures regarding
   MSM's Office of Compliance and Office of General Counsel in
   investigating and dealing with Plaintiff's compliance complaint, to which
   Alecia Bell, on or around June 29, 2020, stated she did not have answers to
   any of Plaintiff's questions, when in fact Alecia Bell knew the answers to at
   the very least Plaintiff's first and second question, because it was the process
   and procedure Alecia Bell was carrying out (See Exhibit BN, Pages 1-2);

d. MSM's Office of Compliance needed to spend over three and a half months
   [Plaintiff's compliance complaint was filed on or around March 28, 2020
   (See Exhibit BB), and MSM's written letter of determination was sent to
   Plaintiff on or around July 14, 2020 (See Exhibit BO)] investigating
   Plaintiff's compliance complaint, which by MSM's Office of Compliance's
   own admission, consisted overall of only four to five total meetings;

e. Despite MSM's general policy against retaliation and discrimination (See
   Exhibit AD, Page 66, Exhibit AE, Page 70, and Exhibit AF, Page 71), and
   despite Plaintiff's compliance complaint outlining MSM's attempts to
   conceal and MSM's retaliatory acts made against Plaintiff (See Exhibit BB,
   Pages 1-2), which are described in subdivision heading F, "RESOLUTION

ATTEMPT BY PLAINTIFF," Alecia Bell's written letter of determination to Plaintiff failed to address the portion of Plaintiff's compliance complaint outlining MSM's attempts to conceal and retaliatory acts made against Plaintiff (See Exhibit BO, Pages 2-3);

f.  Due to MSM's current reaffirmation of its accreditation with the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC) (See Exhibit BP, Pages 1-2) and the Liaison Committee on Medical Education (LCME) (See Exhibit BP, Pages 3-7), Alecia Bell intentionally made numerous erroneous, misleading, unclear, arbitrary, self-serving, and false findings in her written letter of determination sent to Plaintiff including, but not limited to, the issues described in Paragraphs 213-224;

g.  Alecia Bell intentionally made numerous erroneous, misleading, unclear, arbitrary, self-serving, and false findings in her written letter of determination sent to Plaintiff including, but not limited to, the issues described in Paragraphs 213-224, so as to preclude Plaintiff from being able to rely on it during Plaintiff's dismissal hearing;

h.  MSM, a medical school, placing Plaintiff, one of its medical students, and who has a disability, in a financially and medically disadvantageous position in that Plaintiff was given no warning of when Plaintiff's health insurance

benefits would end, on or around June 30, 2020, despite Plaintiff asking for answers about what will happen to Plaintiff's health insurance on or around May 27, 2020 (See Exhibit BU, Pages 1-2), leaving Plaintiff uninsured for the month of July 2020, and leaving Plaintiff unable to secure health insurance until at least August of 2020, during the global COVID-19 pandemic;

i.   MSM, a medical school, placing Plaintiff, one of its medical students, who has a disability, in a financially and medically disadvantageous position in that Plaintiff lost access to Plaintiff's doctors and Plaintiff has had to use medications with less frequency than prescribed due to their uninsured high costs because MSM cancelled Plaintiff's health insurance without any warning, on or around June 30, 2020, despite Plaintiff asking for answers about what will happen to Plaintiff's health insurance on or around May 27, 2020 (See Exhibit BU, Pages 1-2), during the global COVID-19 pandemic;

j.   On or around July 2, 2020, in response to Plaintiff losing health insurance coverage without any warning, Plaintiff fearfully emailed Alecia Bell, stating that Plaintiff could not deal with any more surprises, and that Plaintiff needed some assurances that Plaintiff will continue to have access to Plaintiff's school email and laptop computer (which will become

Plaintiff's own laptop computer after graduating but currently requires a MSM-issued password to access and use) at least until the resolution of Plaintiff's issues with MSM, to which Alecia Bell subsequently responded via email stating that she would work with Marla Thompson in addressing Plaintiff's request, to which Marla Thompson subsequently responded via email to Alecia Bell (with Plaintiff cc-ed) stating, "I will engage the Registrar so you have clarity on how they manage this process. We will do what we are able to so [Plaintiff] is aware of this information today," (See Exhibit BW, Pages 1-2), and yet Plaintiff has never heard back from anyone at MSM about whether Plaintiff will continue to have access to Plaintiff's school email and laptop computer;

k. On or around June 30, 2020, and on or around July 1, 2020, due to the possibility of Plaintiff needing to return to campus to possibly meet with anyone, or sign anything, regarding Plaintiff's issues with MSM, Plaintiff, after receiving emails that all students and staff returning to campus are required to get tested first, emailed Alecia Bell asking if Plaintiff should schedule a COVID-19 test, and Alecia Bell chose not to respond to both emails (See Exhibit BX, Pages 1-4), because MSM already had every

intention of dismissing Plaintiff and the dismissal hearing was just a "formality" or sham;

l. MSM scheduling a dismissal hearing against Plaintiff (scheduled for on or around June 16, 2020, postponed on or around June 12, 2020, and rescheduled for on or around July 28, 2020) after MSM failed to provide for Plaintiff's note-taking accommodation, during the 2017-2018 and 2018-2019 academic school years, that MSM granted to Plaintiff;

m. Dr. Brenda Klement choosing not to respond to Plaintiff's email asking about who at MSM had the authority to postpone or cancel Plaintiff's dismissal hearing, whilst the investigation about Plaintiff's compliance complaint was still being conducted (See Exhibit BE, Pages 1-2);

n. Plaintiff was provided with no official explanation as to why the original dismissal hearing was postponed and then later rescheduled;

o. On or around June 5, 2020, Alecia Bell notified Plaintiff via phone that Dr. Brenda Klement and herself both decided that since there was supposedly not a process in place at MSM concerning dismissal hearings where the student also has an ongoing compliance investigation, and because Alecia Bell supposedly still did not have enough information collected from other parties at MSM about Plaintiff's then two-plus-month-old compliance

complaint about MSM failing to provide for Plaintiff's note-taking accommodation, the dismissal hearing against Plaintiff would continue as scheduled (See Exhibit BG);

p. On or around June 5, 2020, Alecia Bell notified Plaintiff via phone that despite ODS having more or less agreed to the facts in Plaintiff's compliance complaint (Exhibit BB) about MSM failing to provide for Plaintiff's note-taking accommodation, the dismissal hearing against Plaintiff would continue as scheduled;

q. MSM's scheduling a dismissal hearing against Plaintiff (scheduled for on or around June 16, 2020, postponed on or around June 12, 2020, and rescheduled for on or around July 28, 2020) while MSM was simultaneously conducting an already active and ongoing investigation regarding Plaintiff's compliance complaint, filed on or around March 28, 2020, regarding the failure of MSM in providing for Plaintiff's note-taking accommodation;

r. MSM's policy that Plaintiff's questions about MSM's dismissal hearing against Plaintiff and about MSM's ultimate dismissal of Plaintiff should be directed to Dr. Ngozi Anachebe, Associate Dean of Admission and Student Affairs at MSM, (See Exhibit BD, Page 5, Exhibit BM, Page 5, Exhibit BT, Page 3) despite Plaintiff naming Dr. Ngozi Anachebe as one of the actors in

MSM's attempts to conceal and MSM's retaliatory acts against Plaintiff described in Plaintiff's compliance complaint (See Exhibit BB, Pages 1-2) and described in subdivision heading F, "RESOLUTION ATTEMPT BY PLAINTIFF," of which Alecia Bell stated to Plaintiff that she could not respond as to why the events described in Plaintiff's compliance complaint (See Exhibit BB, Pages 1-2) and described in subdivision heading F, "RESOLUTION ATTEMPT BY PLAINTIFF," happened from the responses Marla Thompson and Dr. Ngozi Anachebe provided to her during Alecia Bell's investigation of Plaintiff's compliance complaint (See Exhibit BH, Pages 1-4), and which Alecia Bell's written letter of determination to Plaintiff ultimately failed to address (See Exhibit BO, Pages 2-3);

s. MSM's inclusion of Dr. Ngozi Anachebe in Plaintiff's dismissal hearing despite Plaintiff naming Dr. Ngozi Anachebe as one of the actors in MSM's attempts to conceal and MSM's retaliatory acts against Plaintiff described in Plaintiff's compliance complaint (See Exhibit BB, Pages 1-2) and described in subdivision heading F, "RESOLUTION ATTEMPT BY PLAINTIFF," of which Alecia Bell stated to Plaintiff that she could not respond as to why the events described in Plaintiff's compliance complaint (See Exhibit BB, Pages 1-2) and described in subdivision heading F, "RESOLUTION ATTEMPT

BY PLAINTIFF," happened from the responses Marla Thompson and Dr. Ngozi Anachebe provided to her during Alecia Bell's investigation of Plaintiff's compliance complaint (See Exhibit BH, Pages 1-4), and which Alecia Bell's written letter of determination to Plaintiff ultimately failed to address (See Exhibit BO, Pages 2-3);

t.  At the start of Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff was informed, without warning, by Dr. Brenda Klement that the committee members had not, and were not, going to look over Plaintiff's dismissal hearing exhibits before the hearing, despite Dr. Brenda Klement affirming that they would (See Exhibit BS), and with no explanation as to why this decision was being made when Plaintiff was previously asked what method of disseminating Plaintiff's dismissal hearing exhibits Plaintiff wanted;

u.  During Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking accommodation, granted by MSM, was non-essential because Plaintiff had textbooks;

v.  During Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking

accommodation, granted by MSM, was non-essential because Plaintiff had access to class recordings;

w. MSM choosing not to incorporate appropriate due process standards regarding MSM's dismissal hearing against Plaintiff;

x. Despite MSM's failure to provide for Plaintiff's note-taking accommodation during the 2017-2018 and 2018-2019 academic school years, MSM dismissed Plaintiff from MSM's medical school program on or around July 28, 2020;

y. In an attempt to freeze the status quo of MSM's prior discrimination of Plaintiff, so as to escape the consequences of failing to provide for Plaintiff's note-taking accommodation during Plaintiff's 2017-2018 and 2018-2019 academic school years, MSM dismissed Plaintiff from MSM's medical school program on or around July 28, 2020;

z. MSM's dismissal letter to Plaintiff alleges, "After careful consideration of the information you presented during the hearing, the written information you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit BR], and your academic transcript, the committee voted to dismiss you from Morehouse School of Medicine," (See Exhibit BT, Page 2) but all of the committee members of Plaintiff's dismissal hearing did not carefully

consider Plaintiff's exhibits because the exhibits remained in the possession

of Dr. Ngozi Anachebe and Dr. Martha Elks, and not in the possession of all

committee members;

aa. MSM's dismissal letter to Plaintiff alleging, "After careful consideration of

the information you presented during the hearing, the written information

you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit BR], and

your academic transcript, the committee voted to dismiss you from

Morehouse School of Medicine. The decision was based on the school's

policy of receiving a final grade of D or F while in the decelerated track, and

for receiving two or more final grades of D or F (Page 107, iii and viii,

respectively, 2019-2020 Student Handbook) [Plaintiff's Exhibit AF]," (See

Exhibit BT, Page 2) but the reason for Plaintiff's grades are due to the

effects of MSM's failure in providing for Plaintiff's note-taking

accommodation during the 2017-2018 and 2018-2019 academic school

years, including but not limited to Plaintiff's poor grades and poor academic

knowledgebase;

bb. MSM's dismissal letter to Plaintiff alleging, "After careful consideration of

the information you presented during the hearing, the written information

you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit BR], and

174

your academic transcript, the committee voted to dismiss you from

Morehouse School of Medicine. The decision was based on the school's

policy of receiving a final grade of D or F while in the decelerated track, and

for receiving two or more final grades of D or F (Page 107, iii and viii,

respectively, 2019-2020 Student Handbook) [Plaintiff's Exhibit AF]," (See

Exhibit BT, Page 2) but the reason for Plaintiff's grades is due to attempts

made by Plaintiff since January of 2020 to find resolutions to the problems

Plaintiff was experiencing including, but not limited to, Plaintiff's time spent

combing through two plus years of emails, compiling and conducting

analytics with regards to Plaintiff's note-taking accommodation for the

2017-2018 and 2018-2019 academic school years, Plaintiff's meetings with

Marla Thompson and Dr. Ngozi Anachebe, Plaintiff filing a compliance

complaint that took over three (3) months to investigate, and Plaintiff

sharing to Marla Thompson and Dr. Ngozi Anachebe Plaintiff's feelings of

depression, anxiety, and panic attacks with regards to this entire situation;

cc. MSM's dismissal letter to Plaintiff alleges, "MSM has a policy that the 1st

and 2nd Year Curriculum will consist of no more than 36 months excluding

any leave of absence (Page 104, b. 2019-2020 Student Handbook)

[Plaintiff's Exhibit AF], and you have reached this time limit," (See Exhibit

BT, Page 2) and on information and belief, MSM has allowed other students

to spend more than 36 months during their 1st and 2nd Year Curriculum;

dd. Despite that at all relevant times while Plaintiff has been a student at MSM,

MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 101, MSM's

2018-2019 Student Handbook (See Exhibit AE, Page 107), and MSM's

2019-2020 Student Handbook (See Exhibit AF, Page 108) has stated, under

the "Dismissal and Suspension" subheading, under "The Student Academic

Progress & Promotion Committee (SAPP)" heading, that, "The Chair of the

SAPP committee will provide written information on the reasons for the

dismissal hearing," Plaintiff was never notified or provided written

information (See Exhibit BD, Page 4, and Exhibit BM, Page 4) that one of

the reasons for MSM's dismissal hearing against Plaintiff, and one of the

reasons MSM's dismissal of Plaintiff would ultimately be for, was that

"MSM has a policy that the 1st and 2nd Year Curriculum will consist of no

more than 36 months excluding any leave of absence (Page 104, b. 2019-

2020 Student Handbook) [Plaintiff's Exhibit AF], and [Plaintiff had]

reached this time limit," (See Exhibit BT, Page 2) and thus Plaintiff was not

able to present Plaintiff's case, evidence, and context, regarding this reason

Plaintiff was dismissed from MSM, in violation of MSM's Student

Handbook (See Exhibit AD, Page 101, Exhibit AE, Page 107, and Exhibit AF, Page 108);

ee. Despite Plaintiff being asked by Alecia Bell, MSM's Interim Chief Compliance Officer, via phone meeting on or around June 19, 2020, to give MSM an opportunity to provide some solutions with regards to Plaintiff's compliance complaint (See Exhibit BN, Page 2), MSM ultimately dismissed Plaintiff on or around July 28, 2020;

ff. During the course of Plaintiff's compliance complaint and investigation, MSM became aware that Plaintiff has private student loans, and by dragging out the investigation of Plaintiff's compliance complaint and ultimately dismissing Plaintiff from MSM's medical school program, rather than providing prompt and equitable relief to Plaintiff, MSM is attempting to freeze the status quo of MSM's prior discrimination of Plaintiff, in attempts to escape the consequences of failing to provide for Plaintiff's note-taking accommodation during Plaintiff's 2017-2018 and 2018-2019 academic school years, by throwing Plaintiff in a financially impossible position in which Plaintiff will have to start paying back private and federal student loans while simultaneously litigating against MSM.

458.

The actions and inactions of MSM described herein were made for the sole purpose of retaliating and discriminating against Plaintiff's opposition to MSM's failure to provide for Plaintiff's note-taking accommodation and Plaintiff filing a compliance complaint, despite MSM advertising that "the atmosphere here at MSM to be one that fosters learning, enhances emotional well-being, and helps you in your professional growth" (See Exhibit BY, Page 1). 42 U.S.C. § 12203(a), 29 U.S.C. § 794(a,d), 28 C.F.R. § 36.206, and 28 C.F.R. § 35.134.

459.

The actions and inactions of MSM described herein were made for the sole purpose of interfering, coercing, intimidating, and threatening Plaintiff due to Plaintiff's exercise or enjoyment of, or on account of Plaintiff having exercised or asserted, Plaintiff's rights under the Rehabilitation Act and the ADA, despite MSM advertising that "the atmosphere here at MSM to be one that fosters learning, enhances emotional well-being, and helps you in your professional growth" (See Exhibit BY, Page 1). 42 U.S.C. § 12203(b), 29 U.S.C. § 794(a,d), 28 C.F.R. § 36.206, and 28 C.F.R. § 35.134.

460.

According to MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 70), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 74), and MSM's

2019-2020 Student Handbook (See Exhibit AF, Page 75), under the "Compliance

Hotline" heading, that,

> "[MSM] is an organization with strong values of responsibility and integrity.
> Our written standards and policies contain general guidelines for conducting
> business with the highest standards of ethics. The institution is committed to
> an environment where open, honest communications are the expectation, not
> the exception."

461.

MSM has knowledge of its obligations under the ADA and Rehabilitation

Act and has acted with intentional animus and deliberate indifference of Plaintiff's

federally protected rights.

462.

MSM knew that harm to Plaintiff's federally protected rights was

substantially likely as a result of MSM's actions and inactions, and MSM failed to

act on that likelihood.

463.

These actions and inactions of MSM described herein were materially

adverse to Plaintiff and would dissuade a reasonable person from making or

supporting a charge of discrimination.

464.

The willful actions and inactions of MSM have placed Plaintiff in a

financially and medically disadvantageous position.

465.

As a result of MSM's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

466.

As a result of MSM's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

467.

Plaintiff has had to hire counsel and currently has over $20,000 in attorney's fees on account at $400/hour. 29 U.S.C.A. § 794a(b), 28 C.F.R. § 36.505, and 42 U.S.C.A. § 2000a-3(b).

*COUNT VII - VIOLATION OF O.C.G.A. § 51–6–1, § 51–6–2, AND § 51–6–4 - FRAUD - WILLFUL MISREPRESENTATION AND CONCEALMENT OF FACT*

468.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 284.

469.

O.C.G.A. § 51-6-2(a), states that:

"Willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action. Mere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action." O.C.G.A. § 51-6-2(a).

470.

O.C.G.A. § 51-6-4(a), states that:

"A fraud may be committed by acts as well as words." O.C.G.A. § 51-6-4(a).

471.

MSM willfully misrepresented material facts to Plaintiff under O.C.G.A. § 51-6-2(a), as described herein, including the following:

a. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Plaintiff was made to believe that there was a system in place to satisfy Plaintiff's note-taking accommodation at MSM;

b. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Plaintiff was made to believe that the note-taking accommodation would operate efficiently in providing notes for Plaintiff's accommodation;

c.  During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson knew there was not a system in place to satisfy Plaintiff's note-taking accommodation;

d.  During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson knew the note-taking accommodation for Plaintiff was not an established system at MSM;

e.  During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson knew the note-taking accommodation for Plaintiff had not been previously provided by her;

f.  During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson communicated that Plaintiff's requested note-taking accommodation would come with a 24-48-hour turnaround time goal for any class Plaintiff was taking;

g.  The 24-48-hour turnaround time goal for the availability of notes for Plaintiff's note-taking accommodation was never measured or evaluated by

either Marla Thompson or Dr. Brandi Knight during the entirety of the time Plaintiff has been a student at MSM;

h. Neither Marla Thompson nor Dr. Brandi Knight had any intention of ever measuring or evaluating the 24-48-hour turnaround time goal for Plaintiff's note-taking accommodation to ensure that this goal was met;

i. Marla Thompson willfully misrepresented material facts to Plaintiff in order to induce Plaintiff into enrolling in MSM's medical school program on or around May 15, 2017, which was the deadline for students, whom had been accepted into multiple medical schools, to choose what medical school they would matriculate to.

472.

MSM concealed material facts so as to deceive and mislead Plaintiff under O.C.G.A. § 51-6-2(a) and O.C.G.A. § 51-6-4(a), as described herein, including the following:

a. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Plaintiff was neither warned nor advised that the note-taking accommodation would be a new process for Marla Thompson;

b. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that there was currently no system in place to satisfy Plaintiff's note-taking accommodation;

c. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that Plaintiff's note-taking accommodation would not be available upon Plaintiff's arrival to MSM;

d. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that Plaintiff's note-taking accommodation would have an initial delay in the production of any notes for Plaintiff;

e. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that there was currently no system in place to ensure the promised 24-48-hour

turnaround time goal for notes was met for Plaintiff's note-taking

accommodation;

f.  During the interactive accommodation review process, including but not

limited to on or around April 12, 2017, prior to school starting on or around

July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that she

had no intention of ever measuring or evaluating the 24-48-hour turnaround

time goal for Plaintiff's note-taking accommodation to ensure that this goal

was met;

g.  Marla Thompson concealed material facts so as to deceive and mislead

Plaintiff into enrolling in MSM's medical school program on or around May

15, 2017, which was the deadline for students, whom had been accepted into

multiple medical schools, to choose what medical school they would

matriculate to.

473.

Plaintiff relied upon the representations made to Plaintiff by Marla

Thompson during the interactive accommodation review process in determining

that Plaintiff would attend MSM to study medicine on or around May 15, 2017,

which was the deadline for students, whom had been accepted into multiple

medical schools, to choose what medical school they would matriculate to.

474.

Plaintiff justifiably relied on the information provided to Plaintiff by Marla Thompson because she was the person in charge of determining Plaintiff's eligibility for accommodations and managing the accommodation's implementation.

475.

Plaintiff exercised due diligence in alerting MSM's ODS of Plaintiff's disability nearly four months before classes began for Plaintiff's first year of medical school on or around July 3, 2017.

476.

Plaintiff exercised due diligence in inquiring if MSM's ODS could accommodate Plaintiff's disability nearly four months before classes began for Plaintiff's first year of medical school on or around July 3, 2017.

477.

Information contrary to what Marla Thompson communicated to Plaintiff during the interactive accommodation review process was not available to Plaintiff, nor would a reasonable person doubt statements, regarding accommodations, from the person in charge of MSM's ODS.

478.

The actions of Marla Thompson were in furtherance of and within the scope of MSM's business.

479.

The actions of Marla Thompson showed willful misconduct, fraud, and conscious indifference to the consequences Plaintiff would suffer due to her willful misrepresentations of a material fact and concealment of material fact.

480.

MSM never allowed Plaintiff to objectively weigh other medical schools Plaintiff was accepted to more heavily in Plaintiff's decision-making process of where Plaintiff would attend medical school due to the misrepresentations of the capabilities and management of MSM's accommodations for students with disabilities.

481.

O.C.G.A. § 51-6-1, states that:

"Fraud, accompanied by damage to the party defrauded, always gives a right of action to the injured party." O.C.G.A. § 51-6-1.

482.

As a result of MSM's misrepresentations, Plaintiff has received economic injury proximately resulting from Plaintiff's reliance of Marla Thompson's willful misrepresentations, including but not limited to the student loans Plaintiff has

taken out for the past three years to pay for MSM's tuition and necessary expenses as a student (including but not limited to rent, food, school supplies, transportation expenses, and medical expenses), debt therefore, plus the interest that has accrued thereon.

483.

As a result of MSM's misrepresentations, Plaintiff has received economic injury proximately resulting from Plaintiff's reliance of Marla Thompson's willful misrepresentation including, but not limited to, the need to restart medical school.

484.

As a result of MSM's misrepresentations, Plaintiff has suffered economic injury by taking out loans to attend MSM for three (3) years in the amount of $184,279.00, and their presently accrued interest of $18,494.00, totaling $202,773.00.

485.

Due to the tortious acts by MSM, Plaintiff must restart medical school and thus has lost four (4) years from Plaintiff's work-life expectancy, proximately causing the following special damages.

486.

Due to the tortious acts by MSM, Plaintiff will graduate and become a medical resident at least four (4) years later than Plaintiff should have.

487.

In 2020, 87 out of 89 (98%) medical students at MSM applying to residency programs were matched into one. See Exhibit BZ, Page 5.

488.

According to the 2019-2020 *Survey of Resident/Fellow Stipends and Benefits Report,* authored by the Association of American Medical Colleges (hereafter referred to as "AAMC"), the unweighted mean stipend for the 2019-2020's first, second, third, and fourth year of residency is $57,191; $59,339; $61,636; and $64,255, respectively. See Exhibit CA, Page 6.

489.

The sum of $57,191; $59,339; $61,636; and $64,255 equals $242,421 and represents that amount of lost wages Plaintiff has sustained when Plaintiff's losses are calculated as the loss of Plaintiff's income in the four (4) years after what should have been Plaintiff's medical school career.

490.

As a result of MSM's misrepresentations, Plaintiff has suffered actual

damages, non-economic damages, embarrassment, humiliation, emotional harm,

mental and physical pain, and anguish.

491.

As a result of MSM's misrepresentations, Plaintiff has experienced loss of

educational opportunities, loss of employment opportunities, loss of research

opportunities, increased financial debt, and loss of future income.

### COUNT VIII - VIOLATION OF O.C.G.A. § 51–6–1, § 51–6–2, AND § 51–6–4 - FRAUD - FRAUDULENT OR RECKLESS MISREPRESENTATION, AND CONCEALMENT OF FACT

492.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs

1 to 284.

493.

O.C.G.A. § 51-6-2(b), states that:

"In all cases of deceit, knowledge of the falsehood constitutes an essential element of the tort. A fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false." O.C.G.A. § 51-6-2(a).

494.

O.C.G.A. § 51-6-4(a), states that:

"A fraud may be committed by acts as well as words." O.C.G.A. § 51-6-4(a).

495.

MSM fraudulently or recklessly represented facts as true to Plaintiff, when they were not, under O.C.G.A. § 51-6-2(b), as described herein, including the following:

a. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Plaintiff was made to believe that there was a system in place to satisfy Plaintiff's note-taking accommodation at MSM;

b. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Plaintiff was made to believe that the note-taking accommodation would operate efficiently in providing notes for Plaintiff's accommodation;

c. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson blinded herself to the truth or falsity

regarding that there was not a system in place to satisfy Plaintiff's note-taking accommodation nor had it previously been provided by her;

d. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson blinded herself to the truth or falsity regarding that the note-taking accommodation for Plaintiff was not an established system at MSM;

e. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson demonstrated a refusal to know the true capabilities and deficiencies regarding MSM's ability to satisfy Plaintiff's note-taking accommodation;

f. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson communicated that Plaintiff's requested note-taking accommodation would come with a 24-48-hour turnaround time goal for any class Plaintiff was taking;

g. During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around

July 3, 2017, Marla Thompson blinded herself to the truth or falsity

regarding that there was not a system in place to measure or evaluate the 24-

48-hour turnaround time goal for Plaintiff's note-taking accommodation;

h. Marla Thompson fraudulently or recklessly represented facts as true to

Plaintiff, when they were not, in order to induce Plaintiff into enrolling in

MSM's medical school program on or around May 15, 2017, which was the

deadline for students, whom had been accepted into multiple medical

schools, to choose what medical school they would matriculate to.

496.

MSM concealed material facts so as to deceive and mislead Plaintiff under

O.C.G.A. § 51-6-2(a) and O.C.G.A. § 51-6-4(a), as described herein, including the

following:

a. During the interactive accommodation review process, including but not

limited to on or around April 12, 2017, prior to school starting on or around

July 3, 2017, Plaintiff was neither warned nor advised that the note-taking

accommodation would be a new process for Marla Thompson;

b. During the interactive accommodation review process, including but not

limited to on or around April 12, 2017, prior to school starting on or around

July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that

there was currently no system in place to satisfy Plaintiff's note-taking accommodation;

c.  During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that Plaintiff's note-taking accommodation would not be available upon Plaintiff's arrival to MSM;

d.  During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that Plaintiff's note-taking accommodation would have an initial delay in the production of any notes for Plaintiff;

e.  During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that there was currently no system in place to ensure the promised 24-48-hour turnaround time goal for notes was met for Plaintiff's note-taking accommodation;

f.  During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that she had no intention of ever measuring or evaluating the 24-48-hour turnaround time goal for Plaintiff's note-taking accommodation to ensure that this goal was met;

g.  Marla Thompson concealed material facts so as to deceive and mislead Plaintiff into enrolling in MSM's medical school program on or around May 15, 2017, which was the deadline for students, whom had been accepted into multiple medical schools, to choose what medical school they would matriculate to.

497.

Plaintiff relied upon the representations made to Plaintiff by Marla Thompson during the interactive accommodation review process in determining that Plaintiff would attend MSM to study medicine on or around May 15, 2017, which was the deadline for students, whom had been accepted into multiple medical schools, to choose what medical school they would matriculate to.

498.

Plaintiff justifiably relied on the information provided to Plaintiff by Marla Thompson because she was the person in charge of determining Plaintiff's eligibility for accommodations and managing the accommodation's implementation.

499.

Plaintiff exercised due diligence in alerting MSM's ODS of Plaintiff's disability nearly four months before classes began for Plaintiff's first year of medical school on or around July 3, 2017.

500.

Plaintiff exercised due diligence in inquiring if MSM's ODS could accommodate Plaintiff's disability nearly four months before classes began for Plaintiff's first year of medical school on or around July 3, 2017.

501.

Information contrary to what Marla Thompson communicated to Plaintiff during the interactive accommodation review process was not available to Plaintiff, nor would a reasonable person doubt statements, regarding accommodations, from the person in charge of MSM's ODS.

502.

The actions of Marla Thompson were in furtherance of and within the scope of MSM's business.

503.

The actions of Marla Thompson showed willful misconduct, fraud, and conscious indifference to the consequences Plaintiff would suffer due to her fraudulent or reckless representations, and due to her concealment of fact.

504.

MSM never allowed Plaintiff to objectively weigh other medical schools Plaintiff was accepted to more heavily in Plaintiff's decision-making process of where Plaintiff would attend medical school due to the misrepresentations of the capabilities and management of MSM's accommodations for students with disabilities.

505.

O.C.G.A. § 51-6-1, states that:

"Fraud, accompanied by damage to the party defrauded, always gives a right of action to the injured party." O.C.G.A. § 51-6-1.

506.

As a result of MSM's misrepresentations, Plaintiff has received economic injury proximately resulting from Plaintiff's reliance of Marla Thompson's willful

misrepresentations, including but not limited to the student loans Plaintiff has taken out for the past three years to pay for MSM's tuition and necessary expenses as a student (including but not limited to rent, food, school supplies, transportation expenses, and medical expenses), debt therefore, plus the interest that has accrued thereon.

507.

As a result of MSM's misrepresentations, Plaintiff has received economic injury proximately resulting from Plaintiff's reliance of Marla Thompson's willful misrepresentation including, but not limited to, the need to restart medical school.

508.

As a result of MSM's misrepresentations, Plaintiff has suffered economic injury by taking out loans to attend MSM for three (3) years in the amount of $184,279.00, and their presently accrued interest of $18,494.00, totaling $202,773.00.

509.

Due to the tortious acts by MSM, Plaintiff must restart medical school and thus has lost four (4) years from Plaintiff's work-life expectancy, proximately causing the following special damages.

510.

Due to the tortious acts by MSM, Plaintiff will graduate and become a medical resident at least four (4) years later than Plaintiff should have.

511.

In 2020, 87 out of 89 (98%) medical students at MSM applying to residency programs were matched into one. See Exhibit BZ, Page 5.

512.

According to the 2019-2020 *Survey of Resident/Fellow Stipends and Benefits Report,* authored by the Association of American Medical Colleges (hereafter referred to as "AAMC"), the unweighted mean stipend for the 2019-2020's first, second, third, and fourth year of residency is $57,191; $59,339; $61,636; and $64,255, respectively. See Exhibit CA, Page 6.

513.

The sum of $57,191; $59,339; $61,636; and $64,255 equals $242,421 and represents that amount of lost wages Plaintiff has sustained when Plaintiff's losses are calculated as the loss of Plaintiff's income in the four (4) years after what should have been Plaintiff's medical school career.

514.

As a result of MSM's misrepresentations, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

515.

As a result of MSM's misrepresentations, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

*COUNT IX - NEGLIGENT MISREPRESENTATION*

516.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 284.

517.

The essential elements of negligent misrepresentation consist of a party's negligent supply of false information to foreseeable persons, known or unknown; a persons' reasonable reliance upon that false information; economic injury proximately resulting from such reliance.

518.

MSM negligently made the foregoing, and following, false and misleading representations to Plaintiff in order to induce Plaintiff into believing that MSM could satisfy Plaintiff's accommodations, including, but not limited to, Plaintiff's note-taking accommodation.

519.

MSM negligently made the foregoing, and following, false and misleading representations to Plaintiff in order to induce Plaintiff into enrolling at MSM.

520.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Plaintiff was made to believe that there was a system in place to satisfy Plaintiff's note-taking accommodation at MSM.

521.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Plaintiff was made to believe that the note-taking accommodation would operate efficiently in providing notes for Plaintiff's accommodation.

522.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson knew there was not a system in place to satisfy Plaintiff's note-taking accommodation.

523.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson knew the note-taking accommodation for Plaintiff was not an established system at MSM.

524.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson knew the note-taking accommodation for Plaintiff had not been previously provided by her.

525.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Plaintiff was neither warned nor advised that the note-taking accommodation would be a new process for Marla Thompson.

526.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that there was currently no system in place to satisfy Plaintiff's note-taking accommodation.

527.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that Plaintiff's note-taking accommodation would not be available upon Plaintiff's arrival to MSM.

528.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that Plaintiff's note-taking accommodation would have an initial delay in the production of any notes for Plaintiff.

529.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3,

2017, Marla Thompson communicated that Plaintiff's requested note-taking accommodation would come with a 24-48-hour turnaround time goal for any class Plaintiff was taking.

530.

Instead, the 24-48-hour turnaround time goal for the availability of notes for Plaintiff's note-taking accommodation was never measured or evaluated by either Marla Thompson or Dr. Brandi Knight during the entirety of the time Plaintiff has been a student at MSM.

531.

Neither Marla Thompson nor Dr. Brandi Knight had any intention of measuring or evaluating the 24-48-hour turnaround time goal for Plaintiff's note-taking accommodation to ensure that this goal was met.

532.

During the interactive accommodation review process, including but not limited to on or around April 12, 2017, prior to school starting on or around July 3, 2017, Marla Thompson neither warned nor advised Plaintiff that there was currently no system in place to ensure the promised 24-48-hour turnaround time goal for notes was met for Plaintiff's note-taking accommodation.

533.

Plaintiff relied upon the representations made to Plaintiff by Marla Thompson during the interactive accommodation review process in determining that Plaintiff would attend MSM to study medicine on or around May 15, 2017, which was the deadline for students, whom had been accepted into multiple medical schools, to choose what medical school they would matriculate to.

534.

Plaintiff justifiably relied on the information provided to Plaintiff by Marla Thompson because she was the person in charge of determining Plaintiff's eligibility for accommodations and managing their implementation.

535.

Plaintiff exercised due diligence in alerting MSM's ODS of Plaintiff's disability nearly four months before classes began for Plaintiff's first year of medical school on or around July 3, 2017.

536.

Plaintiff exercised due diligence in inquiring if MSM's ODS could accommodate Plaintiff's disability nearly four months before classes began for Plaintiff's first year of medical school on or around July 3, 2017.

537.

Information contrary to what Marla Thompson communicated to Plaintiff during the interactive accommodation review process was not available to Plaintiff nor would a reasonable person doubt statements, regarding accommodations, from the person in charge of MSM's ODS.

538.

The actions of Marla Thompson were in furtherance of and within the scope of MSM's business.

539.

The actions of Marla Thompson showed willful misconduct, fraud, and conscious indifference to the consequences Plaintiff would suffer due to her negligent misrepresentations.

540.

MSM never allowed Plaintiff to objectively weigh other medical schools Plaintiff was accepted to more heavily in Plaintiff's decision-making process of where Plaintiff would attend medical school due to the misrepresentations of the capabilities and management of MSM's accommodations for students with disabilities.

541.

As a result of MSM's misrepresentations, Plaintiff has received economic injury proximately resulting from Plaintiff's reliance of Marla Thompson's negligent misrepresentations, including but not limited to the student loans Plaintiff has taken out for the past three years to pay for MSM's tuition and necessary expenses as a student (including but not limited to rent, food, school supplies, transportation expenses, and medical expenses), debt therefore, plus the interest that has accrued thereon.

542.

As a result of MSM's misrepresentations, Plaintiff has received economic injury proximately resulting from Plaintiff's reliance of Marla Thompson's negligent misrepresentations including, but not limited to, the need to restart medical school.

543.

As a result of MSM's misrepresentations, Plaintiff has suffered economic injury by taking out loans to attend MSM for three (3) years in the amount of $184,279.00, and their presently accrued interest of $18,494.00, totaling $202,773.00.

544.

Due to the tortious acts by MSM, Plaintiff must restart medical school and thus has lost four (4) years from Plaintiff's work-life expectancy, proximately causing the following special damages.

545.

Due to the tortious acts by MSM, Plaintiff will graduate and become a medical resident four (4) years later than Plaintiff should have.

546.

In 2020, 87 out of 89 (98%) medical students at MSM applying to residency programs were matched into one. See Exhibit BZ, Page 5.

547.

According to the 2019-2020 *Survey of Resident/Fellow Stipends and Benefits Report,* authored by the Association of American Medical Colleges (hereafter referred to as "AAMC"), the unweighted mean stipend for the 2019-2020's first, second, third, and fourth year of residency is $57,191; $59,339; $61,636; and $64,255, respectively. See Exhibit CA, Page 6.

548.

The sum of $57,191; $59,339; $61,636; and $64,255 equals $242,421 and represents that amount of lost wages Plaintiff has sustained when Plaintiff's losses

are calculated as the loss of Plaintiff's income in the four (4) years after what should have been Plaintiff's medical school career.

549.

As a result of MSM's misrepresentations, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish.

550.

As a result of MSM's misrepresentations, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income.

## COUNT X - BREACH OF CONTRACT

551.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 284.

552.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 171), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 180), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Pages 227-228[6]) has stated, under the "Acknowledgment" heading, that, "I hereby acknowledge that I have received the Morehouse School of Medicine (MSM) 2017-2018[7] Student Handbook. I accept responsibility for reading and understanding the policies, procedures, rules and benefits in the Student Handbook and I agree to abide by its contents which set forth the terms and conditions of my enrollment and subsequent matriculation as an MSM student. I understand that if I have questions about the Handbook or its contents, I am to discuss them with the Dean of Students or the Dean's designee. Circumstances may require that the policies, procedures, rules and benefits described in this Handbook change as MSM deems necessary or appropriate. I understand that I will be notified of such changes and dates of implementation by my MSM e-mail account or through other appropriate means," followed by a place where Plaintiff prints Plaintiff's name and the date, signs Plaintiff's name, and that page was ripped out of the Student Handbook and collected during Plaintiff's orientation at the start of the 2017-2018, 2018-2019, and 2019-2020 academic school years.

553.

---

[6] It is on page 228 in Exhibit AF, but it is labeled as page 227.
[7] or 2018-2019 or 2019-2020.

There existed a contract between MSM and Plaintiff based on, including but not limited to, MSM's 2017-2018, 2018-2019, and 2019-2020 Student Handbooks.

554.

According to MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 70), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 74), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 75), under the "Compliance Hotline" heading:

> "[MSM] is an organization with strong values of responsibility and integrity. Our written standards and policies contain general guidelines for conducting business with the highest standards of ethics. The institution is committed to an environment where open, honest communications are the expectation, not the exception."

555.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 34), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 37), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 39) has stated, under the "Disability Services" heading, that

> "Morehouse School of Medicine's Office of Disability Services (ODS) serves as the primary resource for students with documented disabilities, disability concerns, and making requests for reasonable academic adjustments and accommodations. The ODS works in collaboration with faculty, staff and departments throughout MSM to develop successful strategies for maximizing students' academic achievement and participation in extracurricular activities and programs."

211

556.

Despite MSM's commitments and policies as outlined above in its contract with Plaintiff, MSM's ODS did not develop any successful strategies concerning Plaintiff's note-taking accommodation with regard to maximizing Plaintiff's academic achievement during Plaintiff's 2017-2018 and 2018-2019 academic school years.

557.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Pages 34-35), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 37), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Pages 39-40) has stated, under the "Disability Services" heading, that,

> "Services and reasonable accommodations are designed to meet the individual needs of each student in accordance with Section 504 of the Federal Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990, as amended by the ADAAA. These regulations require that any qualified person receive academic adjustments that are necessary and effective, and which do not compromise the academic standards of the School, to ensure equal access to educational opportunities, services, programs and activities at the School."

558.

Despite MSM's commitments and policies as outlined above in its contract with Plaintiff, and though MSM granted the note-taking accommodation to

Plaintiff, MSM failed to meet the individual needs of Plaintiff and provide for Plaintiff's note-taking accommodation during the 2017-2018 and 2018-2019 academic school years.

559.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 65), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 70), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 71) has stated, under the "General Information" subheading, under the "Nondiscrimination and Anti-Harassment Policies" heading, that,

> "Morehouse School of Medicine is committed to providing academic and employment environments that are free from unlawful discrimination, including harassment, on the basis of protected characteristics, including race, color, national or ethnic origin, sex, age, disability, religion, veteran status, sexual orientation, genetic information, gender identity, or any other characteristic protected by applicable law in the administration of the School's programs and activities."

560.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 67), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 73) has stated, under the "Investigation and Disposition of Complaints" subheading, under the "Nondiscrimination and Anti-

213

Harassment Policies" heading, that, MSM has a "responsibility to provide a safe and nondiscriminatory environment for the MSM community."

561.

Despite MSM's commitments and policies, as outlined above about providing a safe and nondiscriminatory environment, in its contract with Plaintiff, Plaintiff's academic environment at MSM was not free from unlawful discrimination, despite Plaintiff's continually reporting incidents to the Title IX Coordinator, Marla Thompson.

562.

Despite MSM's commitments and policies, as outlined above about providing a safe and nondiscriminatory environment, in its contract with Plaintiff, during Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking accommodation, granted by MSM, as non-essential because Plaintiff had textbooks.

563.

Despite MSM's commitments and policies, as outlined above about providing a safe and nondiscriminatory environment, in its contract with Plaintiff, during Plaintiff's dismissal hearing on or around July 28, 2020, at least one committee member determined Plaintiff's reasonable note-taking accommodation,

granted by MSM, was non-essential because Plaintiff had access to class recordings.

564.

Despite MSM's commitments and policies, as outlined above about providing a safe and nondiscriminatory environment, in its contract with Plaintiff, and despite that during Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff continually stressed that Plaintiff's note-taking accommodation was necessary to ensure Plaintiff had meaningful access to MSM's medical school program, MSM dismissed Plaintiff from its medical school program (See Exhibit BT).

565.

Despite MSM's commitments and policies, as outlined above about providing a safe and nondiscriminatory environment, in its contract with Plaintiff, and despite that during Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff continually stressed the failure to provide for Plaintiff's note-taking accommodation, that MSM had granted to Plaintiff for the entirety of Plaintiff's medical school education, was very clear disability discrimination, MSM dismissed Plaintiff from its medical school program (See Exhibit BT).

566.

Despite MSM's commitments and policies, as outlined above about providing a safe and nondiscriminatory environment, in its contract with Plaintiff, and despite that during Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff continually stressed that the time periods in which MSM failed to provide Plaintiff's note-taking accommodation were necessary for Plaintiff to learn and understand normal human physiology, and that MSM has told its students that one cannot learn abnormal human physiology (the classes Plaintiff failed during the 2019-2020 academic school year) without first learning normal human physiology, MSM dismissed Plaintiff from its medical school program (See Exhibit BT).

567.

Despite MSM's commitments and policies, as outlined above about providing a safe and nondiscriminatory environment, in its contract with Plaintiff, and despite during Plaintiff's dismissal hearing on or around July 28, 2020, Plaintiff explained, and provided evidence (See Exhibit BR - the collective of the following exhibits used at Plaintiff's dismissal hearing), that Plaintiff's prior written complaints and reports about discrimination against Plaintiff, including but not limited to the failure of MSM in providing for Plaintiff's note-taking accommodation during the 2017-2018 and 2018-2019 academic school years, submitted to Marla Thompson, Title IX Coordinator, on or around August 1, 2017

(See Exhibit AK), on or around May 7, 2018 (See Exhibit AO), on or around

February 25-26, 2019 (See Exhibit AS), and on or around February 18, 2020 (See

Exhibit AW and Exhibit AX), were not promptly investigated by MSM, that

appropriate corrective actions were not taken as expeditiously as possible by

MSM, that MSM never provided Plaintiff with any written notification regarding

the results of any investigation, and that MSM did not follow up as appropriate to

ensure any remedial actions it instituted were effective, in violation of MSM's

commitments and policies in its contract with Plaintiff (See Exhibit AD, Page 67-

68, Exhibit AE, Page 72, and Exhibit AF, Page 73), MSM dismissed Plaintiff from

its medical school program (See Exhibit BT).

568.

Despite MSM's commitments and policies, as outlined above about

providing a safe and nondiscriminatory environment, in its contract with Plaintiff,

and despite during Plaintiff's dismissal hearing on or around July 28, 2020,

Plaintiff spoke about attempts made by Plaintiff since January of 2020 to find

resolutions to the problems Plaintiff was experiencing including, but not limited to,

Plaintiff's time spent combing through two plus years of emails, compiling and

conducting analytics with regards to Plaintiff's note-taking accommodation for the

2017-2018 and 2018-2019 academic school years, Plaintiff's meetings with Marla

Thompson and Dr. Ngozi Anachebe, Plaintiff filing a compliance complaint, and Plaintiff sharing to Marla Thompson and Dr. Ngozi Anachebe Plaintiff's feelings of depression, anxiety, and panic attacks with regards to this entire situation, MSM dismissed Plaintiff from its medical school program (See Exhibit BT).

569.

Despite Plaintiff being asked by Alecia Bell, MSM's Interim Chief Compliance Officer, via phone meeting on or around June 19, 2020, to give MSM an opportunity to provide some solutions with regards to Plaintiff's compliance complaint (See Exhibit BN, Page 2), MSM dismissed Plaintiff from its medical school program (See Exhibit BT).

570.

In its dismissal letter to Plaintiff, MSM alleges,

"After careful consideration of the information you presented during the hearing, the written information you submitted to the committee (Exhibits A-F) [Plaintiff's Exhibit BR], and your academic transcript, the committee voted to dismiss you from Morehouse School of Medicine. The decision was based on the school's policy of receiving a final grade of D or F while in the decelerated track, and for receiving two or more final grades of D or F (Page 107, iii and viii, respectively, 2019-2020 Student Handbook) [Plaintiff's Exhibit AF]." See Exhibit BT, Page 2.

571.

Despite MSM's commitments and policies, as outlined above about providing a safe and nondiscriminatory environment, in its contract with Plaintiff,

all of the committee members of Plaintiff's dismissal hearing did not carefully

consider Plaintiff's exhibits because, as Plaintiff was notified at the beginning of

Plaintiff's dismissal hearing, the exhibits would remain in the possession of Dr.

Ngozi Anachebe and Dr. Martha Elks (Senior Associate Dean of Educational

Affairs), and not in the possession of all committee members for them to carefully

consider.

### 572.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Page 101), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 107), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 108) has stated, under the "Dismissal and

Suspension" subheading, under "The Student Academic Progress & Promotion

Committee (SAPP)" heading, that,

> "The Chair of the SAPP committee will provide written information on the
> reasons for the dismissal hearing. The student is invited to appear in person
> to present their case, evidence, and context for the academic deficiencies."

### 573.

In MSM's dismissal letter to Plaintiff on or around July 30, 2020, MSM
alleges,

> "MSM has a policy that the 1st and 2nd Year Curriculum will consist of no
> more than 36 months excluding any leave of absence (Page 104, b. 2019-
> 2020 Student Handbook) [Plaintiff's Exhibit AF], and you have reached this
> time limit." See Exhibit BT, Page 2.

574.

Despite MSM's commitments and policies as outlined above in its contract with Plaintiff, Plaintiff was never notified or provided written information (See Exhibit BD, Page 4, and Exhibit BM, Page 4) that one of the reasons for MSM's dismissal hearing against Plaintiff, and one of the reasons MSM's dismissal of Plaintiff would ultimately be for, was that "MSM has a policy that the 1st and 2nd Year Curriculum will consist of no more than 36 months excluding any leave of absence (Page 104, b. 2019-2020 Student Handbook) [Plaintiff's Exhibit AF], and [Plaintiff had] reached this time limit" (See Exhibit BT, Page 2), thus MSM did not give Plaintiff notice and an opportunity to present Plaintiff's case, evidence, and context, regarding this particular reason Plaintiff was dismissed from MSM, nor was it ever brought up by anyone during Plaintiff's dismissal hearing.

575.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 35), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 37), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 40) has stated, under the "Disability Services" heading, that,

> "Any applicant, student, resident, or employee who believes he or she has been denied any service or benefit or otherwise discriminated against or

harassed due to a disability may contact the Title IX Coordinator [Marla Thompson] or the Deputy Title IX Coordinator."

576.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 65), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 70), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 71) has stated, under the "General Information" subheading, under the "Nondiscrimination and Anti-Harassment Policies" heading, that,

"The School encourages any individual who feels he or she has been discriminated against or harassed on any legally protected characteristic to promptly report the incident to the Title IX Coordinator [Marla Thompson] or the Deputy Title IX Coordinator[.]"

577.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 67), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 71), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 72) has stated, under the "Complaint Procedures" subheading, under the "Nondiscrimination and Anti-Harassment Policies" heading, that,

"Complaints filed with the Title IX Coordinator [Marla Thompson] or the Deputy Title IX Coordinator[8] must be in writing and, specifically in cases involving incidents of sex discrimination, sexual harassment or sexual violence, provide the following information: (i) name of and contact information for the complaining Person(s) ("Complainant(s)"); (ii) nature, location and date of alleged violation; (iii) names of and contact information for the Person(s) accused of the alleged violation (where known) ("Respondent(s)"); (iv) requested relief or corrective action (specification of desired relief shall be the option of the Complainant); and (v) any other background or supplemental information that the Complainant believes to be relevant (e.g., names of other persons affected by the violation, etc.)."

578.

At all relevant times while Plaintiff has been a student at MSM, MSM's

2017-2018 Student Handbook (See Exhibit AD, Page 67-68), MSM's 2018-2019

Student Handbook (See Exhibit AE, Page 72), and MSM's 2019-2020 Student

Handbook (See Exhibit AF, Page 73) has stated, under the "Investigation and

Disposition of Complaints" subheading, under the "Nondiscrimination and Anti-

Harassment Policies" heading, that,

"All reports and complaints of discrimination and harassment will be promptly investigated, and appropriate corrective action will be taken as expeditiously as possible…The amount of time needed to conduct an investigation will depend in part on the nature of the allegation(s) and the evidence to be investigated (e.g., the number and/or availability of witnesses involved). Within 60 days of receipt of the complaint, the Title IX Coordinator [Marla Thompson] or Deputy Title IX Coordinator will provide an interim notice of the outcome of the investigation or will advise the parties of the additional estimated amount of time needed for the

---

[8] Both of MSM's 2018-2019 and 2019-2020 Student Handbooks do not include the phrase "or the Deputy Title IX Coordinator" in this statement.

investigation. Within 10 business days following the completion of an
investigation, the Title IX Coordinator [Marla Thompson] or Deputy Title
IX Coordinator will simultaneously provide written notification to the
Complainant and Respondent of the results of the investigation…MSM will
take the appropriate corrective action based on results of the investigation
and will follow up as appropriate to ensure that the remedial action is
effective. Complainants are encouraged to report any reoccurrences of
conduct that were found to violate MSM's nondiscrimination and anti-
harassment policies or any other related concerns."

579.

In accordance with MSM's 2017-2018 Student Handbook (See Exhibit AD,

Page 65-67), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 70-71),

and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 71-72), Plaintiff

contacted Marla Thompson, Title IX Coordinator and Manager of MSM's ODS,

via email and provided written complaints and reports about discrimination,

including but not limited to the failure of MSM in providing for Plaintiff's note-

taking accommodation during the 2017-2018 and 2018-2019 academic school

years, that Plaintiff was experiencing, or experienced, on a multitude of occasions,

including but not limited to on or around August 1, 2017 (See Exhibit AK); on or

around May 7, 2018 (See Exhibit AO); on or around February 25-26, 2019 (See

Exhibit AS); and on or around February 18, 2020 (See Exhibit AW and Exhibit

AX).

580.

Despite MSM's commitments and policies as outlined above in its contract with Plaintiff, Plaintiff's written discrimination complaints and reports were not promptly investigated by MSM; appropriate corrective actions were not taken as expeditiously as possible by MSM; MSM never provided Plaintiff with any written notification regarding the results of any investigation; and MSM did not follow up as appropriate to ensure any remedial actions it instituted were effective.

581.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 66), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 70), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 71) has stated, under the "General Information" subheading, under the "Nondiscrimination and Anti-Harassment Policies" heading, that,

> "MSM's general policy against discrimination, harassment and retaliation applies to conduct by and perpetrated against all faculty, staff, administration, supervisors, employees, residents, students, applicants, volunteers, patients and visitors to campus, including guests, patrons, independent contractors or clients of MSM ("Person(s)") that is prohibited by Title VII of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act (including ADAAA amendments), and the Age Discrimination Act of 1975."

582.

224

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 68), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 72), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 73) has stated, under the "Prohibition Against Retaliation" subheading, under the "Nondiscrimination and Anti-Harassment Policies" heading, that,

> "Anyone who, in good faith, reports what s/he believes to be discrimination or harassment, who participates or cooperates in any investigation, or who otherwise opposes unlawful conduct believed to be in violation of this policy will not be subjected to retaliation. Anyone who believes he or she has been the victim of retaliation for reporting discrimination or harassment, participating or cooperating in an investigation or otherwise opposing unlawful conduct believed to be in violation of this policy should immediately contact the Title IX Coordinator [Marla Thompson] or the Deputy Title IX Coordinator, who have authority to investigate all such claims. Any individual found to have retaliated against another individual who engaged in conduct consistent with the protections afforded under this Policy will be in violation of this policy and will be subject to disciplinary action."

583.

At all relevant times while Plaintiff has been a student at MSM, MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 67), MSM's 2018-2019 Student Handbook (See Exhibit AE, Page 71), and MSM's 2019-2020 Student Handbook (See Exhibit AF, Page 72) has stated, under the "General Information"

subheading, under the "Nondiscrimination and Anti-Harassment Policies" heading,

that,

> "Any Person[9] or non-MSM visitor, guest, patron, independent contractor, or
> client who fails to address or report any form of discrimination, harassment
> and/or retaliation allegedly perpetrated by or against MSM administrators,
> faculty, staff, supervisors, volunteers, students or employees of which they
> know or should have known may be subjected to sanctions."

584.

Despite MSM's commitments and policies, as outlined above about

retaliation, in its contract with Plaintiff, Alecia Bell's, MSM's Interim Chief

Compliance Officer, written letter of determination (See Exhibit BO, Pages 2-3),

submitted to Plaintiff on or around July 14, 2020, failed to address the portion of

Plaintiff's compliance complaint outlining MSM's attempts to conceal and

retaliatory acts made against Plaintiff (See Exhibit BB, Pages 1-2), events which

are described in subdivision heading F, "RESOLUTION ATTEMPT BY

PLAINTIFF," despite Alecia Bell telling Plaintiff that she could not respond as to

---

[9] In MSM's 2017-2018 Student Handbook (See Exhibit AD, Page 66), MSM's
2018-2019 Student Handbook (See Exhibit AE, Page 70), and MSM's 2019-2020
Student Handbook (See Exhibit AF, Page 71), "Person(s)" is defined as "faculty,
staff, administration, supervisors, employees, residents, students, applicants,
volunteers, patients, and visitors to campus, including guests, patrons, independent
contracts or clients of MSM."

why this happened from the responses of Marla Thompson and Dr. Ngozi

Anachebe provided to her on or around June 19, 2020 (See Exhibit BH, Pages 1-4).

585.

Despite MSM's commitments and policies, as outlined above about

discrimination and retaliation, in its contract with Plaintiff, on information and

belief, no faculty, staff, administrator, supervisor, or employee of MSM has ever

attempted to address or report Plaintiff's discrimination or the retaliation

perpetrated against Plaintiff despite knowing about it or should have known about

it, including but not limited to Marla Thompson, Dr. Brandi Knight, Dr. Ngozi

Anachebe, Dr. Martha Elks, the Office of Counseling Services, Alecia Bell, all

committee members of Plaintiff's dismissal hearing, and other faculty, staff,

administrators, supervisors, and employees to be identified through discovery and

trial.

586.

Despite MSM's commitments as outlined in MSM's 2017-2018, 2018-2019,

and 2019-2020 Student Handbooks, Plaintiff was subjected to retaliation,

discrimination, willful misconduct, malice, fraud, wantonness, oppression, and

conscious indifference to the consequences Plaintiff would suffer due to the actions

and inactions by MSM's faculty, staff, and administrators.

587.

MSM's breach of its contract with Plaintiff was more than de minimus, and MSM failed to even maintain substantial compliance with its contract with Plaintiff.

588.

The actions of all agents and employees of MSM alleged herein were in furtherance of and within the scope of MSM's business.

589.

Plaintiff has suffered economic injury due to MSM's willful and arbitrary breach of contract with Plaintiff. O.C.G.A. § 13-6-2.

590.

As a result of MSM's actions, Plaintiff has suffered actual damages, non-economic damages, embarrassment, humiliation, emotional harm, mental and physical pain, and anguish. O.C.G.A. § 13-6-2.

591.

As a result of MSM's actions, Plaintiff has experienced loss of educational opportunities, loss of employment opportunities, loss of research opportunities, increased financial debt, and loss of future income. O.C.G.A. § 13-6-2.

592.

Plaintiff has suffered economic injury due to MSM's willful and arbitrary breach of contract with Plaintiff having taken out loans to attend MSM for three (3) years in the amount of $184,279.00, and their presently accrued interest of $18,494.00, totaling $202,773.00. O.C.G.A. § 13-6-2.

593.

Due to MSM's willful and arbitrary breach of contract with Plaintiff, MSM has taken away any reasonable opportunity for Plaintiff to ever study medicine, Plaintiff has suffered economic injury by the loss of earning capacity that would reasonably have resulted had Plaintiff received a Doctor of Medicine degree, to be determined at time of trial by expert testimony. O.C.G.A. § 13-6-2.

## COUNT XI - PUNITIVE DAMAGES

594.

Plaintiff realleges, repeats, and incorporates by reference herein paragraphs 1 to 284.

595.

By reason of MSM's actions and inactions, which showed willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care

which would raise the presumption of conscious indifference to the consequences, Plaintiff is entitled to punitive damages.

596.

By reason of MSM's actions and inactions, which showed MSM acted, or failed to act, with the specific intent to cause harm, there should be no limitation regarding the amount of punitive damages which may be awarded.

WHEREFORE, Plaintiff, JAMES GREGORY HOWELL, JR., requests judgment against Defendant, THE MOREHOUSE SCHOOL OF MEDICINE, INC. and that the Court:

*PRAYER - COUNT I - VIOLATION OF THE REHABILITATION ACT - FAILURE TO ACCOMMODATE*

    A) That Plaintiff's claim be tried before a jury;
    B) That Judgment be entered against Defendant, THE MOREHOUSE SCHOOL OF MEDICINE, INC. for its violation of the Rehabilitation Act;
    C) Grant a permanent injunction against MSM prohibiting it from engaging in any practice or policy which interferes with, or fails to fulfill, the Rehabilitation Act rights of its students;
    D) Order that MSM reinstate Plaintiff in its medical school program;
    E) Order that MSM allow Plaintiff to restart Plaintiff's entire medical education so as to ensure Plaintiff receives a proper and satisfactory medical education, with Plaintiff's academic accommodations

230

provided for, and removes and deletes Plaintiff's entire previous academic record at MSM;

F) Order that MSM designate an experienced individual who is responsible for compliance under the Rehabilitation Act;

G) Order that MSM designate an experienced individual who is responsible for ensuring student accommodations are actually being provided to students;

H) Order that MSM adopt and publish grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints under the Rehabilitation Act;

I) Order MSM provide, or continue to provide, qualified notetakers for persons who require such accommodations;

J) Order MSM provide, or continue to provide, timely notes to persons with note-taking accommodations;

K) Order that all agents and employees of MSM attend training specifically for the rights and obligations of a post-secondary institution to accommodate its students with disabilities, under the Rehabilitation Act, provided by experts outside of MSM;

L) Award the Plaintiff special damages in the amount of $202,773.00;

M) Award the Plaintiff damages, including but not limited to actual damages, consequential damages, general, and non-economic damages in an amount to be determined at time of trial;

N) Award the Plaintiff pre- and post-judgment interest in the maximum rate allowed by law;

O) Award the Plaintiff reasonable attorney's fees pursuant to 29 U.S.C. § 794a, including litigation expenses, reasonable expert witness fees, and the cost of this action; and

P) Grant such further relief as necessary to fulfill the purpose of the Rehabilitation Act, or as this Court otherwise deems just and proper.

### *PRAYER - COUNT II - VIOLATION OF THE REHABILITATION ACT - DISPARATE TREATMENT*

A) That Plaintiff's claim be tried before a jury;

B) That Judgment be entered against Defendant, THE MOREHOUSE SCHOOL OF MEDICINE, INC. for its violation of the Rehabilitation Act;

C) That the Court grant a permanent injunction against MSM prohibiting it from engaging in any practice or policy which interferes with, or fails to fulfill, the Rehabilitation Act rights of its students;

D) Order that MSM reinstate Plaintiff in its medical school program;

E) Order that MSM allow Plaintiff to restart Plaintiff's entire medical education so as to ensure Plaintiff receives a proper and satisfactory medical education, with Plaintiff's academic accommodations provided for, and removes and deletes Plaintiff's entire previous academic record at MSM;

F) Order that MSM designate an experienced individual who is responsible for compliance under the Rehabilitation Act;

G) Order that MSM designate an experienced individual who is responsible for ensuring student accommodations are actually being provided to students;

H) Order that MSM adopt and publish grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints under the Rehabilitation Act;

I) Order MSM provide, or continue to provide, qualified notetakers for persons who require such accommodations;

J) Order MSM provide, or continue to provide, timely notes to persons with note-taking accommodations;

K) Order that all agents and employees of MSM attend training specifically for the rights and obligations of a post-secondary institution to accommodate its students with disabilities, under the Rehabilitation Act, provided by experts outside of MSM;

L) Award the Plaintiff special damages in the amount of $202,773.00;

M) Award the Plaintiff damages, including but not limited to actual damages, consequential damages, general, and non-economic damages in an amount to be determined at time of trial;

N) Award the Plaintiff pre- and post-judgment interest in the maximum rate allowed by law;

O) Award the Plaintiff reasonable attorney's fees pursuant to 29 U.S.C. § 794a, including litigation expenses, reasonable expert witness fees, and the cost of this action; and

P) Grant such further relief as necessary to fulfill the purpose of the Rehabilitation Act, or as this Court otherwise deems just and proper.

## PRAYER - COUNT III - VIOLATION OF THE ADA - FAILURE TO ACCOMMODATE

A) That Plaintiff's claim be tried before a jury;
B) That Judgment be entered against Defendant, THE MOREHOUSE SCHOOL OF MEDICINE, INC. for its violation of the ADA;
C) Grant a permanent injunction against MSM prohibiting it from engaging in any practice or policy which interferes with, or fails to fulfill, the ADA rights of its students;
D) Order that MSM reinstate Plaintiff in its medical school program;
E) Order that MSM allow Plaintiff to restart Plaintiff's entire medical education so as to ensure Plaintiff receives a proper and satisfactory medical education, with Plaintiff's academic accommodations, and removes and deletes Plaintiff's entire previous academic record at MSM;
F) Order that MSM designate an experienced individual who is responsible for compliance under the ADA;
G) Order that MSM designate an experienced individual who is responsible for ensuring student accommodations are actually being provided to students;
H) Order that MSM adopt and publish grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints under the ADA;
I) Order MSM provide, or continue to provide, qualified notetakers for persons who require such accommodations;
J) Order MSM provide, or continue to provide, timely notes to persons with note-taking accommodations;
K) Order that all agents and employees of MSM attend training specifically for the rights and obligations of a post-secondary institution to accommodate its students with disabilities under the ADA, provided by experts outside of MSM;
L) Award the Plaintiff pre- and post-judgment interest in the maximum rate allowed by law;

M) Award the Plaintiff reasonable attorney's fees pursuant to 42 U.S.C. § 2000a-3(b) and 28 C.F.R. § 36.505, including litigation expenses, reasonable expert witness fees, and the cost of this action; and

N) Grant such further relief as necessary to fulfill the purpose of the ADA, or as this Court otherwise deems just and proper.

*PRAYER - COUNT IV - VIOLATION OF THE ADA - DISPARATE TREATMENT*

A) That Plaintiff's claim be tried before a jury;

B) That Judgment be entered against Defendant, THE MOREHOUSE SCHOOL OF MEDICINE, INC. for its violation of the ADA;

C) Grant a permanent injunction against MSM prohibiting it from engaging in any practice or policy which interferes with, or fails to fulfill, the ADA rights of its students;

D) Order that MSM reinstate Plaintiff in its medical school program;

E) Order that MSM allow Plaintiff to restart Plaintiff's entire medical education so as to ensure Plaintiff receives a proper and satisfactory medical education, with Plaintiff's academic accommodations, and removes and deletes Plaintiff's entire previous academic record at MSM;

F) Order that MSM designate an experienced individual who is responsible for compliance under the ADA;

G) Order that MSM designate an experienced individual who is responsible for ensuring student accommodations are actually being provided to students;

H) Order that MSM adopt and publish grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints under the ADA;

I) Order MSM provide, or continue to provide, qualified notetakers for persons who require such accommodations;

J) Order MSM provide, or continue to provide, timely notes to persons with note-taking accommodations;

K) Order that all agents and employees of MSM attend training specifically for the rights and obligations of a post-secondary institution to accommodate its students with disabilities under the ADA, provided by experts outside of MSM;

L) Award the Plaintiff pre- and post-judgment interest in the maximum rate allowed by law;

M) Award the Plaintiff reasonable attorney's fees pursuant to 42 U.S.C. § 2000a-3(b) and 28 C.F.R. § 36.505, including litigation expenses, reasonable expert witness fees, and the cost of this action; and

N) Grant such further relief as necessary to fulfill the purpose of the ADA, or as this Court otherwise deems just and proper.

*PRAYER - COUNT V - VIOLATION OF THE ADA - DISPARATE IMPACT*

A) That Plaintiff's claim be tried before a jury;

B) That Judgment be entered against Defendant, THE MOREHOUSE SCHOOL OF MEDICINE, INC. for its violation of the ADA;

C) Grant a permanent injunction against MSM prohibiting it from engaging in any practice or policy which interferes with, or fails to fulfill, the ADA rights of its students;

D) Order that MSM reinstate Plaintiff in its medical school program;

E) Order that MSM allow Plaintiff to restart Plaintiff's entire medical education so as to ensure Plaintiff receives a proper and satisfactory medical education, with Plaintiff's academic accommodations, and removes and deletes Plaintiff's entire previous academic record at MSM;

F) Order that MSM designate an experienced individual who is responsible for compliance under the ADA;

G) Order that MSM designate an experienced individual who is responsible for ensuring student accommodations are actually being provided to students;

H) Order that MSM adopt and publish grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints under the ADA;

I) Order MSM provide, or continue to provide, qualified notetakers for persons who require such accommodations;

J) Order MSM provide, or continue to provide, timely notes to persons with note-taking accommodations;

K) Order that all agents and employees of MSM attend training specifically for the rights and obligations of a post-secondary

institution to accommodate its students with disabilities under the ADA, provided by experts outside of MSM;

L) Award the Plaintiff pre- and post-judgment interest in the maximum rate allowed by law;

M) Award the Plaintiff reasonable attorney's fees pursuant to 42 U.S.C. § 2000a-3(b) and 28 C.F.R. § 36.505, including litigation expenses, reasonable expert witness fees, and the cost of this action; and

N) Grant such further relief as necessary to fulfill the purpose of the ADA, or as this Court otherwise deems just and proper.

## PRAYER - COUNT VI - VIOLATION OF THE REHABILITATION ACT AND ADA - RETALIATION OR COERCION

A) That Plaintiff's claim be tried before a jury;

B) That Judgment be entered against Defendant, THE MOREHOUSE SCHOOL OF MEDICINE, INC. for its violation of the Rehabilitation Act and ADA;

C) Grant a permanent injunction against MSM prohibiting it from engaging in any practice or policy which interferes with, or fails to fulfill, the Rehabilitation Act rights or the ADA rights of its students;

D) Order that MSM reinstate Plaintiff in its medical school program;

E) Order that MSM allow Plaintiff to restart Plaintiff's entire medical education so as to ensure Plaintiff receives a proper and satisfactory medical education, with Plaintiff's academic accommodations, and removes and deletes Plaintiff's entire previous academic record at MSM;

F) Order that MSM designate an experienced individual who is responsible for compliance under the Rehabilitation Act and the ADA;

G) Order that MSM designate an experienced individual who is responsible for ensuring student accommodations are actually being provided to students;

H) Order that Morehouse School of Medicine adopt and publish grievance procedures that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of complaints under the Rehabilitation Act and the ADA;

I) Order MSM provide, or continue to provide, qualified notetakers for persons who require such accommodations;

J) Order MSM provide, or continue to provide, timely notes to persons with note-taking accommodations;

K) Order that all agents and employees of MSM attend training specifically for the rights and obligations of a post-secondary institution to accommodate its students with disabilities under the Rehabilitation Act and the ADA, provided by experts outside of MSM;

L) Order that all agents and employees of MSM attend training specifically for anti-retaliation under the Rehabilitation Act and the ADA, provided by experts outside of MSM;

M) Award the Plaintiff damages, including but not limited to actual damages, consequential damages, general, non-economic damages, and punitive damages in an amount to be determined at time of trial;

N) Award the Plaintiff pre- and post-judgment interest in the maximum rate allowed by law;

O) Award the Plaintiff reasonable attorney's fees pursuant to 29 U.S.C. § 794a, 28 C.F.R. § 36.505, and 42 U.S.C. § 2000a-3(b), including litigation expenses, reasonable expert witness fees, and the cost of this action; and

P) Grant such further relief as necessary to fulfill the purposes of the Rehabilitation Act and the ADA, or as this Court otherwise deems just and proper.

## PRAYER - COUNT VII - VIOLATION OF O.C.G.A. § 51–6–1, § 51–6–2, AND § 51–6–4 - FRAUD - WILLFUL MISREPRESENTATION AND CONCEALMENT OF FACT

A) That Plaintiff's claims be tried before a jury;

B) That Judgment be entered against Defendant, THE MOREHOUSE SCHOOL OF MEDICINE, INC. for its willful misrepresentation and concealment of fact in violation of O.C.G.A. § 51–6–1, § 51–6–2, and § 51–6–4;

C) Award the Plaintiff special damages in the amount of $202,773.00;

D) Award the Plaintiff damages, including but not limited to actual damages, consequential damages, general, non-economic damages, and punitive damages in an amount to be determined at time of trial;

E) Award the Plaintiff special damages for lost earning capacity and lost wages in the amount of $242,421.00;

F) Award the Plaintiff pre- and post-judgment interest at the maximum rate allowed by law;

G) Award the Plaintiff attorney's fees, including litigation expenses, reasonable expert witness fees, and the cost of this action; and

H) Grant such other and further relief as the Court deems just and proper.

### PRAYER - COUNT VIII - VIOLATION OF O.C.G.A. § 51–6–1, § 51–6–2, AND § 51–6–4 - FRAUD - FRAUDULENT OR RECKLESS MISREPRESENTATION, AND CONCEALMENT OF FACT

A) That Plaintiff's claim be tried before a jury;

B) That Judgment be entered against Defendant, THE MOREHOUSE SCHOOL OF MEDICINE, INC. for its fraudulent or reckless misrepresentation, and concealment of fact in violation of O.C.G.A. § 51–6–1, § 51–6–2, and § 51–6–4;

C) Award the Plaintiff special damages in the amount of $202,773.00;

D) Award the Plaintiff damages, including but not limited to actual damages, consequential damages, general, non-economic damages, and punitive damages in an amount to be determined at time of trial;

E) Award the Plaintiff special damages for lost earning capacity and lost wages in the amount of $242,421.00;

F) Award the Plaintiff pre- and post-judgment interest at the maximum rate allowed by law;

G) Award the Plaintiff attorney's fees, including litigation expenses, reasonable expert witness fees, and the cost of this action; and

H) Grant such other and further relief as the Court deems just and proper.

### PRAYER - COUNT IX - NEGLIGENT MISREPRESENTATION

A) That Plaintiff's claim be tried before a jury;

B) That Judgment be entered against Defendant, THE MOREHOUSE SCHOOL OF MEDICINE, INC. for its negligent misrepresentation;

C) Award the Plaintiff special damages in the amount of $202,773.00;
D) Award the Plaintiff damages, including but not limited to actual
   damages, consequential damages, general, non-economic damages,
   and punitive damages in an amount to be determined at time of trial;
E) Award the Plaintiff special damages for lost earning capacity and lost
   income in the amount of $242,421.00;
F) Award the Plaintiff pre- and post-judgment interest at the maximum
   rate allowed by law;
G) Award the Plaintiff attorney's fees, including litigation expenses,
   reasonable expert witness fees, and the cost of this action; and
H) Grant such other and further relief as the Court deems just and proper.

### PRAYER - COUNT X - BREACH OF CONTRACT

A) That Plaintiff's claim be tried before a jury;
B) That Judgment be entered against Defendant, THE MOREHOUSE
   SCHOOL OF MEDICINE, INC. for its breach of contract;
C) Award the Plaintiff special damages in the amount of $202,773.00;
D) Award the Plaintiff damages, including but not limited to actual
   damages, consequential damages, general, and non-economic
   damages in an amount to be determined at time of trial;
E) Award the Plaintiff special damages for lost earning capacity and lost
   income in an amount to be determined at time of trial by expert
   testimony;
F) Award the Plaintiff pre- and post-judgment interest at the maximum
   rate allowed by law;
G) Award the Plaintiff reasonable attorney's fees pursuant to O.C.G.A. §
   13-6-11, including litigation expenses, reasonable expert witness fees,
   and the cost of this action; and
H) Grant such other and further relief as the Court deems just and proper.

### PRAYER - COUNT XI - PUNITIVE DAMGES

A) Award Plaintiff punitive damages in an amount to be determined at
   time of trial; and
B) Grant such other and further relief as the Court deems just and proper.

This 14th day of August, 2020.


DREW MOSLEY, LLC                          /s/ Drew Mosley
279 W. Crogan St.                         Drew Mosley
Lawrenceville, GA 30046                   Counsel for Plaintiff
O: (678) 225-0098                         GA Bar #: 526406
F: (678) 221-0230
drew@mlawmail.com

## <u>LOCAL RULE CERTIFICATION</u>

Undersigned counsel attests that this document was prepared in Times New Roman, 14-point font that complies with this Court's Rules.

Respectfully submitted this 14th day of August, 2020.

Counsel for Plaintiff
*/S/ Drew Mosley*
Drew Mosley, Esq.
GA Bar No. 526406
Drew Mosley, LLC
279 W. Crogan St.
Lawrenceville, Georgia 30046
678-225-0098
678-221-0230 fax
drew@mlawmail.com